**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC<br><br>     *Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>     *Defendants*. | Case No. 2:23-cv-00641-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG ELECTRONICS CO., LTD AND SAMSUNG ELECTRONICS
AMERICA, INC.'S FIRST AMENDED ANSWER AND DEFENSES TO PLAINTIFF
HEADWATER RESEARCH LLC'S COMPLAINT FOR PATENT INFRINGEMENT**

Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc.

("SEA") (collectively "Defendants" or "Samsung") respectfully submit this First Amended

Answer to Headwater Research LLC's ("Headwater") Complaint for Patent Infringement

("Complaint") filed on December 29, 2023. Samsung denies the allegations and characterizations

in Headwater's Complaint unless expressly admitted in the following paragraphs, which

correspond to the numbered paragraphs in the Complaint.

**BACKGROUND**[1]

1.     Samsung admits that Headwater purports to bring a patent infringement action for

alleged infringement of United States Patent Nos. 8,588,110 ("the '110 patent"), 8,639,811 ("the

'811 patent"), 9,179,359 ("the '359 patent"), and 9,647,918 ("the '918 patent") (collectively, the

---

[1] Samsung repeats the headings set forth in the Complaint to simplify comparison of the Complaint
and this response. In doing so, Samsung makes no admissions regarding the substance of the
headings or any other allegations of the Complaint. Unless otherwise stated, to the extent that a
particular heading can be construed as an allegation, Samsung specifically denies all such
allegations.

"Asserted Patents").  Samsung denies any remaining allegations contained in Paragraph 1 of the Complaint.

2.      Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 of the Complaint and therefore denies them.

3.      Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 3 of the Complaint and therefore denies them.

4.      Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 of the Complaint and therefore denies them.

5.      Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 of the Complaint and therefore denies them.

6.      Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 6 of the Complaint and therefore denies them.

7.      Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7 of the Complaint and therefore denies them.

8.      Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8 of the Complaint and therefore denies them.

9.      Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 9 of the Complaint and therefore denies them.

10.      Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 of the Complaint and therefore denies them.

11.      To the extent Paragraph 11 recites and implicates legal conclusions, no response is required.  Samsung admits that certain mobile devices can be used for communication and

entertainment and can exchange data via wireless and cellular networks.  Samsung denies any remaining allegations.

12.    Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12 of the Complaint and therefore denies them.

13.    Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 of the Complaint and therefore denies them.

14.    Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14 of the Complaint and therefore denies them.

15.    Denied.

## NOTICE OF THE ASSERTED PATENTS

16.    Denied.

17.    Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17 of the Complaint and therefore denies them.

18.    Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18 of the Complaint and therefore denies them.

19.    Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 of the Complaint and therefore denies them.

20.    Samsung admits that between 2013-2016, SEA worked with Sprint.  Samsung further admits that in instances during 2013-2016, SEA interacted with ItsOn in relation to SEA's work with Sprint.  Samsung is without knowledge or information sufficient to form a belief about the allegations concerning work between Sprint and ItsOn and on that basis denies them.  To the extent that Paragraph 20 alleges the Asserted Patents are valid, Samsung denies any such allegation.  Samsung denies the remaining allegations in Paragraph 20 of the Complaint.

21.     Samsung admits that certain ItsOn software was installed on certain end user Samsung wireless devices sold by Sprint.  To the extent that Paragraph 21 alleges the Asserted Patents are valid, Samsung denies any such allegation.  Samsung denies the remaining allegations in Paragraph 21 of the Complaint.

22.     Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 of the Complaint and therefore denies them.

23.     Samsung admits that in instances, SEA employees interacted with ItsOn employees concerning bugs in ItsOn technology.  Samsung is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 23 of the Complaint and therefore denies them.

24.     Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 of the Complaint and therefore denies them.

25.     Samsung admits that in instances, SEA employees interacted with ItsOn employees concerning bugs in ItsOn technology.  Samsung is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 25 of the Complaint and therefore denies them.

26.      To the extent that Paragraph 26 alleges the Asserted Patents are valid, Samsung denies any such allegation.  Samsung is without knowledge or information sufficient to form a belief about the truth of any remaining allegations in Paragraph 26 of the Complaint and therefore denies them.

27.      To the extent that Paragraph 27 alleges the Asserted Patents are valid, Samsung denies any such allegation.  Samsung is without knowledge or information sufficient to form a

belief about the truth of any remaining allegations in Paragraph 27 of the Complaint and therefore denies them.

28.     Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28 of the Complaint and therefore denies them.

29.     To the extent Paragraph 29 is purely argumentative and/or asserts legal conclusions, no response is required.  Samsung denies any remaining allegations.

30.     Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30 of the Complaint and therefore denies them.

31.     Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31 of the Complaint and therefore denies them.

32.     Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 of the Complaint and therefore denies them.

33.     Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33 of the Complaint and therefore denies them.

34.     To the extent that Paragraph 34 alleges the Asserted Patents are valid, Samsung denies any such allegation.  Samsung is without knowledge or information sufficient to form a belief about the truth of any remaining allegations in Paragraph 34 of the Complaint and therefore denies them.

35.     Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35 of the Complaint and therefore denies them.

36.     Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36 of the Complaint and therefore denies them.

37.     To the extent that Paragraph 37 alleges the Asserted Patents are valid, Samsung denies any such allegation.  Samsung is without knowledge or information sufficient to form a belief about the truth of any remaining allegations in Paragraph 37 of the Complaint and therefore denies them.

38.     To the extent that Paragraph 38 alleges the Asserted Patents are valid, Samsung denies any such allegation.  Samsung is without knowledge or information sufficient to form a belief about the truth of any remaining allegations in Paragraph 38 of the Complaint and therefore denies them.

39.     Samsung admits that it has released various devices since 2016 having beneficial features.  Samsung denies all remaining allegations in Paragraph 39 of the Complaint.

<u>**PLAINTIFF HEADWATER AND THE PATENTS-IN-SUIT**</u>

40.     Samsung is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40 of the Complaint and therefore denies them.

41.     Samsung admits that Headwater purports to be the owner of U.S. Patent No. 8,588,110.  Samsung admits that a purported copy of the '110 patent is attached to the Complaint as Exhibit 1.  Samsung admits that Exhibit 1 bears the title "Verifiable device assisted service usage billing with integrated accounting, mediation accounting, and multi-account" and a "Date of Patent" of November 19, 2013.  Samsung denies any remaining allegations in Paragraph 41 of the Complaint.

42.     Samsung admits that Headwater purports to be the owner of U.S. Patent No. 8,639,811.  Samsung admits that a purported copy of the '811 patent is attached to the Complaint as Exhibit 2.  Samsung admits that Exhibit 2 bears the title "Automated device provisioning and

activation" and a "Date of Patent" of January 28, 2014. Samsung denies any remaining allegations in Paragraph 42 of the Complaint.

43.    Samsung admits that Headwater purports to be the owner of U.S. Patent No. 9,179,359. Samsung admits that a purported copy of the '359 patent is attached to the Complaint as Exhibit 3. Samsung admits that Exhibit 3 bears the title "Wireless end-user device with differentiated network access status for different device applications" and a "Date of Patent" of November 3, 2015. Samsung denies any remaining allegations in Paragraph 43 of the Complaint.

44.    Samsung admits that Headwater purports to be the owner of U.S. Patent No. 9,647,918. Samsung admits that a purported copy of the '918 patent is attached to the Complaint as Exhibit 4. Samsung admits that Exhibit 4 bears the title "Mobile device and method attributing media services network usage to requesting application." Samsung denies that the "Date of Patent" is May 5, 2017. Samsung further denies any remaining allegations of Paragraph 44 of the Complaint.

## DEFENDANTS AND THE ACCUSED INSTRUMENTALITIES

45.    Samsung admits that SEC is a corporation organized under the laws of the Republic of Korea with its principal place of business at 129 Samsung-Ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, 443-742, Republic of Korea. Samsung denies any remaining allegations in Paragraph 45 of the Complaint.

46.    Samsung admits that SEA is a corporation organized under the laws of the State of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. Samsung admits that SEA is a wholly owned subsidiary of SEC. Samsung admits that SEA distributes certain Samsung consumer electronics products in the United States. Samsung denies any remaining allegations in Paragraph 46 of the Complaint.

47.     Samsung admits that SEA has corporate offices at 6625 Excellence Way, Plano, Texas 75023.  Samsung further admits that SEA may be served through CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.   Samsung denies any remaining allegations in Paragraph 47 of the Complaint.

48.     Samsung admits that Headwater, through its Complaint, accuses various Samsung mobile electronic devices of allegedly infringing the Asserted Patents.  Samsung denies any alleged infringement.  Samsung denies the remaining allegations in Paragraph 48 of the Complaint.

## JURISDICTION AND VENUE

49.     Samsung admits that the Complaint purports to set forth a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Samsung denies any allegations of infringement.

50.     Samsung admits that this Court has subject matter jurisdiction over actions for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).  Samsung denies that Headwater is entitled to any relief for its allegations of patent infringement, whether by award of damages, injunction, or otherwise.  Samsung further denies any allegations of infringement.

51.     Samsung does not contest, solely for the purpose of the present litigation, whether personal jurisdiction properly lies in this District.  SEA admits that it engages in offering and selling certain products to customers in Texas.  However, Samsung denies that it has committed acts of infringement in the Eastern District of Texas or elsewhere, or that it has committed any act, directly or indirectly, that would give rise to any cause of action under the Complaint.  Samsung denies any remaining allegations in Paragraph 51 of the Complaint.

52.     Denied.

53.     Samsung does not contest, solely for the purposes of the present action, whether venue over them properly lies in this District.  However, Samsung denies that venue in this District is convenient.  Samsung admits that SEA has transacted business in this District but denies that Samsung has committed acts of infringement in this District or elsewhere in the State of Texas, or that it has committed any act, directly or indirectly, that would give rise to any cause of action under the Complaint in Paragraph 53.

54.     Samsung admits that SEA has a place of business at 6625 Excellence Way, Plano, Texas 75023.  Samsung denies the remaining allegations in Paragraph 54 of the Complaint.

55.     Samsung admits that SEC is a foreign corporation and that for purposes of this action only, and without waiving any defense of improper venue in connection with any other cause of action or claim, Samsung admits that the Complaint's alleged venue as to SEC is proper under 28 U.S.C. § 1391(c).  Samsung denies any remaining allegations in Paragraph 55 of the Complaint.

56.     Samsung admits that in certain prior cases, based on the specific and unique facts of those cases, Samsung has either admitted or not contested proper venue in this District.  Samsung denies any suggestion that this is a convenient forum to resolve this dispute.  Samsung denies any remaining allegations in Paragraph 56 of the Complaint.

## <u>COUNT 1 – CLAIM FOR INFRINGEMENT OF THE '110 PATENT</u>

57.     Samsung incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

58.     Samsung admits that Exhibit 1 bears the title "Verifiable device assisted service usage billing with integrated accounting, mediation accounting, and multi-account" and a "Date of Patent" of November 19, 2013.  Samsung denies any remaining allegations in Paragraph 58 of the Complaint.

59. Samsung admits that Headwater purports to be the owner of the '110 patent. Samsung denies any remaining allegations in Paragraph 59 of the Complaint.

60. To the extent paragraph 60 recites and implicates legal conclusions, no response is required. Samsung denies all remaining allegations in Paragraph 60 of the Complaint.

61. Samsung denies any alleged infringement and denies that Headwater is entitled to damages. Samsung is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 61 of the Complaint and therefore denies them.

62. Denied.

63. Denied.

64. Samsung admits Headwater attaches an Exhibit 5 to its Complaint that purports to show alleged infringement of the '110 patent. Samsung denies any alleged infringement. Samsung denies all remaining allegations in Paragraph 64 of the Complaint.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

## COUNT 2 – CLAIM FOR INFRINGEMENT OF THE '811 PATENT

71. Samsung incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

72. Samsung admits that Exhibit 2 bears the title "Automated device provisioning and activation" and a "Date of Patent" of January 28, 2014. Samsung denies any remaining allegations in Paragraph 72 of the Complaint.

73.     Samsung admits that Headwater purports to be the owner of the '811 patent. Samsung denies any remaining allegations in Paragraph 73 of the Complaint.

74.     To the extent Paragraph 74 recites and implicates legal conclusions, no response is required.  Samsung denies all remaining allegations in Paragraph 74 of the Complaint.

75.     Samsung denies any alleged infringement and denies that Headwater is entitled to damages.  Samsung is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 75 of the Complaint and therefore denies them.

76.     Denied.

77.     Denied.

78.     Samsung admits Headwater attaches an Exhibit 6 to its Complaint that purports to show alleged infringement of the '811 patent.  Samsung denies any alleged infringement. Samsung further denies all remaining allegations in Paragraph 78 of the Complaint.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

## COUNT 3 – CLAIM FOR INFRINGEMENT OF THE '359 PATENT

85.     Samsung incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

86.     Samsung admits that Exhibit 3 bears the title "Wireless end-user device with differentiated network access status for different device applications" and a "Date of Patent" of November 3, 2015.  Samsung denies any remaining allegations in Paragraph 86 of the Complaint.

11

87.     Samsung admits that Headwater purports to be the owner of the '359 patent. Samsung denies any remaining allegations in Paragraph 87 of the Complaint.

88.     To the extent paragraph 88 recites and implicates legal conclusions, no response is required.  Samsung denies all remaining allegations in Paragraph 88 of the Complaint.

89.     Samsung denies any alleged infringement and denies that Headwater is entitled to damages.  Samsung is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 89 of the Complaint and therefore denies them.

90.     Denied.

91.     Denied.

92.     Samsung admits Headwater attaches an Exhibit 7 to its Complaint that purports to show alleged infringement of the '359 patent.   Samsung denies any alleged infringement. Samsung further denies all remaining allegations in Paragraph 92 of the Complaint.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.

## COUNT 4 – CLAIM FOR INFRINGEMENT OF THE '918 PATENT

99.     Samsung incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

100.     Samsung admits that Exhibit 4 bears the title "Mobile device and method attributing media services network usage to requesting application" and a "Date of Patent" of May 9, 2017. Samsung denies any remaining allegations in Paragraph 100 of the Complaint.

101.    Samsung admits that Headwater purports to be the owner of the '918 patent. Samsung denies any remaining allegations in Paragraph 101 of the Complaint.

102.    To the extent Paragraph 102 recites and implicates legal conclusions, no response is required.  Samsung denies all remaining allegations in Paragraph 102 of the Complaint.

103.    Samsung denies any alleged infringement and denies that Headwater is entitled to damages.  Samsung is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 103 of the Complaint and therefore denies them.

104.    Denied.

105.    Denied.

106.    Samsung admits Headwater attaches an Exhibit 8 to its Complaint that purports to show alleged infringement of the '918 patent.  Samsung denies any alleged infringement. Samsung further denies all remaining allegations in Paragraph 106 of the Complaint.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

## JURY DEMAND

113.    Samsung is not required to provide a response to Headwater's request for a trial by jury.

## RELIEF REQUESTED

Samsung denies that Headwater is entitled to any relief it seeks in its Complaint.

## GENERAL DENIAL

To the extent that any allegations of the Complaint have not been previously specifically admitted or denied, Samsung denies them.

****

## SAMSUNG'S ADDITIONAL DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Samsung, without waiver, limitation, or prejudice, hereby asserts the additional defenses listed below.  Samsung reserves the right to amend this Answer to add additional defenses, including any other defenses currently unknown to Samsung, as they become known throughout the course of discovery in this action.  Assertion of a defense is not a concession that Samsung has the burden of proving the matter asserted.

### FIRST ADDITIONAL DEFENSE
### (No Standing)

Headwater Research LLC's claims are barred because it lacks standing to bring this suit.

<u>First</u>, Headwater Research LLC cannot prove that it is the rightful owner of the Asserted Patents or that it has joined all necessary parties.  For example, Qualcomm is an owner or co-owner of the patents-in-suit at least because of its employment agreements with inventors Gregory Raleigh and/or Alireza Raissinia.  *See, e.g.*, *Headwater Research LLC v. Samsung Electronics Co., Ltd, et al.*, No. 2:22-cv-00422-JRG-RSP, Dkt. No. 274 at 1 (E.D. Tex. May 28, 2024) ("*Headwater I*").  Dr. Raleigh admitted that he made the Headwater invention at Qualcomm, and Qualcomm has asserted ownership.  *Id.*  Indeed, while there are multiple reasons that the Asserted Patents were assigned to Qualcomm by virtue of the inventors' employment agreements with Qualcomm, Dr. Raleigh also

expressly admitted in a public video that he conceived of the Headwater inventions while at

Qualcomm:

> **At Qualcomm**, you know, one of the most innovative companies in the world, **I had this idea** that hey, um, the MIMO revolution will take place now, and it's in full swing, so the next step is operating systems technology to manage the way applications connect on these new smartphones, because without that there's going to be a disaster on the network. **I took it to the then CEO of Qualcomm**, again too far afield, Qualcomm is a chipset company, too risky, too disruptive, here's another idea for you, go run this new group that we're going to create for you over here that is closer to the technology that we do now. **So I left Qualcomm to start Headwater**, we developed that operating system technology, we distributed it to carriers, pitched it to OEMs, and it's now in every smartphone on the planet.

https://vimeo.com/539945302, dated April 21, 2021) at 46:00-46:51; *see also id.* at 30:00, 41:00

(introduction of panel and Dr. Raleigh).

Headwater also no corroborating evidence to prove its conception date to meet its twin

burdens of overcoming the presumption of Qualcomm ownership and of establishing standing.

<u>Second</u>, Headwater Research LLC lacks standing to bring this lawsuit because it lacks all

substantial rights to the patents-in-suit.  On information and belief, while named Plaintiff

Headwater Research LLC is purportedly listed as the assignee on the patents-in-suit, it "lacks

authority to make decisions concerning licensing and assignments, whether to initiate enforcement

proceedings and/or settlement discussions, how to conduct litigation, and the approval of any

settlements." *Enhanced Sec. Rsch., LLC v. Juniper Networks, Inc.*, No. CIV.A. 09-871-JJF, 2010

WL 2898298, at *5 (D. Del. July 20, 2010).  Named Plaintiff Headwater Research LLC appears

to be nothing more than a shell patent-holding entity that currently employs two individuals:

Gregory Raleigh and Jennifer Smith.[2]  On information and belief, neither Dr. Raleigh nor Ms.

---

[2] On September 15, 2022, just one month before initiating its litigation campaign against Samsung, Headwater submitted filings to the Texas Secretary of State to convert Headwater Research LLC from a Delaware limited liability company to a Texas limited liability company.  On information and belief, Headwater Research LLC employs just one individual in Texas, an operations manager,

Smith own or control Headwater Research LLC, nor are they familiar with Headwater Research LLC's corporate structure, their own organizational responsibilities, or the pleadings and/or discovery responses being served in various litigations initiated by Headwater Research LLC.

Rather, on information and belief, Dr. Raleigh and Ms. Smith report to a separate entity, Headwater Innovations LLC, which, along with its Board, owns a controlling interest (i.e., 100% equity) in Headwater Research LLC.

| SECTION B   Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more. | | | |
| --- | --- | --- | --- |
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
| HEADWATER RESEARCH LLC | TX | 0804749950 | 100.00 |
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
| HEADWATER PARTNERS II LLC | TX | 0804749980 | 100.00 |

Texas Franchise Tax Public Information Report for Headwater Innovations (2023).

| SECTION B   Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more. | | | |
| --- | --- | --- | --- |
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
| HEADWATER RESEARCH LLC | TX | 0804749950 | 100.000 |
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
| HEADWATER PARTNERS II LLC | TX | 0804749980 | 100.000 |

Texas Franchise Tax Public Information Report for Headwater Innovations (2024).

While Gregory Raleigh and others (e.g., James Harris, Charles Giancarlo, and Roger Sippl) were formally listed as officers, directors, and members of Headwater Research in government filings (at least in filings submitted between 2018 and 2022), today Headwater Research's **only** remaining "member" is "Headwater Innovations LLC" who purportedly owns 100% of Headwater Research, is a Delaware LLC, and has a California mailing address (which is actually just the address of Plaintiff's litigation counsel, Russ August & Kabat):

---

at its office located at 110 North College Avenue, Suite 1116, Tyler, Texas 75702. On information and belief, Headwater Research LLC does not make any products, or perform any research at its Tyler office.  On information and belief, Headwater Research only moved to Tyler, Texas from Delaware to try to create the appearance of a legitimate Eastern District presence.  Headwater's corporate representative, Gregory Raleigh, for example, lives in Nevada, not Texas.

| Name | Title | Director | | m | m | d | d | y | y |
|---|---|---|---|---|---|---|---|---|---|
| **GREGORY RALEIGH** | **OFFICER** | ● YES | Term expiration | | | | | | |
| Mailing address **110 NCOLLEGE AVE STE 1116** | City **TYLER** | State **TX** | | ZIP Code **75702** | | | | | |
| Name **JAMES HARRIS** | Title **OFFICER** | Director ● YES | Term expiration | m | m | d | d | y | y |
| Mailing address **110 NCOLLEGE AVE STE 1116** | City **TYLER** | State **TX** | | ZIP Code **75702** | | | | | |
| Name **CHARLES GIANCARLO** | Title **DIRECTOR** | Director ● YES | Term expiration | m | m | d | d | y | y |
| Mailing address **110 NCOLLEGE AVE STE 1116** | City **TYLER** | State **TX** | | ZIP Code **75702** | | | | | |

SECTION A   Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | | m | m | d | d | y | y |
|---|---|---|---|---|---|---|---|---|---|
| **ROGER SIPPL** | **DIRECTOR** | ● YES | Term expiration | | | | | | |
| Mailing address **110 NCOLLEGE AVE STE 1116** | City **TYLER** | State **TX** | | ZIP Code **75702** | | | | | |

Texas Franchise Tax Public Information Report for Headwater Research (2022).

SECTION A   Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | | m | m | d | d | y | y |
|---|---|---|---|---|---|---|---|---|---|
| **HEADWATER INNOVATIONS LLC** | **MEMBER** | ○ YES | Term expiration | | | | | | |
| Mailing address **12424 WILSHIRE BLVD FL 12** | City **LOS ANGELES** | State **CA** | | ZIP Code **90025** | | | | | |
| Name | Title | Director ○ YES | Term expiration | m | m | d | d | y | y |
| Mailing address | City | State | | ZIP Code | | | | | |
| Name | Title | Director ○ YES | Term expiration | m | m | d | d | y | y |
| Mailing address | City | State | | ZIP Code | | | | | |

Texas Franchise Tax Public Information Report for Headwater Research (2024).

On information and belief, it is Headwater *Innovations* (not Headwater *Research*) that is the real party-in-interest with the power to "settle litigation, assign its interests in the patents, and enter into contracts without reservation." *Juniper Networks*, 2010 WL 2898298, at *3 (citing *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 979–80 (Fed. Cir. 2005)).  Indeed, Headwater Innovations stated in filings to the Texas Secretary of State's Office that it engages in "Patent Licensing"—presumably licensing of Plaintiff Headwater Research's patents given that Headwater Innovations is not publicly listed as an assignee on ***any*** patents but instead purportedly owns 100% ownership interest in Headwater Research:

> 6. The purpose or purposes of the limited liability company that it proposes to pursue in the transaction of business in Texas are set forth below. The entity also certifies that it is authorized to pursue such stated purpose or purposes in the state or country under which it is organized.
> **Patent Licensing**

Headwater Innovations' Application for Registration of a Foreign Limited Liability Company. Headwater Innovations—as the party that appears to be in control of Headwater Research's patents and its power to settle and/or litigate this action—should have been, but was not, included as a party to this lawsuit. Fed. R. Civ. P. 17(a)(1).

Headwater Innovations LLC is a Delaware limited liability company created in April 2022 with a principal business address of 2140 Dupont Highway, Camden, DE 19934.[3] On information and belief, Headwater Innovations LLC was created for the sole purpose of insulating its Managers and Board Members—who have the power to make decisions concerning licensing and assignments, whether to initiate enforcement proceedings and/or settlement discussions, how to conduct litigation, and the approval of any settlements—from discovery. Specifically, on information and belief, Headwater Innovations was created to exercise control over all of Headwater Research's patents, litigation strategies, and positions while attempting to shield its own Managers and Board Members from discovery by initiating lawsuits only on behalf of its shell company, Headwater Research—whose two employees know little about the companies' corporate structures, responsibilities, or relationships. On information and belief, Headwater Innovations LLC's "Managers" include at least Jonathan Kagan and Andrei Iancu, and its Agent

---

[3] Headwater Innovations appears to itself be controlled by two other entities: Headwater Investors LLC and Headwater Investors II LLC. Headwater Investors LLC owns 75% of Headwater Innovations and Headwater Investors II LLC owns the remaining 25% of Headwater Innovations. On information and belief, both entities are Delaware LLCs, are managed by Jonathan Kagan, and have used Larry C. Russ—a founding partner of Headwater's litigation counsel's law firm—as their agent. On information and belief, these additional Headwater entities were also created to shield Headwater's controlling members and real parties in interest, which include numerous California-based attorneys (having little to no ties to the Eastern District of Texas), from discovery.

of record with the Delaware Secretary of State is Larry C. Russ, the founding partner of Headwater's counsel's law firm.  For example:



Texas Franchise Tax Public Information Report for Headwater Innovations (2024).

Mr. Kagan is an attorney based in Los Angeles, California with the law firm Irell & Manella LLP.  Mr. Iancu is an attorney based in Los Angeles, California with the law firm Sullivan & Cromwell.  Mr. Iancu was also previously an attorney with the law firm Irell & Manella LLP.  Mr. Russ is an attorney based in Los Angeles, California with the law firm Russ August & Kabat.  Mr. Kagan, Mr. Iancu, and Mr. Russ—three California-based attorneys—are not representing Headwater Research as attorneys of record in this litigation, and none of these individuals is signed onto the Protective Order (Dkt. No. 43).  Rather, each individual appears to be operating in a non-lawyer capacity exercising authority and control over Headwater Research via their interests in, and control over, its parent company and the real party-in-interest to this litigation, Headwater Innovations.  Demonstrating that Headwater Innovations LLC maintains substantial rights to the patents-in-suit, it was Mr. Kagan of Headwater Innovations LLC that signed Powers of Attorney on behalf of (and as an alleged "Member" of) Headwater Research in at least the following *inter partes* review proceedings associated with the Asserted Patents: IPR2024-01407 ('359 patent); IPR2024-01051 ('811 patent); IPR2024-01337 ('110 patent); IPR2024-01396 ('918 patent); IPR2024-01397 ('918 patent).

Finally, "[b]ecause Plaintiff lacked the requisite legal interest in the patents-in-suit at the time it brought this action, it has not suffered any cognizable injury and does not have Article III standing." *Juniper Networks*, 2010 WL 2898298, at *5.

### SECOND ADDITIONAL DEFENSE
#### (Non-Infringement)

Samsung does not and has not infringed, under any theory of infringement, (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid and enforceable claim of the Asserted Patents, either literally or under the Doctrine of Equivalents, and has not committed any acts in violation of 35 U.S.C. § 271.

### THIRD ADDITIONAL DEFENSE
#### (Invalidity)

Each asserted claim of the Asserted Patents is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

One or more claims of the '110 patent fail to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. §§ 101, et seq., including §§ 101, 102, 103, and/or 112.

One or more claims of the '811 patent fail to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. §§ 101, et seq., including §§ 101, 102, 103, and/or 112.

One or more claims of the '359 patent fail to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. §§ 101, et seq., including §§ 101, 102, 103, and/or 112.

One or more claims of the '918 patent fail to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. §§ 101, et seq., including §§ 101, 102, 103, and/or 112.

### FOURTH ADDITIONAL DEFENSE
**(Inequitable Conduct / Infectious Unenforceability)**

The Asserted Patents are unenforceable due to the doctrines of inequitable conduct and infectious unenforceability because the patent applicant(s) knowingly and intentionally failed to disclose known bases for invalidity under pre-AIA 35 U.S.C. § 102 and/or 103. *See, e.g.*, Samsung's Amended Answer and Defenses to Plaintiff Headwater Research LLC's Second Amended Complaint for Patent Infringement in *Headwater I*. *Headwater I*, Dkt. No. 81 at 28-41. As detailed therein, the Asserted Patents are unenforceable at least because a named inventor and prosecuting attorney committed inequitable conduct in connection with the prosecution of the asserted patents in *Headwater I* by knowingly and intentionally failing to disclose known bases for invalidity under pre-AIA 35 U.S.C. § 102 and/or § 103, with the intent to deceive the patent office. *Id*. Named inventors and prosecuting attorneys similarly committed inequitable conduct in connection with the prosecution of the Asserted Patents here by knowingly and intentionally failing to disclose known bases for invalidity, with the intent to deceive the patent office.

The inequitable conduct in connection with the prosecution of the asserted patents in *Headwater I*, and those asserted in this litigation, renders the Asserted Patents in this case unenforceable under the doctrines of inequitable conduct and infectious unenforceability. *See Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-CV-379-LED-JDL, 2011 WL 13134896, at *6 (E.D. Tex. Dec. 13, 2011) ("[I]nequitable conduct in the prosecution of a parent application may render the parent and its progeny unenforceable" (i.e., "infectious unenforceability"), report and recommendation adopted, No. 6:10-CV-379-LED-JDL, 2012 WL 12893881 (E.D. Tex. Jan.

18, 2012)); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288–89 (Fed. Cir. 2011) ("[T]he taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family."). Headwater's deliberate omissions were material to patentability, made with the intent to deceive the patent examiner, and were justifiably relied upon by the examiner in ultimately issuing the Asserted Patents.

Prior to both the January 28, 2009 filing date of U.S. Patent Application No. 61/206,354 ("the '354 Application") and the May 25, 2010 filing date of U.S. Patent Application No. 61/348,022, ("the '022 Application") from which all of the Asserted Patents allegedly claim priority, a version of the Android mobile device operating system ("Android OS") was released on September 23, 2008. Subsequently Android OS Version 1.1 was released on February 9, 2009, Android OS Version 1.5, also known as Cupcake, was released on April 27, 2009, Android OS Version 1.6, also known as "Donut," was released on September 15, 2009, Android OS Versions 2.0, 2.0.1, and 2.1, collectively known as "Éclair," were released on October 27, 2009, December 3, 2009, and January 11, 2010 (respectively), and Android OS Version 2.2, also known as "Froyo," was released on May 20, 2010. Each of these versions of the Android OS were publicly distributed and widely disseminated before the filing of the '354 and/or '022 Applications. Indeed, the source code for many of these versions was publicly available on the Internet as part of the Android Open Source Project. This material system art, and its corresponding devices/documentation (including both patent and non-patent publications), is prior art under at least pre-AIA 35 U.S.C. § 102 (a) and (b). Such corresponding documentation includes at least a May 27, 2009 presentation by Google engineer Jeff Sharkey entitled "Coding for Life – Battery Life, That Is." *See* Jeff Sharkey, "Coding for Life – Battery Life, That Is" (May 27, 2009); Jeff Sharkey, "Coding for Life – Battery

Life, That Is" YouTube Video (May 27, 2009), available at
https://www.youtube.com/watch?v=OUemfrKe65c.

As explained in more detail below, the Android OS, and material pertaining to the Android

OS, was material to the later prosecution and examination of all Asserted Patents because it would

have anticipated and/or rendered obvious all of the asserted claims. In addition, Headwater (whose

managers include Jonathan Kagan), various of its employees, the inventors of the Asserted Patents,

and the Asserted Patents' prosecuting agent(s) knew about Android OS, and its related

documentation, but failed to disclose this material prior art to the USPTO.  Based on these facts,

the most reasonable inference is that Headwater's failure to disclose such material prior art during

prosecution was an intentional fraud on the USPTO.

Each entity and person involved in the prosecution of the '354 Application, the '022

Application, and the Asserted Patents, including at least Headwater, whose Managers include(d)

Jonathan Kagan, Roger Sippl, and Headwater Innovations and whose previous technical advisor

was Cory Modlin, inventors Gregory Raleigh, Alireza Raissinia, and James Lavine, as well as their

patent prosecution counsel, including at least James Harris, owed a duty of candor to the Examiner

during the prosecutions of the '354 Application, the '022 Application, and the applications that

ultimately issued as the Asserted Patents. On information and belief, each person involved in the

prosecution of the '354 Application, the '022 Application, and the Asserted Patents knew of the

Android OS, and related patent and non-patent literature, at the times of filing of the '354

Application, the '022 Application, and each of the Asserted Patents. For example:

Gregory Raleigh.  Gregory Raleigh is the first named inventor on all 4 Asserted Patents, as

well as the founder and Lead Director of the Board of Directors for Plaintiff Headwater Research

LLC.  On information and belief, Gregory Raleigh was acutely familiar with the Android OS both

before and during prosecution of the '354 Application, the '022 Application, and the applications that led to the issuance of the Asserted Patents, and recognized the material nature of the Android OS (and any related literature) as prior art. *See, e.g.*, *Headwater I*, Dkt. No. 78-1 and 81-1 at 26:12-27:4, 115:18-22. Gregory Raleigh admitted under oath that before and during prosecution of the applications that led to the Asserted Patents, he: (1) knew about the Android OS; (2) researched how it controlled applications (i.e., the subject matter of the Asserted Patents) along with co-inventor Alireza Raissinia; and (3) hired a team of Android OS software engineers in his role as CEO of ItsOn, Inc. to develop the ItsOn product (which utilized underlying Android OS functionalities that would have been material to the patentability of the Asserted Patents) and to explain to him how the Android OS did and did not function. *Id.* at 257:10-13 ("I had a pretty good understanding of what Android did and didn't do in general[.]"), 119:18-24, 120:6-13, 257:20-258:2, 113:18-114:9, 120:18-122:9.

Gregory Raleigh was fluent in a number of programming languages and developed his knowledge of the Android OS, whose source code was open to the public (e.g., the Android Open Source Project), via his own personal research into how the Android OS functions and via his team of Android OS software engineers, both before and during the prosecutions of the '354 Application, the '022 Application, and the applications that led to the Asserted Patents. *Id.* at 29:8-30:3 ("Q. What program languages were you fluent in? A. Okay. Fortran, CPlusPlus, Basic, Visual Basic, assembly language, a little bit of work with Python here and there … Q. When was the last time you coded? A. I still code a little bit in MATLAB[.]"), 117:9-17 ("Q. I'll rephrase. By 2010 were you familiar with the Android operating system? . . . THE WITNESS: You know, okay, generally familiar. I'm not sure what familiar means. I was certainly aware of Android. I knew of some of the features."), 118:23-119:3.

Gregory Raleigh's testimony also confirms that he was aware that Android non-patent literature was material to validity. *See, e.g.*, *id.* at 250:15-258:4. Gregory Raleigh further understood that he had a duty to disclose to the Patent Office all information which is relevant in assessing patentability of the invention which is the subject of the patent applications he was filing. *See id.* at 25:22-26:7.

Despite Gregory Raleigh's extensive prior knowledge of the Android OS before the alleged priority dates of the Asserted Patents and belief that art related to the Android OS was relevant to the patentability of the applications that eventually led to the Asserted Patents—because such art was related to the claimed technology—he chose not to disclose any Android literature to the Patent Office when filing the '354 Application, the '022 Application, or the applications that led to the Asserted Patents.

Finally, after being extensively questioned during his deposition about his knowledge of the Android OS, Gregory Raleigh admitted to improperly speaking to counsel during a break in his deposition about the Android OS, and further improperly refused to answer questions concerning his mid-deposition discussions with counsel about the Android OS. *Id.* at 122:10-124:22 (admitting to discussing Android with counsel during a break after being questioned about Android immediately prior to the break). Gregory Raleigh's conference with counsel about a main topic of his testimony (and topic that was directly relevant to inequitable conduct claims) during a break in his deposition was improper. *See ReedHycalog UK, Ltd. V. Diamond Innovations Inc.*, No. 6:08-CV-325, 2010 WL 3238312, at *7 (E.D. Tex. Aug. 12, 2010) (finding counsel's conference with a witness "during a break in his deposition" and counsel's refusal to allow that witness to "answer questions about the discussion with counsel" to be both improper and an example of "litigation misconduct").

Based on all the foregoing, the single most reasonable inference able to be drawn is that Gregory Raleigh acted with the specific intent to deceive the Patent Office and that his failure to disclose such material prior art during prosecution was an intentional fraud on the USPTO. *Eon Corp.*, 2011 WL 13134896, at *3 ("[T]he specific intent to deceive must be 'the single most reasonable inference able to be drawn.'" (quoting *Therasense*, 649 F.3d at 1290)). Any conclusory assertions that Gregory Raleigh never intended to withhold such material prior art are entitled to no weight. *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1317 (Fed. Cir. 2008) (finding conclusory statements that prosecuting attorney never "intentionally misled the United States Patent Office" and "did not knowingly withhold any information from the Patent and Trademark Office" to be "entitled to no weight").

James Harris: James Harris, who previously served as Headwater's General Counsel, acting CEO, and patent prosecution counsel of record for two of the four Asserted Patents, was also very familiar with Android OS both before and during the prosecution of the applications that led to the issuance of the Asserted Patents, recognized that the Android OS (and related literature) was both material and non-cumulative prior art, and was familiar with the duty to disclose such material prior art to the Patent Office but failed to do so.

During his November 27, 2023 deposition, James Harris: (1) was aware that parts of Android's source code are open source; (2) had knowledge of multiple programming languages (and thus would have understood Android's open source code); and (3) was familiar with Android code being open to the public. *Headwater I*, Dkt. No. 78-3 and 81-3 at 146:19-21; *see also id.* at 150:7-11 ("Q. Were you aware that Android's source code was open to the public?... A. I am aware that parts of Android's source code are open source."), 19:5-17 ("Q. Do you have any knowledge of programming languages? A. Yes. Q. Which ones are you fluent in? A. I don't know that I'm

26

fluent in any of them anymore. I'm certainly most fluent in C, and C++, but there are a number of languages that I understand well, but not well enough that I code in them every day, but I can read them. Q. Can you list those languages? A. Well, back in the day, Fortran, Ada. Also you know, more recent Java, similar – similar languages to that, but probably mostly Java."), 147:7-8.

When prosecuting U.S. Patent No. 10,237,773 ("the '773 Patent"), which relates to the Asserted Patents and which was first filed for on May 11, 2018, Mr. Harris included a citation to "Android Cupcake excerpts, The Android Open Source Project, Feb. 10, 2009." *Headwater I*, Dkt. No. 78-4 and 81-4 at p. 13. Though he failed to disclose this Android OS reference with respect to either of the 2 Asserted Patents he prosecuted on behalf of Headwater, Mr. Harris testified that he disclosed this reference—predating all Asserted Patents and the '022 Application to which they allegedly claim priority—for the non-asserted but related '773 Patent because it was potentially material and noncumulative. *Headwater I*, Dkt. No. 78-3 and 81-3 at 167:2-168:16. In other words, Mr. Harris conceded the materiality and noncumulative nature of Android OS-related literature as prior art to the Asserted Patents.

Mr. Harris failed to disclose any Android OS literature to the Examiner when prosecuting U.S. Patent Nos. 9,647,918 and 9,179,359 despite: (1) being familiar with aspects of Android that were related to Headwater's inventions; and (2) believing that Android OS literature was material and noncumulative of the art cited in the aforementioned Asserted Patents. *Headwater I*, Dkt. No. 78-3 and 81-3 at 159:2-3. Based on all the foregoing, the single most reasonable inference able to be drawn is that James Harris similarly acted with the specific intent to deceive the Patent Office and that his failure to disclose such material prior art during prosecution was an intentional fraud on the USPTO. *See Eon Corp.*, 2011 WL 13134896, at *3. Any conclusory assertions that James Harris never intended to withhold such material prior art are entitled to no weight. *See Praxair*,

543 F.3d at 1317 (finding conclusory statements that prosecuting attorney never "intentionally misled the United States Patent Office" and "did not knowingly withhold any information from the Patent and Trademark Office" to be "entitled to no weight").

On information and belief, Headwater and its Managers further knew that Android OS prior art was material to the validity of the Asserted Patents because InterDigital decided in 2020 to back out of a deal to purchase Headwater and its entire patent portfolio containing hundreds of patents for $60 million (discussed in more detail below) after providing Headwater with certain Android OS prior art, including Mr. Sharkey's May 27, 2010 presentation about the Android OS entitled "Coding for Life – Battery Life, That Is." *Headwater I*, Dkt. No. 201 at 40:23-41:15 ("Headwater was willing to sell its entire company, including its patents, for $60 million. It agreed to do that. However, after InterDigital did some more due diligence, including learning about some prior art that – that Samsung contends Headwater withheld from the Patent Office, InterDigital ultimately backed out of the deal."), 44:10-45:5 ("[O]ne of the things that was exchanged between . . . Headwater and InterDigital was a piece of prior art. And it's the same piece of prior art that is at the center of Samsung's inequitable conduct defense. It's – it's a presentation that relates to an early version of Android.").

Samsung has identified the specific claim limitations to which such withheld Android OS prior art is relevant, and wherein the Android OS material information can be found in its Invalidity Contentions. As indicated therein, the following Android OS Versions (and publications relating to them) were publicly available, and widely known across the industry,[4] before the filing of the '354 and/or '022 Applications to which all Asserted Patents attempt to claim priority:

---

[4] Indeed, Mr. Harris expressly testified that "throughout the smartphone era there has been Blackberry, Android, and iOS." *Headwater I*, Dkt. Nos. 78-3 and 81-3 at 193:3-5.

- Android 1.0 (released September 2008)

- Android 1.1 (released February 2009)

- Android Cupcake (1.5) (released April 2009)

- Android Donut (1.6) (released September 2009)

- Android Éclair (2.0, 2.0.2, 2.1) (released October 2009 – January 2010)

- Android Froyo (2.2) (released May 20, 2010)

The Examiner would have recognized that Android OS versions predating the Asserted Patents' alleged priority dates included files such as ConnectivityManager, ActivityManager, Activity, NetworkInfo, NetworkStateTracker, ThrottleManager, TrafficStats, ConnectivityManagerMobileTest, Socket, SocketTest, Power, PowerManager, PowerManagerTest, BatteryManager, and BatteryStats, which each disclose one or more claim limitations of the Asserted Patents (according to Headwater).[5]  Taken as a whole, the Android OS, and patent and non-patent literature describing the functionality of the Android OS (including the May 27, 2010 presentation by Jeff Sharkey), constitutes material prior art to the Asserted Patents because but for Headwater withholding it from the Patent Office, the Asserted Patents would not have issued.

Because of this fraud on the Patent Office, which is only exemplified by the above citations, Samsung respectfully requests that the Court render all Asserted Patents unenforceable due to inequitable conduct and/or infectious unenforceability.  With respect to Samsung's defense of infectious unenforceability, an immediate and necessary relationship exists here between the enforcement of the claims of the Asserted Patents in this case and the asserted patents in *Headwater*

---

[5] Remarkably, Headwater continues to accuse certain of these features in Android's open source code, which have been around since before the alleged priority dates of the Asserted Patents and thus throughout these prosecutions, of infringing the asserted claims.

*I* that were obtained via inequitable conduct as well as the '354 and '022 provisional applications that were obtained via inequitable conduct.  All of the asserted patents in both cases allegedly claim priority to, *inter alia*, four provisional patent applications, i.e., provisional application No. 61/206,354, filed on January, 28, 2009; provisional application No. 61/206,944, filed on February 4, 2009; provisional application No. 61/207,393, filed on February 10, 2009; and provisional application No. 61/207,739, filed on February 13, 2009.

**FIFTH ADDITIONAL DEFENSE**
**(Damages and Costs)**

Headwater's claims for damages are statutorily limited or wholly barred under 35 U.S.C. § 286.

Headwater's claims for damages should also be limited by numerous valuations Headwater has put on its own business and/or patent portfolio.  For example:

> In 2019, Headwater and InterDigital began negotiating the sale of Headwater to InterDigital.

> They negotiated for a few months, and eventually they signed a letter of intent in early 2020 for Headwater to sell the whole company to InterDigital for $60 million…

> So Headwater was willing to sell its entire company, including its patents, for $60 million. It agreed to do that. However, after InterDigital did some more due diligence, including learning about some prior art that -- that Samsung contends Headwater withheld from the Patent Office, InterDigital ultimately backed out of the deal.  They said: Headwater, you might be willing to accept $60 million for this, but we're not willing to pay that much.

*Headwater I*, Dkt. No. 201 at 41:1-15.  This is clearly "relevant to the issue of damages" as "***Headwater valued its whole company, including its patents, at $60 million***." *Id.* at 42:13-15. And even then, others in the industry did not think Headwater's patents were worth it.  *Id.* at 41:1-15.  As Headwater's counsel publicly stated to the Court, Headwater's own damages expert, Mr.

Kennedy, believes that: "***$60 million is the true value***" of Headwater and its patents and "***should be a cap on all damages***[.]"  *Id.* at 69:3-10.

Headwater's "$60 million" self-valuation in 2020 is supported by another valuation Headwater put on itself and its patent portfolio several years earlier.  In the "2016 time frame," "an internal financial audit . . . revealed to Headwater that Dave Johnson, their then CFO, was embezzling money from Headwater."[6]  *Id.* at 159:17-24.  "The embezzlement led to a settlement agreement with David Johnson which included terms that are informative of a valuation of a company at the time[.]"  *Id.* at 160:14-17.  Specifically, the embezzlement (or "unauthorized loan") from Headwater was "in the amount of approximately a million dollars."  *Headwater I*, Dkt. No. 351 at 108:23-109:4.  As part of the settlement, "Headwater placed a two percent value on the $1 million, which provides a company-wide valuation" of $50 million.  *Id.* at 109:9-13.

## SIXTH ADDITIONAL DEFENSE
### (Notice, Marking)

Headwater's claims for damages are statutorily limited or wholly barred under 35 U.S.C. § 287.

Marking. Headwater alleges that the "ItsOn software," "ItsOn solution/s," and/or "ItsOn application" practiced the Asserted Patents. Headwater represents that products, purportedly including Samsung devices operating on the Sprint network, implementing the "ItsOn software," "ItsOn solution/s," and/or "ItsOn application" were sold and/or offered for sale at least between 2013 and 2017. Those products allegedly included at least the Samsung Grand Prime, the Samsung GS5 Sport, the Samsung GS5, the Samsung Note 4, Samsung Galaxy S3, Samsung Galaxy S4, Samsung Galaxy S5 Sport, Samsung Galaxy S3 T, Samsung Galaxy Tab 4, Samsung Galaxy Tab

---

[6] Despite Headwater terminating Dave Johnson after the embezzlement "was discovered," Greg Raleigh allowed Mr. Johnson to remain the "CFO of ItsOn." *Headwater I*, Dkt. No. 201 at 159:17-24, 161:1-15.  Shortly thereafter, Mr. Johnson became CEO of ItsOn, which then went bankrupt.

S, and Samsung Note Edge, among others. According to Dr. Gregory Raleigh, phones implementing the "ItsOn software," "ItsOn solution/s," and/or "ItsOn application" on the Sprint network were sold in that same time period. *Headwater I*, Dkt. Nos. 78-1 and 81-1 at 237:14-238:2. To the extent that Headwater claims ItsOn practiced the Asserted Patents, Headwater has failed to satisfy the marking requirement per 35 U.S.C. §287(a) with respect to at least Samsung devices (or any devices operating on the Sprint network) allegedly containing "ItsOn software," "ItsOn solution/s," and/or "ItsOn application," including those specifically identified above.

Notice. Despite apparently contemplating suing Samsung since 2016-2018, Headwater did not provide actual or constructive notice of (1) the specifically Asserted Patent numbers (in writing or orally) or (2) any purported infringement of the Asserted Patents (in writing or orally) to Samsung prior to the filing of the Complaint in this litigation out of fear of *inter partes* review proceedings and declaratory judgment actions. *Headwater I*, Dkt. No. 201 at 128:6-131:22. For example, in *Headwater I* (which was filed in October 2022), Headwater stipulated to the following:

> Headwater stipulates that it did not directly identify to Samsung by patent number any specific Headwater patent prior to the filing of this action.

> Headwater is not aware of Samsung having been given notice verbally by any person of any Asserted Patent number prior to the filing of this lawsuit.

> No document produced in this case shows Headwater alleging that a specific Samsung product infringes a specific Headwater patent number before the Original Complaint.

*Headwater I*, Dkt. No. 351 at 124:9-20. Headwater similarly failed to identify to Samsung the specific Headwater patents being asserted in this litigation prior to the filing of this action.

### SEVENTH ADDITIONAL DEFENSE
### (Spoliation)

Headwater cannot demonstrate whether or not ItsOn practiced the Asserted Patents for purposes of infringement, validity, marking, secondary considerations, or allegations of copying,

among other things, and further committed inequitable conduct as discussed above, given that Headwater, its Managers (including Jonathan Kagan), and its counsel engaged in "intentional" and "egregious violation[s]" of the Court's Discovery Orders and spoliation with respect to ItsOn code (which on information and belief utilized various now-accused Android OS functionalities) and technical documents. *Headwater I*, Dkt. No. 401.

In *Headwater I*, the Court noted that "[c]entral to Headwater's Complaint is an allegation that Samsung copied ItsOn's commercialization of the technology practicing the asserted patents." *Id.* at 1. To defend against these allegations, "Samsung sought discovery of ItsOn's source code and technical documents." *Id.* It was "undisputed that Headwater and Headwater's counsel knew of [their] existence and location." *Id.* at 2. Specifically, Headwater knew they were located with an "Assignment for Benefit of Creditors" (or "ABC") that was set up after "ItsOn filed bankruptcy" in 2018. *Id.* at 1. Indeed, "Headwater counsel Mr. Reza Mirzaie prepared a declaration that he had personally been in communication with Bernie Murphy, a representative of Sherwood Partners (manager of the [ItsOn] ABC entity) who confirmed the current existence and accessibility of the ItsOn source code" at their office "as of February 2023." *Id.* Moreover, Headwater's counsel, Mr. Mirzaie, stated to the Court on June 27, 2024 that Headwater was coordinating with the ItsOn ABC entity because "there was a question from the client," i.e., Headwater, "about whether [the ItsOn source code] was something that they can purchase back." *Headwater I*, Dkt. No. 344, 48:9-49:1; Murphy Dep. Tr. at 177:21-178:20 (testifying that email to Headwater's counsel related to whether "the assets [i.e., ItsOn source code] were – could be still for sale for purchase by [Headwater]").

Despite knowing where ItsOn's source code and technical documents were presumably located as of February 2023, and that "Samsung was actively seeking the ItsOn source code and technical documents," *Headwater I*, Dkt. No. 401 at 5, "Headwater failed to disclose the current

location and existence of the ItsOn source code," *id.* at 2.  "Neither Bernie Murphy nor Sherwood Partners were ever included in Headwater's disclosures or discovery responses."  *Id.* at 3.  And Headwater's 30(b)(6) witness—who on information and belief was designated to testify on Headwater's behalf by its Managers—falsely stated under oath in November 2023 (~nine months after Headwater, through its counsel, sought to purchase ItsOn's source code from the ABC) that Headwater was "not sure" "what happened to ItsOn's source code after it went out of business" five years earlier:

> Q.  After the ItsOn went out of business, what happened to its source code?
>
> A.  I'm not sure.
>
> Q.  Do you [know] what happened to ItsOn's technical specifications?
>
> A.  Not sure.
>
> Q.  Who would know what happened to ItsOn's source code after it went out of business?
>
> A.  I'm not sure.  Perhaps –
>
> Mr. Fenster: I'll caution you not to speculate. If you have information, you may offer it.[7]
>
> A. I'm not sure.
>
> Q.  What happened to the remainder of ItsOn's documents when the company went out of business?
>
> Mr. Fenster: Object to form.
>
> A.  Exactly what happened, I'm not sure.

---

[7] While it is possible that Dr. Raleigh was originally going to truthfully answer Samsung's counsel's question about what happed to ItsOn's source code, Headwater's counsel's interjection—in the middle of Dr. Raleigh's answer—improperly warning him not to speculate caused Dr. Raleigh to cut short his response. *Headwater I*, Dkt. No. 344 at 14:20-22 ("It looked like he was about to answer the question before he was interrupted with a speculation warning.").

Q.  Do you know whether any of ItsOn's technical specifications or source code still exist?

A.  Not sure.

*Headwater I*, Dkt. No. 344 at 12:16-13:10.  Headwater's testimony under oath about the ItsOn source code was false.  Its attorneys' repeated representations to Samsung about the existence and location of ItsOn's source code were also false.  And, as result, the Court found that Headwater (which appears to include at least Dr. Raleigh and Mr. Kagan) *and* its counsel, Russ August & Kabat, "committed an egregious violation of the Discovery Order":

> Knowing that your adversary is repeatedly seeking documents (especially documents created by your client), knowing where those are (especially when knowing the name of the person possessing the document, who tells you he is willing and able to produce them), yet telling your adversary that what you've already given them is all that there are, is indefensible.

*Headwater I*, Dkt. No. 401 at 5.  As noted by the Court, Headwater's discovery violations were "intentional" and "a significant sanction" was warranted.  *Id.* at 6.

Headwater's discovery misconduct and spoliation did not stop there.  After Headwater was forced to tell Samsung where the ItsOn source code was located (after Samsung filed a motion for spoliation-based sanctions), Samsung took discovery of individuals associated with the ItsOn ABC.  Samsung then discovered that former Headwater employees—including James Lavine (a named inventor on two of the four Asserted Patents)—gave the ItsOn ABC passwords that could not access the source code files (i.e., incorrect passwords).  This was confirmed by Bernie Murphy of Sherwood Partners—the manager of the ItsOn ABC—who testified in a deposition taken in *Headwater Research LLC v. Samsung Electronics Co., Ltd, et al.*, No. 2:23-cv-00103-JRG-RSP ("*Headwater II*") that the ItsOn ABC received a "fob with a Post-it on it saying, Passwords" along with CDs that allegedly housed ItsOn's source code, and that those "passwords" did not work:

Q. …[T]he password for the source codes were delivered to the Assignee on a fob with a Post-it on it saying, Passwords in a Ziploc bag with CDs, housing the files that I sent to you a screenshot of the other day.  Do you see that writing?

A. Yes, I do.

Murphy Dep. Tr. at 88:6-12.

Q. …And my understanding is, let me know if I'm wrong, this is a screenshot of the files that ItsOn ABC possession but is unable to open due to password protection limitations.  Is that fair?

A. I believe that is correct.

*Id.* at 89:1-7.

Q. Okay. And my understanding from your counsel is that the passwords that Mr. Lavine provided, ItsOn ABC has them, has attempted to apply them to gain access to the files that are not opening, but they do not – they do not work in gaining such access.  Is that right?

A.  Yeah . . . the passwords that we apparently have do not work.

Murphy Dep. Tr. at 94:5-15.

Q. So with respect to the files that ItsOn ABC says it made available to Samsung to inspect, those are password protected.  Correct?

A. That's my understanding, the files that have not yet been reviewed.

Q. And ItsOn ABC's IT tried to access those files with passwords that it was provided and possesses.  Isn't that right?

A. That's my understanding.

Q. Yeah. But ItsOn ABC, with those passwords in hand, could not access those files. Correct?

A. That's my understanding.

Q. So you don't have any working passwords to give to Samsung to look at these files in attempt to access them, do you?

A. Not that I'm aware of.

*Id.* at 179:3-22.  Headwater's failure to preserve access to the ItsOn source code files was further confirmed by counsel for the ItsOn ABC, who informed Samsung that the "passwords provided" by Mr. Lavine after ItsOn Inc. went bankrupt were "not correct":

> The Assignee has confirmed that there are approximately 15 files/folders that we cannot access because they contain encrypted or password protected data.  The Assignee has also confirmed that the encryption keys and the passwords provided at the initiation of the General Assignment are not correct.  Many attempts were made to no avail.  Accordingly the Assignee is blocked from accessing any of this information in these blocked folders which includes the source codes, and has no means of producing that information.

Murphy Dep. Ex. 6 at 7.

On information and belief, Headwater was in discussions with at least the Irell & Manella, Tensegrity, and Caldwell Cassady law firms about suing Samsung for alleged patent infringement in the 2016-2018 time period.  *Headwater I*, Dkt. No. 201 at 128:6-131:22; *Headwater I*, Dkt. No. 344 at 21:21-22 ("Headwater . . . had been planning to sue Samsung since 2017, Dr. Raleigh testified[.]").  Headwater thus anticipated litigation with Samsung—knowing full well that ItsOn's source code and technical documentation would be relevant—before ItsOn went bankrupt at the beginning of 2018.  Yet, on information and belief, Headwater—despite having control over the ItsOn code and other relevant ItsOn ESI—never sent/issued a litigation hold and allowed the source code and other ESI to go into receivership with the ItsOn ABC for liquidation, failed to provide the ItsOn ABC with passwords to access any of the ItsOn source code files, and has been either unable or unwilling to provide the requisite passwords in the various Headwater/Samsung litigations that have taken place since that time.  Source code files that cannot be accessed are akin to source code files that no longer exist, and Headwater's failure to maintain such material evidence despite indisputably anticipating litigation against Samsung is spoliation.

**EIGHTH ADDITIONAL DEFENSE**
**(Laches, Equitable Estoppel, Waiver, and/or Unclean Hands)**

Headwater's attempted enforcement of the Asserted Patents against Samsung is barred by laches, equitable estoppel, waiver, acquiescence, and/or unclean hands.

**NINTH ADDITIONAL DEFENSE**
**(Prosecution History Estoppel and/or Disclaimer)**

Headwater's claims are barred by the doctrine(s) of prosecution history estoppel and/or disclaimer based on statements, representations, and admissions made during prosecution of the patent applications resulting in the Asserted Patents.

**TENTH ADDITIONAL DEFENSE**
**(Covenant Not to Sue, License, and/or Estoppel)**

Headwater's claims are barred to the extent the alleged infringement is licensed, either expressly or impliedly, or otherwise authorized.  Moreover, Headwater's claims are barred because it entered an agreement providing Samsung the protection of a covenant not to sue, a license (express or implied), and/or agreement (contractual or otherwise) that legally estops Headwater from bringing this lawsuit against Samsung.

**ELEVENTH ADDITIONAL DEFENSE**
**(Failure to State a Claim)**

Headwater's Complaint fails to state a claim upon which relief can be granted.

**TWELFTH ADDITIONAL DEFENSE**
**(Prosecution Laches)**

Headwater's Asserted Patents issued after an unreasonable, inexcusable, and prejudicial delay amounting to an egregious misuse of the statutory patent system under the totality of the circumstances.  Thus, the Asserted Patents are unenforceable under the doctrine of prosecution laches.

The Federal Circuit has explained that "the doctrine of prosecution laches places an additional, equitable restriction on patent prosecution conduct beyond those imposed by statute or PTO regulation," and that "[a]n applicant must therefore not only comply with the statutory requirements and PTO regulations but must also prosecute its applications in an equitable way that avoids unreasonable, unexplained delay that prejudices others." *Hyatt v. Hirshfield*, 998 F.3d 1347, 1366 (Fed. Cir. 2021).

Headwater chose to pursue a "shoot first, aim later" strategy in prosecuting each of the Asserted Patents as well as dozens of related patents. Headwater filed the provisional application from which the Asserted Patents allegedly claim priority, U.S. Patent Application No. 61/206,354 ("the '354 Application"), on January 28, 2009, but it did not file applications for the Asserted Patents until many years later, ranging from more than three years to more than seven years of delay.

Headwater's unreasonable delays are inexcusable. Samsung has been prejudiced insofar as it has invested in, worked with, and used the technology that is now being accused of infringing the Asserted Patents during the time in which Headwater delayed its prosecution. The features accused of infringing the Asserted Patents are primarily part of the Android operating system ("Android OS") employed by Samsung's accused products. While Samsung was investing significant time and expense integrating the Android OS into its mobile devices, Headwater was serially prosecuting the claims it now asserts.

## **RESERVATION OF ADDITIONAL DEFENSES**

Samsung reserves the right to assert additional defenses that may surface through discovery in this action.

## DEMAND FOR JURY TRIAL

Defendants demand a jury trial on all issues that may be so tried.

## PRAYER FOR RELIEF

WHEREFORE, Samsung respectfully prays that this Court enter judgment in Samsung's favor against Headwater and requests the following relief.

A. A complete denial of Headwater's requests for damages, costs, expenses, injunction, and any other form of relief;

B. Dismissal with prejudice of all claims in Headwater's Complaint against Samsung;

C. A permanent injunction restraining Headwater and its respective officers, partners, employees, agents, parents, subsidiaries, and affiliates, and any other persons acting on its behalf or in concert with it, from charging, suing or threatening, orally or in writing, that any of the Asserted Patents have been infringed by Samsung under any subsection of 35 U.S.C. §§ 271 or 281;

D. A declaration that this is an exceptional case under 35 U.S.C. § 285 and awarding to Samsung its reasonable costs and expenses of litigation, including but not limited to attorneys' fees and expert witness fees;

E. An award to Samsung of its costs and disbursements in defending in this action brought by Headwater; and

F. An award to Samsung of any and all further relief as this Court may deem just and proper.

Dated: January 17, 2025                     Respectfully submitted,

                                    By:     */s/ Thad C. Kodish*
                                            Ruffin B. Cordell
                                            TX Bar No. 04820550
                                            Michael J. McKeon
                                            DC Bar No. 459780
                                            mckeon@fr.com
                                            Jared Hartzman (*pro hac vice*)
                                            DC Bar No. 1034255
                                            hartzman@fr.com
                                            **FISH & RICHARDSON P.C.**
                                            1000 Maine Avenue, SW, Ste 1000
                                            Washington, D.C. 20024
                                            Telephone: (202) 783-5070

                                            Thad C. Kodish
                                            GA Bar No. 427603
                                            tkodish@fr.com
                                            Sara C. Fish
                                            GA Bar No.
                                            Christopher O. Green
                                            GA Bar No.
                                            Benjamin K. Thompson
                                            GA Bar No. 633211
                                            bthompson@fr.com
                                            **FISH & RICHARDSON P.C.**
                                            1180 Peachtree St. NE, Fl. 21
                                            Atlanta, GA 30309
                                            Telephone: (404) 892-5005

                                            Melissa R. Smith
                                            State Bar No. 24001351
                                            Melissa@gillamsmithlaw.com
                                            **GILLAM & SMITH, LLP**
                                            303 South Washington Avenue
                                            Marshall, Texas 75670
                                            Telephone: (903) 934-8450

                                            Harry L. Gillam, Jr.
                                            State Bar No. 07921800
                                            **GILLAM & SMITH, LLP**
                                            102 N. College, Ste. 800
                                            Tyler, Texas 75702
                                            Telephone: (903) 934-8450

Jon Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 17, 2025.

*/s/ Thad C. Kodish*
Thad C. Kodish