**PUBLIC VERSION**

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC<br><br>     *Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>     *Defendants*. | Case No. 2:23-cv-00641-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37(E)(1)**

**PUBLIC VERSION**

## TABLE OF CONTENTS

I. BACKGROUND ....................................................................................... 1

   A. 2008-2017: HW and ItsOn "Operate in Conjunction"................................. 1

   B. 2011-2016: ItsOn, Sprint, Samsung and the ItsOn Solution......................... 3

   C. 2009-2017: HW Contemplates Litigation—with ItsOn............................... 3

   D. 2016-2018: ItsOn Loses Money and Investors, Fails to Pay Royalties, Folds ....... 4

      1. 2016-2017: The Plan ........................................................................ 4

      2. 2017-2018:  ItsOn ABC, SP, Bernie Murphy (the "Assignee/s")................... 4

      3. 2018: ItsOn Asset Retention and Transfer to the Assignee .......................... 5

      4. 2018-Today: Assignee Was Unable to Monetize ItsOn's Assets ................... 5

   E. 2022 *HW1* Case: HW and RAK Sanctioned for Violating Discovery Order ......... 6

   F. 2023 *HW3* Case: Spoliation of ItsOn ESI............................................... 6

      1. HW (Again) Alleges that Samsung Copied the ItsOn Solution ..................... 6

      2. Discovery into HW's Copying Allegations Includes ItsOn ESI ..................... 6

      3. The ItsOn ESI is Gone: Passwords Never Worked; Much Never Retained .... 7

II. LEGAL STANDARD................................................................................ 8

III. ARGUMENT ......................................................................................... 8

   A. HW Had Duty to Preserve the ItsOn ESI............................................... 8

      1. When: Anticipation of Litigation, 2017 and Before ................................. 8

      2. What: Relevant Evidence in Possession, Custody, Control. .......................... 9

   B. HW Failed to take Reasonable Steps to Preserve the ItsOn ESI ........................ 12

   C. The ItsOn ESI Cannot be Restored or Replaced...................................... 14

   D. HW's Failure to Preserve the ItsOn ESI Significantly Prejudices Samsung ........ 14

   E. HW should be Precluded from Offering Copying-Based Arguments ................. 14

**PUBLIC VERSION**

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*Allstate Texas Lloyd's v. McKinney*,
   964 F. Supp. 2d 678 (S.D. Tex. 2013) ...................................................................................9

*American Technical Ceramics Corp. v. Presidio Components, Inc.*,
   2019 WL 2330855 (E.D. N.Y. 2019) ............................................................................10, 15

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
   No. 2:15-CV-1047-RSP, 2016 WL 11750180 (E.D. Tex. Nov. 30, 2016).....................10, 15

*Ashton v. Knight Transp., Inc.*,
   772 F.Supp.2d 772 (N.D. Tex. 2011) ...............................................................................9, 14

*Balancecxi, Inc. v. Int'l Consulting*,
   2020 WL 6886258 (W.D. Tex. Nov. 24, 2020) ....................................................................8

*Diamond Consort., Inc. v. Manookian*,
   No. 4:16CV94ALM, 2017 WL 3301527 (E.D. Tex. Aug. 3, 2017).....................................12

*Edwards v. Jr. State of Am. Found.*,
   No. 4:19CV140SDJ, 2021 WL 1600282 (E.D. Tex. Apr. 23, 2021).....................................15

*GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*,
   282 F.R.D. 346 (S.D.N.Y. 2012), *aff'd*, 2012 WL 1849101
   (S.D.N.Y. May 21, 2012) .....................................................................................................11

*Guzman v. Jones*,
   804 F.3d 707 (5th Cir. 2015) ...............................................................................................9

*U.S. ex rel. Harman v. Trinity Indus., Inc.*,
   No. 2:12cv89JRG, 2014 WL 12603247 (E.D. Tex. Oct. 10, 2014) ...........................11, 13, 15

*Jim S. Adler, P.C. v. McNeil Consultants, LLC*,
   2023 WL 2699511 (N.D. Tex. Feb. 15, 2023)......................................................................8

*LendingTree, LLC v. Zillow, Inc.*,
   2014 WL 1309305 (W.D.N.C. Mar. 31, 2014)....................................................................9

*Moody v. CSX Transport., Inc.*,
   271 F. Supp. 3d 410 (W.D.N.Y. 2017) .................................................................................14

*Mullin v. Bayline, Inc.*,
   2021 WL 5811716 (D. Mass. 2021) .....................................................................................11

*In re NTL, Inc. Secs. Litig.*,
    244 F.R.D. 179 (S.D.N.Y. 2007) ...................................................................11, 13

*Quantlab Techs. Ltd. (BGI) v. Godlevsky*,
    2014 WL 651944 (W.D. Tex. Feb. 19, 2014) .........................................................9

*Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*,
    No. 4:09-CV-3778, 2011 WL 3418396 (S.D. Tex. Aug. 3, 2011) ...................11, 12

*Stephenson v. Caterpillar Inc.*,
    No. 216CV71JRGRSP, 2018 WL 11351531 (E.D. Tex. Oct. 30, 2018)................10

*Wallace v. Tesoro Corp.*,
    2016 WL 7971286 (W.D. Tex. Sept. 26, 2016)....................................................11

*Williams v. Basf Catalysts LLC*,
    2016 WL 1367375 (D.N.J. Apr. 5, 2016) ...............................................................9

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003) ...........................................................................8

**Other Authorities**

Fed. R. Civ. P. 37(e)(1)...............................................................................................1, 8, 14

Rule 34 ...........................................................................................................10, 11, 12

Rule 37 ...................................................................................................................8, 14

**EXHIBIT INDEX & NOTES**

| Exhibit | Description | Date |
|---------|-------------|------|
| 1 | Excerpts from the Deposition of Dr. Gregory Raleigh | March 7, 2024 |
| 2 | Dkt. 134 in *HW1* (422) Case, Declaration of Dr. Gregory Raleigh | March 14, 2024 |
| 3 | Headwater's Response to Interrogatory No. 13 in *HW1* (422) Case | July 5, 2023 |
| 4 | Excerpts from the Deposition of Dan Durig | March 6, 2024 |
| 5 | Internal Sprint Email re ItsOn Issues, bearing bates number HW-SAM_TMO_00001625 | October 16, 2016 |
| 6 | Headwater's RFA Response No. 14 in *HW1* (422) Case | March 11, 2024 |
| 7 | Excerpts from the Deposition of Dr. Gregory Raleigh | November 15, 2023 |
| 8 | Excerpts from the Deposition of James Harris | November 27, 2023 |
| 9 | Excerpts from the Deposition of Dr. Gregory Raleigh | March 8, 2024 |
| 10 | Excerpts from the Deposition of Bernie Murphy | August 13, 2024 |
| 11 | Email between James Harris, Esq. of Headwater and ItsOn ABC assignee, bearing bates numbers HW_00066361-2 | July 2018 |
| 12 | Email between James Harris, Esq. of Headwater and ItsOn ABC assignee, bearing bates numbers HW_00066383-4 | July-August 2018 |
| 13 | Excerpts from the Deposition of David Johnson | February 21, 2024 |
| 14 | General Assignment by ItsOn, Inc. to ItsOn ABC, LLC, bearing bates numbers ITSONINC_000001-7 | January 9, 2018 |
| 15 | Headwater Termination of License Agreement with ItsOn, bearing bates numbers HW_00009333-4 | January 22, 2018[1] |
| 16 | Excerpts from the Deposition of James Lavine | January 31, 2024 |
| 17 | Exhibit 5 from the Deposition of Bernie Murphy | January 30, 2018 |
| 18 | Excerpts from the Deposition of Jeffrey Green | February 24, 2024 |
| 19 | Dkt. 189-11 in *HW1* (422) Case, Declaration of James Lavine | April 22, 2024 |
| 20 | Exhibit 16 from the Deposition of Bernie Murphy | August 16, 2018 |
| 21 | Exhibit 20 from the Deposition of Bernie Murphy | February 14, 2020 |
| 22 | Chart of Asserted Patents | n/a |
| 23 | Headwater's Response to Interrogatory No. 4 and 13 | October 16, 2024 |
| 24 | Defendants' Notices of Supplemental Subpoenas to ItsOn ABC, LLC, Bernie Murphy and Sherwood Partners, Inc., from *HW2* (103) Case | July 20, 2024 |

---

[1] Document date contains a typo.  The date should be January 22, 2018, not 2017.  Ex. 1 at 165:12-166:4.

| Exhibit | Description | Date |
|---------|-------------|------|
| 25 | Exhibits 7-8 from the Deposition of Bernie Murphy | June-July, 2024 |
| 26 | Declaration of HaystackID technician | October 25, 2024 |
| 27 | Excerpts from *HW1* (422) Case, Trial Transcript | January 13, 2025 |
| 28 | List of excluded evidence and arguments | n/a |

\*      Emphasis added unless otherwise noted.

\*\*    Form objections are omitted from deposition transcript quotations unless otherwise noted.

**ABBREVIATIONS INDEX**

| In Full | Abbreviation |
|---------|--------------|
| Dr. Gregory Raleigh | Raleigh |
| Plaintiff and its purported predecessors.<br>*Quotations including "Headwater" are replaced with "HW" unless otherwise noted. | Headwater or HW |
| Russ, August, & Kabat | RAK |
| *Headwater Research LLC v. Samsung Electronics Co., Ltd and Samsung Electronics America, Inc*., No. 2:22-CV-00422-JRG-RSP | *HW1* |
| *Headwater Research LLC v. Samsung Electronics Co., Ltd and Samsung Electronics America, Inc*., No. 2:23-CV-00103-JRG-RSP | *HW2* |
| The present case: *Headwater Research LLC v. Samsung Electronics Co., Ltd and Samsung Electronics America, Inc*., No. 2:23-cv-00641-JRG-RSP | *HW3* |
| Sherwood Partners.<br>*Quotations including "Sherwood Partners" are replaced with "SP" unless otherwise noted. | SP |
| ItsOn Inc. | ItsOn |
| Sherwood Partners, ItsOn ABC, and/or Bernie Murphy | Assignee/s |

Central to HW's complaint is the claim that Samsung copied the ItsOn Solution—ItsOn's commercialization of technology that allegedly practiced HW's asserted patents. But when ItsOn folded in 2018, HW spoliated the very evidence that would (dis)prove this central claim.

Raleigh—who founded HW and ItsOn as patentee and commercializing entity, respectively—admitted these entities were substantially intertwined and largely ignored corporate formalities, sharing everything from in-house and outside counsel to "key" employees who interchangeably used their HW and ItsOn email addresses. And HW admitted that it anticipated litigation against Samsung since at least 2017, working with ItsOn to build infringement arguments.

Nevertheless, HW did nothing to preserve the ItsOn ESI—ItsOn Solution code, email, and cloud-based repositories of technical documents—when ItsOn folded in 2018. As shown herein, HW had the practical ability to (i) request and receive copies of the ItsOn ESI to keep for future litigation; and/or (ii) issue a preservation notice to ItsOn for the same. Either way, the ESI—including the code—is gone, prejudicing Samsung's ability to defend against HW's copying narrative. To protect the judicial process's integrity and cure this prejudice, Samsung respectfully seeks an order sanctioning HW per Fed. R. Civ. P. 37(e)(1) for failure to preserve evidence.

## I.     BACKGROUND

### A.     2008-2017: HW and ItsOn "Operate in Conjunction"

As this Court has recognized, "HW was founded in conjunction with another entity, ItsOn, with the intent that they operate in conjunction." *HW1* Dkt. 401 at 1. Raleigh founded both ItsOn and HW in 2008 to create technology and get patents covering that technology. Ex. 2, ¶¶ 4-8, 12. HW owned patents and ItsOn developed a product that—according to HW—practiced HW's patents: the ItsOn Solution. *Id.* HW only ever licensed its patents to ItsOn. As to the entities' unique, intertwined relationship, Raleigh made the following declarations to this Court:

- **HW Owned Patents; ItsOn Commercialized Them:** ███████████████████

1

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████████████████████████ Ex. 2, ¶¶ 4-5.; *see also* Ex. 3 at 8-9.
███████████████████████████████████████████████████
████████████████████████████████████████ Ex. 2, ¶ 12.

- **Shared "Physical Office Space," "Key Employees/Consultants," "Computer Systems," and Board Members:** ███████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  █████████████████████████████████████████████ *Id.*, ¶ 6.

- **Shared Outside Counsel:** ████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ████████████████████████████ *Id.*, ¶ 11.

- **Shared In-House Counsel:** ████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  █████████████████████████████████████████ *Id.* ¶ 7.

- **Shared In-House Counsel Used ItsOn, Inc. and HW Emails Interchangeably:** ████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ████████████████████████ *Id.*

- ███████████████████████████████████████████████████████
  ████████████████████████████████████████ : ████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  █████████████████████████████████ *Id.* ¶ 8.

- **Raleigh, Lavine, Other Inventors Worked for <u>Both</u> ItsOn and HW to Obtain Patents:** 
  ███████████████████████████████████████████████████████
  ████████████████████████████████████████ *Id.* ¶ 9.

2

- **Intertwined Inventors, Counsel, & Email:** ███████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████ *Id.* ¶ 8.

### B.    2011-2016: ItsOn, Sprint, Samsung and the ItsOn Solution

In early 2011, Sprint and ItsOn entered a relationship whereby Sprint supported the devel-
opment of the ItsOn Solution to satisfy certain Sprint device requirements.  Sprint required Sam-
sung to help ItsOn integrate the ItsOn Solution into certain Samsung devices on Sprint's network.
Ex. 4 at 60:5-10.  Around 2016, after significant technical failures with the ItsOn Solution, Sprint
ended the ItsOn relationship, and Samsung stopped using the ItsOn Solution.  Dkt. 1, ¶36; Ex. 5.
At Sprint's behest, Samsung separately developed a separate replacement solution.  Samsung later
abandoned this solution as the Sprint requirements expired or were addressed by other software.

### C.    2009-2017: HW Contemplates Litigation—with ItsOn

<u>2017</u>:  HW admits that it contemplated suing ***Samsung*** for infringement in 2017 (after the
breakdown between Sprint and ItsOn).  *HW1* Dkt. 189 at 6 ("████████████████████
████████████████████); Ex. 6 at RFA 14; Ex. 7 at 196:3-197:25. During this time, HW and
ItsOn's joint in-house counsel (Ex. 2 ¶ 6) testified that HW and ItsOn ████████████████
████████████████████ Ex. 8, at 127:15-129:19.  This included ItsOn sending
HW ██████████████████████████████████████████████████
████████████████████████ *Id*.  Ultimately, Raleigh testified that HW chose not
to sue Samsung in 2017 because (on counsel's advice) Samsung might invalidate the patents via a
DJ action or IPRs, and HW needed litigation funding.  Ex. 7 at 186:13-198:9.

<u>2009</u>:  But HW and its counsel's work product entries on their privilege logs show that HW
anticipated litigation ***as far back as 2009***.  *HW 1* Dkt. 100-11 (HW alone withholds as "work
product" more than 2,300 HW and/or ItsOn pre-2017 documents/communications).

<u>No Litigation Holds (or the Like) for ItsOn ESI</u>:  HW never informed ItsOn of a litigation hold given the anticipated future litigation.  Ex. 9 at 440:15-441:8.  And ItsOn itself—admittedly run by HW folks (*see generally* Ex. 2)—also never issued a preservation notice.  Notably, HW and ItsOn shared the same outside counsel during this process.  Ex. 2, ¶ 11 ███████



.

### D.    2016-2018: ItsOn Loses Money and Investors, Fails to Pay Royalties, Folds

#### 1.  2016-2017: The Plan

#### 2.  2017-2018:  ItsOn ABC, SP, Bernie Murphy (the "Assignee/s")

The plan went into effect in late 2017, when ItsOn reached out to SP to assist in winding down ItsOn.  Ex. 10 at 23:17-21; 14:17-17:7.  Next, SP, managed by Bernie Murphy, set up ItsOn ABC to assume the assignment for benefit of ItsOn creditors, per state insolvency rules.  *Id.*  Then, ItsOn's acting CEO ██████████████████████████ Ex. 13 at 99:5-11; 104-105.

On January 9, 2018, ItsOn entered a General Assignment of the ABC (Ex. 14) and ItsOn ceased.  Ex. 10 at 162:2-13.  ItsOn ABC remained (managed by SP, collectively, the "Assignee/s") solely to sell ItsOn assets to pay its creditors (owed millions of dollars).  *Id.* at 118:21-24.  ██████████████████████████████████████████.  Ex. 15.

---

[2] Ex. 13 (Johnson Dep.) at 96-97; Ex. 8 (Harris Dep.) at 83; Ex. 16 (Lavine Dep.) at 31.

### 3. 2018: ItsOn Asset Retention and Transfer to the Assignee

In January 2018, the Assignee began gathering up ItsOn's assets to sell. Ex. 10, at 49:5-51:21. This included "patents, files, source codes, designs, specs and all of those intellectual property types of assets" both from hardware (*e.g.,* servers, hard drives) and the cloud. *Id.* at 52:1-11.

When in business, ItsOn *did not* have a formal practice of keeping documents and e-mails, including those exchanged per engineering efforts. Ex. 16 at 210:5-211:11; *see also* Ex. 9 at 441:4-5. Rather, ItsOn used cloud-based repositories like: "*Box*" ("[i]t's like a Dropbox service," Ex. 13 at 97-98); *Aha!* ("account that had all ItsOn Inc.'s product roadmap and requirements," Ex. 17 & Ex. 10 at 64:24-65:3); and *G-Suite* (Google Enterprise apps like Gmail, Google-Docs, -Excel, -PowerPoint, "where all the docs [were]"). Ex. 17; Ex. 18 at 99-100. During ItsOn's wind-up, ItsOn/HW employees pulled certain G-Suite archives for the Assignee. Ex. 16 at 210:5-211:19. Lavine (joint HW/ItsOn employee/consultant) provided the Assignee with passwords for the code and other technical documents. Ex. 19. Lavine advised on certain repository content and ESI he felt should be kept. Ex. 17. But the Assignee—who, absent a preservation notice, was *only* interested in saleable assets —ultimately decided what ESI to keep. *See, e.g.,* Ex. 10 at 67:11-17.

HW did not tell the Assignee of a litigation hold or ask to retain copies of relevant ESI for future litigation, despite HW and ItsOn sharing the *same counsel* at this time. Ex. 2, ¶ 11.

### 4. 2018-Today: Assignee Was Unable to Monetize ItsOn's Assets

The Assignee tried, but could not, sell the ItsOn assets because HW withheld the "consent" needed because HW's IP was "embedded" in ItsOn's assets. Ex. 10 at 126:23-127:3, 170:17-171:4; 31:10-32:22; 117:5-18. Each time Assignee reached out to HW about potential opportunities, HW deemed the proposed terms unfavorable. *Id.*, *also, e.g.,* Ex. 20. So in 2020—after two years of trying to monetize ItsOn's assets—SP issued "equity write off" letters to shareholders, telling them SP had "exhausted all opportunities to monetize the assets" and "no monies [were] going to be

available for a distribution to the shareholders of ItsOn Inc." Ex. 10, at 148:24-150:14; Ex. 21.

    **E.**    **2022 *HW1* Case: HW and RAK Sanctioned for Violating Discovery Order**

In *HW1* (filed in 2022, claiming Samsung infringed other patents), this Court recognized that "[c]entral to Headwater's Complaint" in *HW1* was "an allegation that Samsung copied ItsOn's commercialization of the technology practicing the asserted patents." *HW1* Dkt. 401 at 1.

HW and its counsel withheld the location of the ItsOn ESI. *Id.* at 4-6. HW only disclosed the ItsOn ESI's whereabouts to Samsung and the Court to avoid a spoliation ruling, arguing the ESI was not spoliated ***because it was "not gone"*** but rather existed with the Assignee. *HW1* Dkt. 189 at 1, 2. This Court found HW and RAK's conduct to be "an egregious violation of the Discovery Order" and, per Rules 37(b) and (c), sanctioned HW (precluding HW's copying allegations and ordering fees). *HW1* Dkt. 401 at 5-6.

    **F.**    **2023 *HW3* Case: Spoliation of ItsOn ESI**

        **1.  HW (Again) Alleges that Samsung Copied the ItsOn Solution**

In this case, (Dkt. 1, filed December 29, 2023), HW claims Samsung infringes four patents (the "Asserted Patents") that issued in or before 2017. Ex. 22. As in *HW1*, central to the *HW3* Complaint is the claim that Samsung copied ItsOn's product practicing the Asserted Patents. *Compare HW3* Dkt. 1, ¶¶ 14, 17-39, 65, 79, 93, 107 (copying and willfulness claims) *with HW1* Dkt. 42, ¶¶ 14, 17-39, 70, 84, 98, 112, 140, 154, 168, 183 (same). *See also* Ex. 23 (claiming "actual copying of the claimed inventions," including, "[when] ItsOn, Sprint, and Samsung worked together to implement ItsOn's [] solution" and "Samsung then copied ItsOn functionality . . .").

        **2.  Discovery into HW's Copying Allegations Includes ItsOn ESI**

Samsung is entitled to discovery on the bases for HW's copying and willfulness claims, including: (1) details on the ItsOn Solution that Samsung allegedly copied; (2) support for HW's claim that this product practiced the Asserted Patents; and (3) any ItsOn Solution code. Samsung

subpoenaed the Assignees, seeking, *inter alia*: the code; technical documents; and email.  Ex. 24.

### 3.   The ItsOn ESI is Gone: Passwords Never Worked; Much Never Retained

Through the Assignee subpoenas, Samsung learned that the ItsOn ESI is gone.  While the Assignee confirmed that it still has the same ItsOn assets as in 2018 (Ex. 10 at 54:11-55:8), these assets do ***not*** include (at least): email; code; and repositories of substantial technical documents.

*First*, ItsOn's email is lost.  This included eight years of communications concerning technical aspects of the ItsOn Solution—part of G Suite where "all the docs [were]" (Ex. 17)—that was never transferred to the Assignee.  Assignee's counsel confirmed that "[t]he Assignee did not receive emails from Its[O]n at the time of the ABC." Ex. 25.  And Murphy testified it was standard policy for an assignee ***not*** to retain an assignor's email as it was ***not saleable***.  Ex. 10 at 65-69.

*Second,* the source code is inaccessible, and apparently has been since 2018.  Assignee was unable to access the code (and other technical files) using the passwords HW employee/consultant Lavine provided in 2018.  Ex. 25; Ex. 10 at 56:17-58:15, 94:5-15.  HW implied ***Samsung*** must itself try to access the ESI.  Ex. 10 at 175:6-14.  So Samsung bore the cost of doing just that and, like Assignee, was unsuccessful.  Ex. 26.  Finally, RAK represented to the Court that it looked for other passwords—█████████████████████████████████████████████████ ████████████████████ the passwords to access the code and other files.  *HW1* Dkt. 362 at 1.

*Third,* other technical documents are gone, and evidently were never maintained.  The "***Aha!***" account, where ItsOn kept all of its "product roadmaps and requirements" (Ex. 17) was not preserved.  It was cancelled in 2018, and this ESI was not produced or located by the Assignee.  Ex. 10 at 64:24-65:16.  The ***G-Suite Enterprise*** account, "where all the docs [were]" (Ex. 17) was likewise not preserved.  It appears the account lapsed and the ESI was either not saved prior or, if it was, has since been lost, as it was not produced or located by the Assignee.  Ex. 10 at 72:17-75:8.  The same is true of any ***Box*** account's ESI.  *Id.* at 72:17-73:11.

## II.    LEGAL STANDARD

"If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court… upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1); *Jim S. Adler, P.C. v. McNeil Consultants, LLC,* 2023 WL 2699511, at *8-15 (N.D. Tex. Feb. 15, 2023) (synthesizing post-2015 5th Circuit law).  The curative options include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument."  Rule 37(e), committee note.[3]

## III.   ARGUMENT

"[F]our predicate elements must be established before a court grants sanctions under Rule 37(e): a party was (1) obligated to preserve ESI (2) but did not do so (3) because they failed to take reasonable steps to preserve it, and (4) the ESI cannot be restored or replaced." *Balancecxi, Inc. v. Int'l Consulting*, 2020 WL 6886258, at *12 (W.D. Tex. Nov. 24, 2020), *adopted* 2021 WL 2194900 (W.D. Tex. Feb. 3, 2021).  Here, each is satisfied, significantly prejudicing Samsung.

### A.    HW Had Duty to Preserve the ItsOn ESI

"Identifying the boundaries of the duty to preserve involves two related inquiries: <u>when</u> does the duty to preserve attach, and <u>what</u> evidence must be preserved?"  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

#### 1.    <u>When</u>: Anticipation of Litigation, 2017 and Before

---

[3] The Court ***does not need to find intent or bad faith*** to impose these measures under Rule 37(e)(**1**) (as opposed to Rule 37(e)(2)).  Rule 37(e)(1); *Adler*, 2023 WL 2699511, at *9 ("Rule 37(e)(1) does not contain an 'intent' requirement; a party need not act willfully, deliberately, intentionally, or with any objective or subjective bad faith.") (quotations/citations omitted).

"A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Allstate Texas Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 684 (S.D. Tex. 2013); *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).

HW had a continuing duty to preserve since ***at least 2017***, when HW admitted it was speaking with lawyers about suing Samsung, and when—as their shared in-house counsel testified—HW and ItsOn were ██████████████████████████████. § I.C., *supra*.

Further, HW's work-product claims on its privilege logs confirm that HW had a duty to preserve ***since 2009*** (*see HW1* Dkts. 100, 114), as it is well-settled that a party's preservation duty arises "no later than its assertion of the attorney work product." *LendingTree, LLC v. Zillow, Inc.*, 2014 WL 1309305, at *10 (W.D.N.C. Mar. 31, 2014). *See also Allstate*, 964 F. Supp. 2d at 684.[4]

Nonetheless, there is no need to put an exact date on when HW's preservation duty began, as each Asserted Patent (i) was filed between 2012 and 2016, and (ii) issued in or before 2017—well-before when HW ***admits*** that it anticipated litigation (***against Samsung***).

### 2. <u>What</u>: Relevant Evidence in Possession, Custody, Control.

Once litigation is reasonably anticipated, potential parties must preserve evidence that is (i) *relevant* to a claim or defense and (ii) within its *possession, custody, or control*.

#### a. *Relevant* Information: ItsOn ESI

"[L]ost or destroyed evidence is 'relevant' if a 'reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'" *Ashton v. Knight Transp., Inc.*, 772 F.Supp.2d 772, 801 (N.D. Tex. 2011); *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, 2014 WL 651944, at *8 (W.D. Tex. Feb. 19, 2014) (relevant information includes that which "the disclosing party may use to support its claims or defenses.").

---

[4] HW need not have anticipated litigation against Samsung, in particular. *See Williams v. Basf Catalysts LLC*, 2016 WL 1367375, at *7 (D.N.J. Apr. 5, 2016).

HW cannot credibly claim that it did not know the ItsOn ESI was relevant. Raleigh already told this Court that ItsOn and HW routinely intermingled "key" personnel, counsel, physical resources, and electronic resources—including email—to jointly develop patents and the commercialization thereof. *See* § I.A., *supra*.

As to the present case, ItsOn's code, emails, and technical documents are relevant to HW's copying and willfulness claims. Indeed, "[e]vidence of copying" is "legally irrelevant ***unless*** the copied product is shown to be an embodiment of the asserted claims." *Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2:15-CV-1047-RSP, 2016 WL 11750180, at *4 (E.D. Tex. Nov. 30, 2016) (citations omitted); *American Technical Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, *10 (E.D. N.Y. 2019). The ItsOn Solution code could conclusively (dis)prove that the ItsOn Solution embodied an asserted claim. ItsOn emails and technical documents about the ItsOn Solution's development and functionality could likewise elucidate this issue.

Further, the lost ESI is relevant to HW's claim that Samsung acted nefariously by replacing the ItsOn Solution. § I.F.1, *supra*. In truth, Sprint dropped the ItsOn Solution because it performed poorly. The code, emails, and technical documents would elucidate these competing claims.

Finally, even though HW did not file until 2023, "[HW] should have known that the [ItsOn ESI] would be highly relevant to impending litigation given that [it] retained counsel at that time." *Stephenson v. Caterpillar Inc.*, No. 216CV71JRGRSP, 2018 WL 11351531, at *5 (E.D. Tex. Oct. 30, 2018). Indeed, Raleigh admitted that HW and ItsOn shared in-house and outside counsel ██████████████████████ (Ex. 2, ¶¶ 6-7, 11), ***and*** this shared in-house counsel testified that HW and ItsOn shared information about ███████████████ in 2017. § I.C., *supra*. There can be no doubt that HW knew (or should have known) that the ItsOn ESI was "relevant evidence."

   **b.**   ***Possession, Custody, Control*: HW had "Practical Ability"**

A party's duty to produce discovery within its possession/custody/control (Rule

34(a)(1)(A); Dkt. 42, ¶3(b)) "includes documents within the possession or custody of a ***non-party***." *Wallace v. Tesoro Corp.*, 2016 WL 7971286, at *8 (W.D. Tex. Sept. 26, 2016) (citing *Perez v. Perry*, 2014 WL 1796661, at *1 (W.D. Tex. May 6, 2014)). That is, the duty to preserve extends to evidence not just in a party's own hands but also to evidence in the hands of a third party over whom the party has control. *Mullin v. Bayline, Inc*., 2021 WL 5811716, *1-2 (D. Mass. 2021); *U.S. ex rel. Harman v. Trinity Indus., Inc.,* No. 2:12cv89JRG, 2014 WL 12603247, at *1 (same) (*amend. on reconsid. denial*, 2014 WL 12603897 (E.D. Tex. Oct. 10, 2014)).

"[N]either legal ownership nor physical possession of documents [is] required for a party to control them." *Wallace*, 2016 WL 7971286, at *8 (citing *In re NTL, Inc. Secs. Litig.,* 244 F.R.D. 179 (S.D.N.Y. 2007)). Rather, in the Fifth Circuit (as in others), "[a] party has control over documents not otherwise in its possession when that party has the right, authority, ***or practical ability*** to obtain [them] from a nonparty." *Id.*, at *8 (quoting *Perez*, 2014 WL 1796661, at *1); *Harman*, 2014 WL 12603247, at *1 (same); *Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-CV-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011) (same).

"The particular form of a corporate relationship does not exclusively govern whether a corporate party controls documents." *Shell*, 2011 WL 3418396 at *2. Rather, one must apply "common sense" to the facts of the at-issue parties' relationship to assess practical ability. *See GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 355 (S.D.N.Y. 2012), *aff'd*, 2012 WL 1849101 (S.D.N.Y. May 21, 2012) (while plaintiff lacked legal control over non-party's materials, "common sense" left "little doubt" that plaintiff could have gotten the materials "merely by asking for them" or that the non-party "would have honored a request by [plaintiff] that they be preserved."); *see also In re NTL*, 244 F.R.D. at 196 ("demonstrated [] ability" to "retrieve critical documents" from a non-party is evidence of the "practical ability" to get documents, "satisfy[ing]

11

the requirements of Rule 34"). To that end, factors to consider in assessing practical ability include: (1) "commonality of ownership," (2) "exchange or intermingling of directors, officers or employees," (3) "exchange of documents…in the ordinary course of business," and (4) "any benefit or involvement of the nonparty [] in the transaction." *Diamond Consort., Inc. v. Manookian*, No. 4:16CV94ALM, 2017 WL 3301527, at *9 (E.D. Tex. Aug. 3, 2017) (quotations omitted).

Here, ***every factor*** favors HW's "practical ability" to obtain a copy of the ItsOn ESI from ItsOn, or at least tell ItsOn to preserve the ItsOn ESI via a litigation hold notice:

(1) <u>Commonality of ownership</u>. Admitted by Raleigh. Ex. 2, ¶ 6; Ex. 27 at 246. *Also HW1* Dkt. 232 at UMF Nos. 12-16.

(2) <u>Exchange or intermingling of directors, officers or employees of HW and ItsOn</u>. Admitted by Raleigh. Ex. 2, ¶¶ 6-8. *Compare with Shell*, 2011 WL 3418396, at *4.

(3) <u>Exchange of documents between the HW and ItsOn in the ordinary course of business</u>. Admitted by Raleigh. Ex. 2, ¶¶ 6-8.

(4) <u>Any benefit or involvement of ItsOn in the at-issue transaction</u>. Admitted by Raleigh. *Id.* ¶¶ 5-8, 12 (admitting ███████████████████████ ███████████████████████████████████████ ███████████████████████████████ (*Shell*, 2011 WL 3418396, at *3)). *See* Ex. 8, at 127:15-129:19 (counsel testifying to the same).

The facts—and common sense—leave no doubt that, before ItsOn's 2018 wind-up, HW had the practical ability to (i) request and receive copies of the ItsOn ESI to maintain for future litigation; and/or (ii) issue a document preservation notice to ItsOn for the same. Therefore, HW had a duty to preserve the ItsOn ESI because HW: (1) anticipated litigation involving the ItsOn ESI in 2017 (and earlier); and (2) had "control" of the ItsOn ESI before ItsOn's 2018 wind-up. While HW will likely argue that its on-paper separation from ItsOn negates any such control, the facts—indeed, Raleigh's own admissions—tell a very different story.

## B.    HW Failed to take Reasonable Steps to Preserve the ItsOn ESI

HW did not fulfill its preservation duties. If a party "turned relevant 'held' documents and

ESI over to [another entity] without itself preserving (or insuring [the other entity] would preserve) such information for possible production in [a] litigation, it failed in its obligation to preserve relevant material, and thus spoliated evidence (assuming the other requirements for spoliation are met)." *In re NTL,* 244 F.R.D. at 197. *See also Harman*, 2014 WL 12603247, at *2-3.

"Once the duty to preserve material for litigation ar[ose]"—as here in at least 2017, when HW and ItsOn shared counsel, board members, employees, consultants, email addresses, and potential infringement information—HW "ha[d] a duty to initiate a litigation hold and preserve potentially responsive documents and ESI." *In re NTL,* 244 F.R.D. at 197. "The litigation hold should be periodically re-issued [and] counsel should communicate directly with the 'key players' in the litigation. The key players should be periodically reminded that the preservation duty is still in place." *Id.* (quotations omitted).

HW took none of these basic steps. It did not: (i) preserve ItsOn ESI in its possession/custody/control (*e.g.*, ██████████████████████████████████); (ii) issue a litigation hold to ItsOn before or after the 2018 wind-up to preserve any ItsOn ESI (ostensibly) not within HW's possession/custody/control; or (iii) otherwise inform ItsOn to preserve relevant ESI or ask to retain a copy. In short: HW did ***nothing*** to ensure that ItsOn ESI was preserved.

HW's actions are even more unreasonable because the parties were jointly represented by counsel in 2017 when contemplating litigation (against Samsung) ████████████████ ██ ItsOn—a key player. § I.C., *supra*. In 2017, HW decided not to sue Samsung to prevent DJ and IPRs, and also did not notify Samsung of its alleged infringement. *Id.* If HW had done either (sued or notified) in 2017, then ItsOn—a then-existing key player (per HW's Complaint)—would certainly have had a legal duty to preserve the ESI; and/or Samsung could have subpoenaed ItsOn (itself triggering preservations duties). HW's strategic choices prevented these courses of action;

PUBLIC VERSION

it was on **HW** to ensure the relevant ItsOn ESI was preserved, given **HW's** anticipated litigation.

Instead, HW—while sharing counsel with ItsOn—"allowed [ItsOn's] original data" to pass to an Assignee for liquidation "without ensuring that it had been appropriately preserved," taking "no steps to confirm that [the emails, code, or other ESI] had been properly uploaded" and "[were] accessible" by the Assignee. *Moody v. CSX Transport., Inc.*, 271 F. Supp. 3d 410, 428–29 (W.D.N.Y. 2017). "This failure is especially remarkable in view of the important and irreplaceable nature of the data at issue." *Id.*

### C. The ItsOn ESI Cannot be Restored or Replaced

The ItsOn ESI is gone and cannot be replaced. *First,* the assignee never retained ItsOn's email. § I.F.3, *supra. Second*, many cloud-based repositories were either never retained or, if they were, are now gone or inaccessible. *Id. Third,* the source code (and other technical documents) are inaccessible. *Id.* The passwords provided in 2018 by Lavine—an ItsOn/HW consultant/employee and inventor of two Asserted Patents—do not work. *Id.*

### D. HW's Failure to Preserve the ItsOn ESI Significantly Prejudices Samsung

Prejudice only requires showing that a party's "ability to present its case or to defend [has been] compromised." *Ashton*, 772 F. Supp. 2d at 801. To that end, Rule 37(e) "does not place a burden of proving or disproving prejudice on one party." Rule 37(e)(1), committee note.

HW's failure to preserve the ItsOn ESI weakens Samsung's ability to defend against **at least** HW's copying claims. The ESI is plainly significant to this narrative. HW argues that the ItsOn Solution was so inventive and successful that Samsung duplicated it, and HW relies on this claim for damages and validity (*e.g.*, willfulness, "copying" as a secondary consideration). *E.g.,* Ex. 23. Yet Samsung cannot use the code, emails, or technical documents to rebut this claim.

### E. HW should be Precluded from Offering Copying-Based Arguments

"[HW's] failure to institute and enforce a litigation hold, or take **any** steps to ensure relevant [ItsOn

ESI was] preserved, not only warrants but demands sanctions." *Harman*, 2014 WL 12603247, at

*2. To cure the resulting prejudice, the Court should preclude HW from:

1. Offering arguments or evidence that infers or implies copying (*i.e.,* duplicating, steal-
   ing, reverse engineering) the ItsOn Solution; and

2. Asserting willful infringement claims that are based on the ItsOn Solution or ItsOn IP.[5]

These measures will cure the unfair imbalance and major prejudice to Samsung were HW allowed

to offer evidence on issues for which it failed to preserve the underlying ESI. *Edwards v. Jr. State*

*of Am. Found.*, No. 4:19CV140SDJ, 2021 WL 1600282, at *10 (E.D. Tex. Apr. 23, 2021). Allow-

ing these arguments at trial (based on the ItsOn Solution allegedly practicing asserted patent/s)

would significantly prejudice Samsung, who cannot effectively cross or rebut them without the

lost ESI. Indeed, "[i]t is impossible, in hindsight, to determine the extent to which the [lost emails

and technical documents] would have impacted this case." *Harman*, 2014 WL 12603247, at *2.

    To that end, any "limited probative value" that evidence of copying ***not*** tied to asserted

claims may provide "is outweighed by the danger that the jury will unfairly view [Samsung] as a

wholesale copyist." *Arthrex*, 2016 WL 11750180, at *4; *Am Tech. Ceramics Corp. v. Presidio*

*Components, Inc.*, 2019 WL 2330855, *10 (E.D. N.Y. 2019) ("[T]here is significant prejudice

associated with copying evidence, as a jury may use evidence of copying to unfairly conclude that

Defendant's products infringe the patents-in-suit.") (quotations/citations omitted). And copying

arguments untethered to asserted claims "cast[] doubt that the alleged copying of the [ItsOn Solu-

tion] is probative of willful infringement." *Am. Tech.,* 2019 WL 2330855, *10 (plaintiff "pre-

cluded from offering proof of copying related to [patentee's products] to prove willful infringe-

ment" where the products did not practice the asserted patents).

---

[5] Ex. 28 hereto lists the arguments/evidence that Samsung believes should be precluded.

**PUBLIC VERSION**

Dated: January 28, 2025                    Respectfully submitted,

By:    */s/ Thad C. Kodish*
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Jared Hartzman
DC Bar No. 1034255
hartzman@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad C. Kodish
GA Bar No. 427603
tkodish@fr.com
Sara C. Fish
GA Bar No. 873853
Christopher O. Green
GA Bar No. 037617
Benjamin K. Thompson
GA Bar No. 633211
bthompson@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450

Harry L. Gillam, Jr.
State Bar No. 07921800
GILLAM & SMITH, LLP
102 N. College, Ste. 800
Tyler, Texas 75702
Telephone: (903) 934-8450

Jon Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
HILGERS GRABEN PLLC
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD AND
SAMSUNG ELECTRONICS AMERICA, INC.**

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff and counsel for Defendants have met and conferred in compliance with Local Rule CV-7(h).  Plaintiff opposes this motion.

/s/ Thad C. Kodish
Thad C. Kodish

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on January 28, 2025.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

/s/ Thad C. Kodish
Thad C. Kodish

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be                pursuant to the Protective Order entered in this case.

/s/ Thad C. Kodish
Thad C. Kodish