# Exhibit 2

UNITED STATES PATENT AND TRADEMARK OFFICE
———————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
———————————————

SAMSUNG ELECTRONICS CO., LTD.,
Petitioner,

v.

HEADWATER RESEARCH LLC,
Patent Owner.

———————————————

IPR2024-01407
Patent 9,179,359

———————————————

**PATENT OWNER'S REQUEST FOR DIRECTOR REVIEW**

IPR2024-01407 Request for Director Review
U.S. Patent No. 9,179,359

# **TABLE OF CONTENTS**

I.    **Introduction** ...................................................................................1

II.   **Legal Standards** ............................................................................4

III.  **The Board's Institution Decision relied on a new theory not presented in the Petition.** ...................................................................................4

IV.   **This proceeding should be terminated consistent with the Director's guidance regarding discretionary denial of institution.** ...........................8

    A.    The Board erred in its analysis of the Fintiv factors. ................................9

    B.    Additional factors in the Memorandum weigh against institution. ........12

V.    **Conclusion** ................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Fintiv, Inc.*,
    IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) ..............................................9

*Apple Inc. v. Fintiv, Inc.*,
    IPR2020-00019, Paper 15 (PTAB May 13, 2020)...............................................9

*AT&T Servs. Inc. v. ASUS Tech. Licensing Inc.*,
    IPR2024-00997, Paper 15 (PTAB Dec. 16, 2024)............................................10

*Facebook* v. *Windy City Innovations, LLC*,
    973 F.3d 1321 (Fed. Cir. 2020)......................................................................14

*Force Mos Tech., Co. v. Asustek Comput., Inc.*,
    No. 2:22-cv-00460-JRG, 2024 WL 1586266 (E.D. Tex. Apr. 11, 2024)...........10

*In re Magnum Oil Tools Int'l, Ltd.*,
    829 F.3d 1364 (Fed. Cir. 2016).....................................................................3, 7

*Motorola Solutions, Inc. v. Stellar, LLC*,
    IPR2024-01205, Paper 19 (Mar. 28, 2025).................................................11, 12

*Netflix, Inc. v. DivX, LLC*,
    84 F.4th 1371 (Fed. Cir. 2023) ........................................................................7

*NHK Spring Co. v. Intri-Plex Techs., Inc.*,
    IPR2018-00752, Paper (PTAB Sept. 12, 2018)..................................................9

*SAS Inst., Inc. v. Iancu*,
    584 U.S. 357 (2018)..........................................................................................1

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    593 F.3d 1325 (Fed. Cir. 2010).....................................................................2, 7

*TQ Delta, LLC v. CommScope Holding Co.*,
    No. 2:21-cv-00310-JRG, 2022 WL 2872993 (E.D. Tex. July 21, 2022)..............9

*Xerox Corp. v. Bytemark, Inc.*,
    IPR2022-00624, Paper 9 (PTAB Aug. 24, 2022) .............................................14

**Statutes**

35 U.S.C. § 314(a)....................................................................................................9

37 C.F.R. §42.65(a)................................................................................................14

## I.    Introduction

The Director should exercise discretion to terminate this proceeding challenging the patentability of claim 26 of U.S. Patent No. 9,179,359 ("the '359 patent") for two independent reasons: (1) the Board's merits decision was improperly based on a theory devised by the Board, which was not presented by the Petition and was directly inconsistent with the Petition's theory; and (2) the Board erred by improperly giving too much weight to Petitioner's *Sotera* stipulation in declining to exercise its discretion to deny institution under *Fintiv*, where all other factors favored denial.

**First**, the Board improperly granted institution on an inaccurate inherency theory not presented in the Petition. It is well-established that it is the "petitioner's ***petition***," not the Board, that defines the scope of the proceeding. *See SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 366 (2018)[1]; *see also id.* at 364 ("In its very first provision, the statute says that a party may seek inter partes review by filing 'a petition to institute an inter partes review.' § 311(a). This language doesn't …. contemplate a petition that asks the Director to initiate whatever kind of inter partes review he might choose.").

---

[1] All emphases herein are added unless otherwise specified.

The sole claim at issue, claim 26,[2] recites *inter alia* "one or more processors… configured to determine that [a] different application is an active application ***based on a user interaction*** with the different application." The Board's Institution Decision (Paper 9, or "ID") believed that the Petition set forth a theory based on inherency, in which "the user ***has to*** interact with that application to attempt that voice call and cause that same application to become an active application." ID at 27.

However, the Petition never set forth such an inherency theory, and indeed made explicit that user interaction was merely "likely" and thus not ***necessary*** as the Board's Decision speculates Petitioner intended to argue. *See* Pet. 47 ("An application that provides a voice-related connection request involves a determination that a user is ***likely*** to interact with the application….") (parenthetical claim mappings omitted). Given that the Petition relied on a ***likelihood*** of interaction, the Petition could not have presented an inherency theory as the Board concluded. *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) ("Inherency, however, may not be established by probabilities or possibilities.").

Accordingly, the Board's reliance on an inherency theory is inconsistent with the actual theory presented by the Petition, and Institution thus should not have been

---

[2] In anticipation that the IPR would be limited to the theory presented in the Petition, Patent Owner disclaimed all other challenged claims. *See* Paper 6 ("POPR") at 1.

IPR2024-01407 Request for Director Review
U.S. Patent No. 9,179,359

granted. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016) ("[W]e find no support for the PTO's position that the Board is free to adopt arguments on behalf of petitioners that could have been, but were not, raised by the petitioner during an IPR.").

The Board's consideration of a theory that was not presented in the Petition presents an "important issue[] of law or policy,"[3] because Patent Owners should be able to rely on a Petition's characterization of its invalidity theories in preparing a response to the Petition. This case presents a clear example of the prejudice associated with the Board introducing a new theory into the proceeding, because Patent Owner disclaimed claims other than claim 26 of the '359 Patent on the assumption that the flawed theories set forth in the Petition would control the proceeding. If Patent Owner had known that the Board would devise an entirely new theory to which Patent Owner would not have an opportunity to respond, Patent Owner would not have disclaimed the other claims of the patent.

**Second**, the Board erred by instituting this proceeding even though trial is set to take place nearly six months before the deadline for any final written decision in this proceeding. The Board's decision regarding discretionary denial did not account for the weak merits of the Petition (as discussed above), and additionally gave too

---

[3] *See* Availability of Director Review: AIA Trial Proceedings (last modified Mar. 18, 2025) (*available at* https://www.uspto.gov/patents/ptab/decisions/director-review-process).

IPR2024-01407 Request for Director Review
U.S. Patent No. 9,179,359

much weight to Petitioner's *Sotera* stipulation. Furthermore, several factors set forth in Acting Director Stewart's March 26, 2025 Memorandum regarding Interim Processes for PTAB Workload Management ("Memorandum") (such as the settled expectations of the parties and the extent of the petition's reliance on expert testimony) further support discretionary termination of this proceeding

For both of these reasons, Patent Owner respectfully requests that the Director terminate this proceeding.

## II.    Legal Standards

Director Review is appropriate for institution "decisions presenting (a) an abuse of discretion, (b) important issues of law or policy, (c) erroneous findings of material fact, or (d) erroneous conclusions of law." Availability of Director Review: AIA Trial Proceedings (last modified Mar. 18, 2025) (*available at* https://www.uspto.gov/patents/ptab/decisions/director-review-process).

## III.    The Board's Institution Decision relied on a new theory not presented in the Petition.

Claim 26 recites, *inter alia*, "one or more processors… configured to determine that [a] different application is an active application ***based on a user interaction*** with the different application." The entirety of the Petition's single-paragraph analysis of this limitation is reproduced below:

4

IPR2024-01407 Request for Director Review
U.S. Patent No. 9,179,359

In Shell, connection manager modules may assign priorities to network connection requests "based on the current state of applications associated with the connection requests." SAMSUNG-1005, [0057], [0092]. For example, "a request from an application that is currently active may be assigned a higher priority than a request from an application running in the background." *Id.* Further, "voice requests may be assigned a higher priority than data requests." *Id.* An application that provides a voice-related connection request (***different application***) involves a determination that a user is likely to interact with the application (e.g., voice call) (***user interaction with the different application***), and thus, prioritization by the connection manager modules involves ***determin[ing] that the different application is an active application***. SAMSUNG-1003, ¶¶139-40; SAMSUNG-1005, [0008], [0013], [0014].

Pet. 47 (emphases in original).

As can be seen above, the Petition's sole theory as to how the limitation is met is based on the premise that "[a]n application that provides a voice related connection request… involves a *determination that a user is **likely to** interact with the application*." *Id.*

The Board's Decision ignored this theory set forth in the Petition, and instead granted institution based on an entirely different theory. Specifically, despite the explicit language of the Petition reproduced above, the Board reasoned that "Petitioner does ***not*** appear to be relying only on an inference that a user is likely to

interact with an application requesting a voice connection." ID at 27. The Board reasoned that "Petitioner… instead[] appears to be arguing that, in attempting a voice call,[4] the user **has to** interact with the application to attempt that voice call and cause that same application to become an active application." *Id.*

In other words, the Board characterized the Petition as setting forth a theory that user interaction is **inherent** for applications that issue voice-related connection requests.

The Petition, however, clearly did not set forth a theory of inherency. Indeed, as noted above, the Petition makes clear that "voice-related connection requests" do **not** need to involve user interaction, as the Petition is clear that under the Petition's theory, "voice-related connection requests" involve a "determination that a user is **likely to** interact with the application." Pet. 47. Petitioner's expert also sets forth the same theory, which asserts that the prior art discloses or renders obvious a determination that the "user is **likely to** interact with the application." Ex. 1003, ¶140.

Accordingly, the Petition and corresponding expert declaration make clear that there is a determination that a user will **probably** interact with the application.

---

[4] Notably, the Petition's theory is not focused on a user "attempting a voice call," but rather extends to all "voice-related connection request[s]" such as, for example, an incoming call or voice mail. *See generally* Ex. 2010, ¶39 (discussing scenarios where the application is "receiving an incoming call (which may not have involved prior user interaction with the application)").

Petitioner's theory is thus directly inconsistent with the inherency theory proposed by the Board, which assumes that "the user *has to* interact with that application." ID at 27; *see Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) ("Inherency, however, may not be established by probabilities or possibilities.").

The Board is not "free to adopt arguments on behalf of petitioners that could have been, but were not, raised by the petitioner during an IPR." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016); *see also Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1378 (Fed. Cir. 2023) ("We have … reprimanded the Board for finding a claim unpatentable based on theories not presented in the petition."). Accordingly, the Board's institution based on an improper new theory was legal error.

Patent Owner additionally briefly notes that the Board's new inherency theory is at odds with the evidence of record. For example, Patent Owner's expert addressed scenarios where an application is "receiving an incoming call (which may *not* have involved prior user interaction with the application)." Ex. 2010, ¶39. This aligns with common sense; for example, an application does not need user interaction in order to alert the user to an incoming call, nor does it need user interaction to record a voicemail message (which constitutes a "voice-related connection request" as discussed in the Petition). And as noted above, the possibility that voice-related

IPR2024-01407 Request for Director Review
U.S. Patent No. 9,179,359

connection requests might not involve any user interaction is confirmed by the Petition itself, which states only that those connection requests involve scenarios where a user is "likely to" interact with the application. Pet. 47.

Patent Owner respectfully requests that Director Review be granted to enforce the Federal Circuit and Supreme Court precedent that the Board may not rely on theories not presented in a petition in order to grant institution. Consideration of new arguments that the Board inaccurately speculates Petitioner "appears to be arguing" (ID at 27) (but which the Petition does not actually argue) is highly prejudicial to Patent Owners who take a Petition at face value and devise a responsive strategy on that basis.

For instance, in an effort to simplify proceedings by focusing on a claim where Petitioner's theory was clearly deficient, Patent Owner disclaimed "all claims of the '359 patent except for claim 26." POPR 1 & n.1. Patent Owner did so in reliance on the assumption that the Board would address the theory actually set forth in the Petition, rather than a different (and inconsistent) theory that Patent Owner had no opportunity to address. By granting Director Review and confirming that institution decisions must be based on the theories actually set forth in a petition, the Director would contribute to the predictability of IPR proceedings.

**IV.    This proceeding should be terminated consistent with the Director's guidance regarding discretionary denial of institution.**

IPR2024-01407 Request for Director Review
U.S. Patent No. 9,179,359

### A.    The Board erred in its analysis of the *Fintiv* factors.

35 U.S.C. § 314(a) gives the Board discretion to deny institution of IPR due to the advanced state of parallel district court litigation regarding the same issues. *See NHK Spring Co. v. Intri-Plex Techs., Inc.*, IPR2018-00752, Paper 8 at 19-21 (PTAB Sept. 12, 2018) (precedential). The Board has set forth six factors for determining whether discretionary denial in light of such parallel litigation is appropriate, and in analyzing them, "takes a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review." *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 at 5-6 (PTAB Mar. 20, 2020) (precedential) ("*Fintiv I*"); *see also Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 15 at 7-17 (PTAB May 13, 2020) (informative) ("*Fintiv II*").

The Board abused its discretion by instituting this proceeding, even though, as explained in the pre-institution briefing, all but **one** of the six *Fintiv* factors weigh in favor of the Board exercising its discretion to deny institution.

For **<u>Factor 1</u>**, no stay of the parallel district court litigation had been granted or requested, and a stay is unlikely given the advanced stage of the case. *See, e.g.*, *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-00310-JRG, 2022 WL 2872993, at *4 (E.D. Tex. July 21, 2022) (Gilstrap, J.) (denying motion to stay pending IPR where, when defendant's motion was filed, the claim construction hearing and the close of fact discovery were approaching and noting that "the parties

had already invested considerable time and expense in preparing this case"); *Force Mos Tech., Co. v. Asustek Comput., Inc.*, No. 2:22-cv-00460-JRG, 2024 WL 1586266, at *3 (E.D. Tex. Apr. 11, 2024) (denying motion to stay where discovery was well underway and where the IPR petition was filed several months after infringement contentions were served). The Board did not evaluate these denials of stays pending *inter partes* review, and was incorrect in its assertion that "there is insufficient evidence that a stay may or may not be granted if trial is instituted." *See* ID at 6.

For **Factor 2**, the district court trial will occur approximately five and a half months before the deadline for a final written decision in this proceeding, which weighs strongly against institution. The Board correctly acknowledged that "*Fintiv* factor 2 favors exercising our discretion to deny institution." ID at 7. However, the Board did not accord sufficient weight to this factor, which weighs "substantially" against institution. *AT&T Servs. Inc. v. ASUS Tech. Licensing Inc.*, IPR2024-00997, Paper 15 at 9 (PTAB Dec. 16, 2024) (holding that trial occurring "four to five months prior to the deadline for our final written decision, based on the scheduled trial date and median time-to trial statistics … weighs substantially in favor of discretionary denial").

For **Factor 3**, there had been much investment by the parties and the district court. For instance, before the Board issued its institution decision, claim

construction briefing was already complete and fact discovery (currently set for May 19, 2025) was only two months away. The Board thus correctly acknowledged that "the parties have expended significant effort on this case." ID at 7. And although the Board reasoned that it was not clear whether the district court had yet invested significant effort in the case based in part on the observation that "the claim construction hearing will not occur until after institution" (ID at 7), the claim construction hearing is still scheduled to go forward on April 4, 2025 (the day after filing of this request for Director Review). Accordingly, although the Board held Factor 3 to be neutral (ID at 8), it should have been weighed against institution.

For **Factor 4**, Petitioner entered into a *Sotera* stipulation, "[b]ut Petitioner's stipulation does not ensure that these IPR proceedings would be a 'true alternative' to the district court proceeding" because Petitioner has presented numerous invalidity grounds that are combinations of the prior art at issue in this proceeding with system prior art, "which Petitioner's stipulation is not likely to moot." *See Motorola Solutions, Inc. v. Stellar, LLC*, IPR2024-01205, Paper 19 (Order Granting Director Review) at 3-4 (Mar. 28, 2025) ("*Motorola*"); Ex. 2007 at 35 (Petitioner's invalidity contentions, identifying "Blackberry Devices," "Apple Devices," "Android Devices," and "Windows Mobile Devices" in combination with the Cole reference at issue in this IPR). Thus, "although Petitioner's *Sotera* stipulation may mitigate some concern of duplication between the parallel proceeding and this

proceeding" (*Motorola* at 4), the Board gave undue weight to that stipulation in finding that it "weighs ***strongly*** against exercising our discretion to deny institution." ID at 8.

For **<u>Factor 5</u>**, Petitioner is a defendant in the parallel litigation, such that this factor weighs against institution (as the Board correctly determined—*see* ID at 9).

The Board reasoned that **<u>Factor 6</u>** was neutral, but based that determination on the assumption that the Petition did not suffer from significant weaknesses. *See* ID at 9-10. As discussed above, however, the Board's Institution Decision was based on a theory not actually presented in the Petition and that Patent Owner never had an opportunity to address. Taking this into account, Factor 6 weighs strongly in favor of institution (and even if the Petition ***were*** strong on the merits, would be at most neutral).

Taken as a whole, each of Factors 1-3 and 5-6 weighed against institution. And even if the Board's Factor 6 analysis regarding the strength of the Petition's merits is assumed to be correct, Factors 1-3 and 5 should have been weighed against institution. Petitioner's *Sotera* stipulation does not outweigh these factors (*see Motorola* at 4), and the Board abused its discretion in granting institution.

## B.    Additional factors in the Memorandum weigh against institution.

The Acting Director's Memorandum identified several additional factors that the Board may consider in evaluating discretionary denials. Memorandum at 2-3. As

explained below, these factors provide additional reasons that institution should not have been granted, beyond the traditional *Fintiv* factors.

One relevant factor identified in the Memorandum is "[t]he extent of the petition's reliance on expert testimony." Memorandum at 2. The Petition relies extensively on expert testimony to allege the invalidity of claim 1, from which the sole challenged claim 26 depends. *See* Ex. 1003, ¶¶65-105.

The Petition further relies on expert testimony in evaluating the additional limitations added by dependent claim 26. *See* Ex. 1003 ¶¶139-140. Notably, the Petition's reliance on expert testimony in this regard is a near-verbatim recitation of the same arguments presented in the Petition itself, with no additional meaningful analysis. For example, Petitioner's expert repeats, verbatim, the Petition's allegation that "[a]n application that provides a voice-related connection request (different application) involves a determination that a user is likely to interact with the application (e.g., voice call) (user interaction with the different application), and thus, prioritization by the connection manager modules involves determin[ing] that the different application is an active application," prefaced with the conclusory assertion that "A POSITA would have therefore understood and found obvious" that this is the case. Ex. 1003, ¶140.

Because the Petition's relied-upon on expert testimony provides no explanation of *why* the Petition's conclusory assertions are correct, that testimony is

entitled to "little or no weight." 37 C.F.R. §42.65(a); *see Xerox Corp. v. Bytemark, Inc.*, IPR2022-00624, Paper 9 at 15 (PTAB Aug. 24, 2022) (precedential) (assigning "little weight" to testimony that "merely repeats, *verbatim*, the conclusory assertion for which it is offered to support"); *Facebook* v. *Windy City Innovations, LLC*, 973 F.3d 1321, 1340-41 (Fed. Cir. 2020) (affirming Board's rejection of invalidity theory where "the Board considered Facebook's expert's testimony but determined that it did not add materially to Petitioner's unpersuasive attorney argument").

And certainly, the Petition's reliance on attorney argument provides no basis for the ***inherency*** theory that formed the basis for the Board's Institution Decision, as discussed above in Section III. *See* Institution Decision at 27 (noting that Petitioner "appears to be arguing" that before an application can initiate a request for a voice connection, "the user ***has to*** interact with that application"). Accordingly, the Petition's reliance on expert testimony weighs against institution.

Another relevant factor identified in the Memorandum is "the strength of the unpatentability challenge." Memorandum at 2. As discussed above in Section III, the strength of the invalidity theory set forth in the Petition is weak, and cannot be salvaged by a new theory provided for the first time by the Board in its decision granting institution. Accordingly, this factor weighs against institution.

An additional relevant factor identified in the Memorandum relates to the "[s]ettled expectations of the parties, such as the length of time the claims have been

in force." Memorandum at 2. Here, the '359 patent issued nearly a decade ago, on November 3, 2015. See Ex. 1001 at (45). This factor thus additionally weighs against institution.

As explained above, the *Fintiv* factors alone weighed against institution, and when the additional factors identified in the Memorandum are considered, discretionary denial is even more appropriate. Thus, Patent Owner respectfully requests that the Director exercise discretion to terminate this proceeding.

## V.     Conclusion

Patent Owner respectfully requests that the Director exercise discretion for to terminate the instant proceeding on one of or both of two independent reasons. First, that the Board's institution decision was improperly based on an inherency theory directly inconsistent with the theory actually advanced by the Petition. And second, that the Board's weighing of factors regarding discretionary denial was erroneous.

Date: April 3, 2025                   Respectfully submitted,

                                      /James A. Milkey/
                                      James A. Milkey, Reg. No. 79,503
                                      Reza Mirzaie, Reg. No. 69,138
                                      Marc A. Fenster, *pro hac vice* forthcoming
                                      Dale Chang, Reg. No. 61,476
                                      Neil A. Rubin, Reg. No. 67,030
                                      Philip X. Wang, Reg. No. 74,621
                                      RUSS, AUGUST & KABAT
                                      12424 Wilshire Blvd., 12th Floor
                                      Los Angeles, CA 90025

                                      *Counsel for Patent Owner*

IPR2024-01407 Request for Director Review
U.S. Patent No. 9,179,359

## CERTIFICATE OF SERVICE (37 C.F.R. § 42.6(e)(1))

The undersigned hereby certifies that the above document was served on April

3, 2025, by filing this document through the Patent Trial and Appeal Case Tracking

System as well as delivering a copy via electronic mail upon the following attorneys

of record for the Petitioner:

> W. Karl Renner (Reg. No. 41,265)
> Jeremy J. Monaldo (Reg. No. 58,680)
> Jennifer J. Huang (Reg. No. 64,297)
> Ryan Chowdhury (Reg. No. 74,466)
> FISH & RICHARDSON PC
> 60 South Sixth Street, Suite 3200
> Minneapolis, MN 55402
> IPR39843-0181IP1@fr.com
> PTABInbound@fr.com
> axf-ptab@fr.com
> jjm@fr.com
> jjh@fr.com
> rxc@fr.com

Date: April 3, 2025                    /James A. Milkey/
                                       James A. Milkey, Reg. No. 79,503
                                       Reza Mirzaie, Reg. No. 69,138
                                       Marc A. Fenster, *pro hac vice* forthcoming
                                       Dale Chang, Reg. No. 61,476
                                       Neil A. Rubin, Reg. No. 67,030
                                       Philip X. Wang, Reg. No. 74,621
                                       RUSS, AUGUST & KABAT
                                       12424 Wilshire Blvd., 12th Floor
                                       Los Angeles, CA 90025

                                       *Counsel for Patent Owner*