# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC, | § § § § § |
| *Plaintiff*, | § § |
| v. | §  CIVIL ACTION NO. 2:23-CV-00103-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., | § § § § § § |
| *Defendants*. | |

## **REPORT & RECOMMENDATION**

Before the Court are the Parties' Motions Regarding Plaintiff Headwater Research LLC's Standing to bring this suit. **Dkt. Nos. 174, 177**. Plaintiff filed a Motion for Partial Summary Judgment as to Defendant Samsung's Standing Defense. Dkt. No. 174. Samsung filed a Motion to Dismiss for Lack of Standing. Dkt. No. 177. The Parties thereafter jointly moved for an evidentiary hearing on the issue of standing. Dkt. No. 314. On February 20, 2025, the Court held an evidentiary hearing wherein Dr. Raleigh testified and was subject to cross-examination by Samsung; additionally, the Parties presented oral arguments. Dkt. No. 338.

The Court considers the competing motions under Rule 12(i) and resolves the issue of standing before trial. The issue of standing is one for the Court, not the jury. *See DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1291 (Fed. Cir. 2008). For the reasons discussed below, the Court finds that Headwater has standing to bring this action.

## I. BACKGROUND

Squarely at issue here is Dr. Raleigh's assignment agreement with Qualcomm, his former employer. Dr. Raleigh is Headwater's founder, principal inventor, and corporate representative. He is also the sole inventor of all the asserted patents in this case.

The Assignment Agreement provides that all Inventions are assigned to Qualcomm and defines "Inventions" as:

> All inventions, discoveries, developments, formulae, processes, improvements, ideas and innovations, whether patentable or not … made, conceived, reduced to practice, authored, or fixed in a tangible medium of expression by me, … whether or not made, conceived, reduced to practice, authored, or fixed in a tangible medium of expression during working hours, which results from my work or association with the Company, or which results from or is aided by the use of the Company's equipment, supplies, facilities or trade secret information, or which is related to or coming within the scope of the Company's business, or related to the Company's products or any research, design, experimental or production work carried on by the Company.

Dkt. No. 177-4 at ¶ 1.1. The Assignment Agreement additionally provides a presumption:

> I agree that an Invention disclosed by me to a third person or described in a patent application filed by me or in my behalf within one year following termination of my employment with the Company shall be presumed to be an Invention subject to the terms of this Agreement unless proved by me to have been conceived and first reduced to practice by me following the termination of my employment with the Company.

*Id.* at ¶ 1.4.

In a previous case between these parties, this Court resolved a similar dispute and found that Headwater had standing. *Headwater Rsch. LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00422-JRG-RSP, 2024 WL 4332693 (E.D. Tex. Aug. 2, 2024), *report and recommendation adopted,* No. 2:22-CV-00422-JRG-RSP, 2024 WL 4953798 (E.D. Tex. Dec. 3, 2024) (hereinafter *"R&R"*). Samsung, however, argues that the instant case presents the following key differences:

- In this case, Headwater clearly claims a priority date of January 28, 2009, so there is no question that the patents-in-suit were filed within one year of Dr. Raleigh leaving Qualcomm.

2

- The corroborating evidence the Court cited in the R&R is inapplicable because Headwater admits this case does not involve any shift "from a network side solution to a device side solution." *Compare R&R* at 12.
- Indeed, none of Headwater's cited evidence corroborates when Dr. Raleigh conceived the claimed invention because none of it discusses an "aggregated messaging channel," which is how Dr. Raleigh describes the patents-in-suit.
- Dr. Raleigh is the sole inventor in this case, so there is no issue of when he collaborated with any co-inventors.

Dkt. No. 177 at 1. Dr. Raleigh left Qualcomm on September 19, 2008, and filed the '354 provisional application on January 28, 2009. Headwater asserts that all the asserted patents claim priority to this date.

## II. ANALYSIS

Samsung argues that Headwater has no standing to bring this suit because Qualcomm owns the asserted patents based on the assignment agreement. First, Samsung argues that Dr. Raleigh filed the application within one year of leaving Qualcomm, thus triggering the presumption. *Id.* at 9. Next, Samsung argues that the invention is within the scope of Qualcomm's business. *Id.* Third, Samsung argues that Headwater has failed to rebut the presumption for two reasons: (1) There is no corroboration of Dr. Raleigh's conception date, and (2) Dr. Raleigh's conception date is not credible. *Id.* at 11.

The Court focuses its analysis on the unique disputed facts of this case and does not retread ground it covered in the *HWI R&R*. Thus, the Court proceeds on the basis that the assignment agreement is valid. *R&R* at *3. Additionally, Headwater does not dispute the scope issue here. *See* Dkt. No. 174; Dkt. No. 204. The parties agree that the conception date falls within the one-year period.

The only question the Court must resolve is whether Headwater has proven that Dr. Raleigh's conception date was after he left Qualcomm's employ.

Dr. Raleigh is not required to corroborate his conception date. There is no freestanding corroboration requirement, rather corroboration is only required to support an earlier conception date than the priority date of the patent. Samsung cites several cases from the Federal Circuit that seem to require corroboration for any conception date, but none of the cases discuss the issue of a party attempting to prove a later conception date. Samsung admitted as much at the pre-trial conference.

> **The Court**: And my question to you is: Do any of these cases you are relying on deal with the situation where the question was not can the Patentee prove earlier [conception], but can the Patentee prove later . . . conception, as is the case here?
>
> **Mr. Thornburgh** [for Samsung]: And we don't have a case with the same facts. . . .")

Dkt. No. 303 at 23: 7–14. Samsung first argues that "the law requires corroboration of an alleged conception date because conception is a 'mental act,' subject to self-serving recollection of events long past." Dkt. No. 177 at 12 (quoting *Dawson v. Dawson*, 710 F.3d 1347, 1352 & n.1 (Fed. Cir. 2013)). In *Dawson*, a university instituted an interference proceeding and thus, as the junior party, bore the burden of proving that its former employee conceived of the invention prior to his patent application on behalf of his future employer. 710 F.3d at 1350–1352. The board found that he did not conceive it at the university and the Federal Circuit affirmed. *Id.* at 1352. The Court cited the corroboration requirement because the university was seeking an *earlier* conception date.

Next, Samsung cites *Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293 (Fed. Cir. 2018). The issue there was "whether Apator can swear behind Nielsen by showing conception and reduction to practice *prior* to Nielsen's effective filing date." *Id.* at 1294 (emphasis added). *Apator* arose in the context of Pre-AIA Section 102(g) and the process of swearing behind a reference. *Id.* at 1295. The *Apator* court did set forth the requirement of corroboration for conception, and the

4

policy rationale of preventing self-serving inventor testimony. *Id.* But again, *Apator* specifically addressed the issue of trying to prove an *earlier* conception date.

Samsung also relies on *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367 (Fed. Cir. 1986), for the proposition that Headwater need not prove that Dr. Raleigh did not conceive at Qualcomm but rather must prove *when* he did conceive. Dkt. No. 177 at 12–13. *Hybritech* too considered corroboration in the context of pre-AIA 102(g) and swearing behind. 802 F.2d at 1376. The case law does not support Samsung's position that an inventor must corroborate that he did not conceive of his invention earlier than his priority date from a patent application.

The Court declines to require corroboration of a later conception date. As the Court said in *Headwater I*:

> The corroboration requirement simply does not mechanically work in the situation where the party without the burden is the one trying to prove an earlier conception date. Here, Headwater has no need to corroborate its latest conception date, the one supported by prosecution history filing, as it relies on no testimony. What Samsung wants Headwater to provide corroboration for is the lack of conception. Headwater would have to provide documentation that something novel was expressly not conceived of while Dr. Raleigh worked at Qualcomm.

*R&R* at *6. Samsung's attempt to recast the inquiry as one of *when* the invention was conceived does not help. Under Samsung's framework Dr. Raleigh would still have to corroborate that he did not conceive of the invention earlier than he claims in his patent application. Samsung does not explain how one could corroborate that negative.

The Court finds that Dr. Raleigh's testimony that his conception date was after he left Qualcomm is credible. Dr. Raleigh testified that his role at Qualcomm involved business and strategy and not inventing anything. Dkt. No. 338 at 58: 18–25. He testified that he specifically did not work on what is claimed in the asserted patents while at Qualcomm. *Id.* at 22: 13 – 24: 13. He described that he first had his "ah-ha" moment about moving from the network to the device as described and found credible in *Headwater I*. *Id.* at 6: 8–18; *HW I*, R&R at *7. Then while

5

working on implementing that first insight, he realized that that would cause new downstream problems. Dkt. No. 338 at 6: 19 – 7: 12. Dr. Raleigh pointed to documents that he presented to Best Buy which show that in September and October of 2008 he was not thinking of the invention of the asserted patents, but later in January of 2009 he was. *Id.* at 7: 20 – 8: 9.

At the hearing, Samsung cross-examined Dr. Raleigh about the issue of the Cingular Network collapsing and his patents solving that issue. *Id.* at 89: 6 – 91: 3. Dr. Raleigh admitted that he knew of the problem while at Qualcomm. Samsung again relies on Dr. Raleigh's remarks at a panel where Dr. Raleigh expressed that he had an idea to solve these connection issues while still at Qualcomm. *See HW I, R&R* at *5. Samsung further pointed out that Dr. Raleigh took 20 months to file the applications for the patents asserted in the *Headwater I* case, but only 3 months for the patents asserted in this case. Dkt. No. 338 at 110: 6–12.

Even considering all of Defendant's arguments, the Court finds that Dr. Raleigh's testimony is credible. While Dr. Raleigh may have been aware of the problem he purports to solve with his asserted patents, he has shown by a preponderance of the evidence that he did not conceive of the solution while employed at Qualcomm.

Furthermore, Qualcomm's actions support finding that Dr. Raleigh conceived the inventions after he left. Qualcomm offered millions of dollars to buy Headwater's patents. Dkt. No. 202 at 12. This is strong evidence that Qualcomm did not believe that it owned the patents. Qualcomm has never litigated the question of ownership of these patents and any vague insinuation Qualcomm made regarding ownership of the patents (while negotiating to buy them) does not overcome the evidence on the other side of the ledger. *See id.* at 13.

### III. CONCLUSION

After review of the briefing, the testimony and evidence, and the Court's prior rulings, the Court finds that Headwater has standing. Therefore, the Court recommends that Headwater's Motion be **GRANTED** and Samsung's Motion be **DENIED.**

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 31st day of March, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE