# Exhibit R



# Transcript of Alireza Raissinia

**Date:** February 14, 2025
**Case:** Headwater Research LLC -v- Verizon/T-Mobile/AT&T/Samsung

**Planet Depos**
**Phone:** 888.433.3767 | **Email:** transcripts@planetdepos.com
www.planetdepos.com
Michigan #8598 | Nevada #089F | New Mexico #566

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

**Page 1**

```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF TEXAS
                    MARSHALL DIVISION
-------------------------x
HEADWATER RESEARCH LLC,    :
         Plaintiff,        :
    v.                     : Case No.:
T-MOBILE USA, INC. and     : 2:23-cv-00379-JRG-RSP
SPRINT CORP.,              :    (Lead Case)
         Defendants.       :
-------------------------x
HEADWATER RESEARCH LLC,    :
         Plaintiff,        :
    v.                     : Case No.:
T-MOBILE USA, INC. and     : 2:23-cv-00377-JRG-RSP
SPRINT CORP.,              :    (Member Case
         Defendants.       :
-------------------------x
(Caption continued on next page)

          Video Deposition of ALIREZA RAISSINIA
                    Conducted Virtually
                 Friday, February 14, 2025
```

**Page 2**

```
(Caption continued from previous page)
                              12:36 p.m. EST
Job No.: 571075
Pages: 1 - 183
Stenographically reported by: Judith E. Bellinger,
RPR, CRR, CSR-TX, CCR-WA, CCR-NM
-------------------------x
HEADWATER RESEARCH LLC,       :
         Plaintiff,           :
    v.                        : Case No.:
VERIZON COMMUNICATIONS        : 2:23-CV-00352-JRG-RSP
INC.; CELLCO PARTNERSHIP      :
d/b/a VERIZON WIRELESS;       :
VERIZON CORPORATE SERVICES:
GROUP INC.,                   :
         Defendants.          :
-------------------------X
HEADWATER RESEARCH LLC,       :
         Plaintiff,           :
    v.                        : Case No.:
AT&T SERVICES, INC., AT&T     : 2:23-cv-00397-JRG-RSP
MOBILITY, LLC AND AT&T        :    LEAD CASE
CORP.,                        :
         Defendants.          :
-------------------------x
HEADWATER RESEARCH LLC,       :
         Plaintiff,           :
    v.                        : Case No.:
AT&T SERVICES, INC., AT&T     : 2:23-cv-00398-JRG-RSP
MOBILITY, LLC AND AT&T        :
CORP.,                        :
         Defendants.          :
-------------------------x
HEADWATER RESEARCH LLC,       :
         Plaintiff,           :
    v.                        : Case No.:
SAMSUNG ELECTRONICS CO.,      : 2:23-cv-641-JRG-RSP
LTD., et al.,                 :
         Defendants.          :
-------------------------x
```

**Page 3**

```
     Video Deposition of ALIREZA RAISSINIA,
conducted virtually,




     Pursuant to notice, before Judith E.
Bellinger, Registered Professional Reporter,
Certified Realtime Reporter, and E-Notary Public
in and for the State of Maryland.
```

**Page 4**

```
                    A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:
    REZA MIRZAIE, ESQUIRE
    KRISTOPHER R. DAVIS, ESQUIRE
    RUSS AUGUST & KABAT
    12424 WILSHIRE BOULEVARD
    Los Angeles, CA 90025
    310.826.7474

ON BEHALF OF DEFENDANTS VERIZON AND T-MOBILE:
    ANDREW ROBB, ESQUIRE
    GIBSON, DUNN & CRUTCHER LLP
    310 University Avenue
    Palo Alto, CA 94301-1744
    650.849.5334

ON BEHALF OF THE DEFENDANT AT&T:
    KEVIN P. HESS, ESQUIRE
    MCKOOL SMITH
    303 Colorado Street
    Suite 2100
    Austin, TX 78701
    512.692.8749
```

Page 5

APPEARANCES CONTINUED

ON BEHALF OF THE SAMSUNG DEFENDANTS IN THE
641 CASE:

    JARED HARTZMAN, ESQUIRE
    FISH & RICHARDSON P.C.
    1000 Maine Avenue, SW
    Suite 1000
    Washington, DC 20024
    202.783.5070
    - AND -
    TAE HONG, ESQUIRE
    FISH & RICHARDSON
    1180 Peachtree Street, NE
    21st Floor
    Atlanta, GA 30309
    404.724.2759

ON BEHALF OF THE DEPONENT:
    DONN WASLIF, ESQUIRE
    MORGAN FRANICH FREDKIN SIAMAS & KAYS LLP
    333 WEST SAN CARLOS STREET
    Suite 1050
    San Jose, CA 95110
    408.288.8288

Page 6

APPEARANCES CONTINUED

ALSO PRESENT:
    Philip Astor, Videographer
    Harut Akopyan, Planet Depos Technician

Page 7

CONTENTS

EXAMINATION OF ALIREZA RAISSINIA    PAGE
  By Mr. Robb    10
  By Mr. Hess    106
  By Mr. Robb    120
  By Mr. Hartzman    127
  By Mr. Mirzaie    163

EXHIBITS
(Attached to the transcript)

| Exhibits: | | PAGE |
|---|---|---|
| Exhibit 1 | LinkedIn profile of Ali Raissinia | 18 |
| Exhibit 2 | T-Mobile my Touch 3G Slide User guide, Bates Numbers TMO_H200043878 - 4059 | 48 |
| Exhibit 3 | "Apple iOS 7:app developers explain its key features and implications" | 56 |
| Exhibit 4 | United States Patent Number 9,215,613 B2 | 87 |
| Exhibit 5 | United States Patent Number 8,589,541 B2 | 95 |
| Exhibit 6 | United States Patent Number 9,179,359 B2 | 136 |

Page 8

PROCEEDINGS

    THE VIDEOGRAPHER: Here begins Media Number 1 in the videotaped deposition of Alireza Raissinia, in the matter of Headwater Research, LLC v. Verizon/T-Mobile/AT&T, and Headwater Research, LLC v. Samsung Electronics Co, Limited, et al., in the United States District Court for the Eastern District of Texas, Marshall Division, Case Numbers 2:23-CV-00352, 379, 392 [sic], and 641 JRG-RSP.

    Today's date is February 14th, 2025.

    The time on the video monitor is 12:36.

    The remote videographer today is Philip Astor, representing Planet Depos.

    All parties of this video deposition are attending remotely.

    Would counsel, please, voice-identify themselves and state whom they represent.

    MR. ROBB: Andrew Robb, Gibson Dunn, for Verizon and T-Mobile.

    MR. HESS: Kevin Hess, McKool Smith, for AT&T.

    For the record, I didn't hear the 397 case in the read-on, and that's the AT&T case,

## Page 9

1 Philip.
2     MR. HARTZMAN: Jared Hartzman for Fish
3 & Richardson for the Samsung defendants in the
4 641 case.
5     With me on the Zoom is my colleague
6 Tae Hong.
7     MR. WASLIF: Donn Waslif, representing
8 the witness, Alireza Raissinia.
9     MR. MIRZAIE: Reza Mirzaie, plaintiff
10 Headwater. With me on the line is my partner
11 Kris Davis.
12     THE VIDEOGRAPHER: The court reporter
13 today is Judy Bellinger, representing Planet
14 Depos.
15     The witness will now be sworn.
16     ALIREZA RAISSINIA,
17    being first duly sworn, was examined
18 and testified as follows:
19     MR. ROBB: Before I begin, I'll also
20 note for the record that I believe that in the
21 read-on, the 379 case for T-Mobile was mentioned
22 but the 377 case was not, so I'll just note it's
23 for both of those related cases.
24 EXAMINATION BY COUNSEL FOR THE DEFENDANTS VERIZON
25     AND T-MOBILE

## Page 10

1 BY MR. ROBB:
2   Q  Good morning, Mr. Raissinia.
3   **A  Good morning.**
4   Q  Could you, please, state your full name
5 for the record?
6   **A  Yeah. Alireza Raissinia, my full name.**
7   Q  And you understand you're under oath
8 today?
9   **A  Correct, I do.**
10   Q  And you understand you have an
11 obligation to provide truthful and accurate
12 testimony today?
13   **A  I do.**
14   Q  If you find a question is unclear,
15 please, let me know and I will attempt to clarify
16 it. Otherwise, I will assume you understand the
17 question.
18     Is that fair?
19   **A  That is fair.**
20   Q  You can request breaks as needed. But
21 I ask that you not request a break when a question
22 is pending.
23     Is that fair?
24   **A  Correct. That's fair.**
25   Q  Please wait until I finish my question

## Page 11

1 before you answer. It helps the court reporter if
2 we do not speak over one another. And I will try
3 to do the same, where I don't speak over your
4 answer with the next question.
5     Is that fair?
6   **A  Fair.**
7   Q  It's important, for the transcript,
8 that you answer each question verbally and avoid
9 words such as -- or sounds such as uh-huh.
10     Is that fair?
11   **A  Fair.**
12   Q  And your counsel may object to
13 particular questions. Unless he instructs you not
14 to answer, you should go ahead and answer,
15 provided you understand the question.
16     Do you agree with that?
17   **A  I do.**
18   Q  Is there any reason why you cannot give
19 truthful testimony today?
20   **A  No reason.**
21   Q  Do you have any question about anything
22 I've just said?
23   **A  No.**
24   Q  I understand you were deposed once
25 before in a case brought by Headwater against

## Page 12

1 Samsung; is that right?
2   **A  Correct.**
3   Q  Have you reviewed the transcript for
4 your deposition in that case?
5   **A  I did. Close to a year ago, yeah.**
6   **When it was first issued.**
7   Q  And based on your review of that
8 transcript, is any of the testimony you gave in
9 that deposition inaccurate?
10     MR. WASLIF: Vague. Overbroad.
11     Go ahead.
12   **A  There were some typos and clarification**
13 **that needed to happen that I suggested, and that's**
14 **it.**
15   Q  Were there any substantive inaccuracies
16 in the testimony that you gave in the Samsung
17 litigation?
18   **A  Can you repeat the question?**
19   Q  Were there any substantive inaccuracies
20 in the testimony you gave in the Samsung
21 litigation?
22   **A  No.**
23   Q  Other than your testimony in the
24 Samsung deposition, have you ever been deposed
25 before?

**Page 13**

1    A    I don't recall.  I might have.
2    Q    Have you ever given -- have you ever
3 testified in court before?
4    A    No.  Not in court.
5    Q    Have you ever given sworn written
6 testimony before, for example, in the form of a
7 declaration or affidavit?
8    A    No.
9    Q    And other than the Samsung deposition
10 last year, you don't remember, one way or the
11 other, of whether you've ever been deposed before;
12 is that correct?
13    A    That's correct.  I don't.
14    Q    What do you know about this litigation,
15 specific litigation against -- brought by
16 Headwater against Verizon and T-Mobile?
17         MR. WASLIF:  Vague, overbroad.
18         Can you narrow the question, Counsel?
19         MR. ROBB:  Counsel, as you know, in
20 this district, you have to restrict the questions
21 [sic] to form.
22         MR. WASLIF:  Object to form.
23 Overbroad.  And it also calls for privileged
24 communication because you didn't eliminate that.
25         So I don't know what you mean by the

**Page 14**

1 litigation.  It's pretty broad.
2         MR. ROBB:  Counsel, you have to limit
3 your objections to form in this district.
4         MR. WASLIF:  And you're not to include
5 in your answer anything that we discussed.  That's
6 attorney-client privilege, Mr. Raissania.
7    Q    With counsel's instruction, what do you
8 know about the lawsuit that Headwater has brought
9 against Verizon and T-Mobile?
10         MR. WASLIF:  Same objection.
11    A    Nothing.
12    Q    Nothing.  Okay.
13         What did you do to prepare for your
14 deposition today?
15    A    I did nothing.  I only talked to Donn
16 and David.  For about ten minutes with Donn, half
17 an hour with David.
18    Q    And are Donn and David your attorneys?
19    A    Correct.
20    Q    Did you review any documents in
21 preparation for your deposition today?
22    A    No.
23    Q    Other than meeting with your attorneys,
24 Donn and David, did you talk with anyone else
25 about your deposition that was happening today?

**Page 15**

1    A    I mentioned it to my wife.
2    Q    Is there anyone else you spoke to about
3 your deposition?
4    A    No.
5    Q    Since the Samsung -- let me back up.
6         When was the Samsung deposition?
7    A    I recollect it was about a year and a
8 few months back.
9    Q    Since the Samsung deposition, have you
10 spoken with anyone about any issues relating to
11 Headwater?
12         MR. WASLIF:  With the exception of the
13 attorney-client communications you've had, he's
14 already covered.
15    Q    Let me ask a more precise question.
16         Setting aside the conversations you had
17 in preparation for your deposition today, with
18 your two attorneys, have you had any conversations
19 with anyone, for any reason, about Headwater since
20 the Samsung deposition?
21    A    If the conversation means talking to
22 someone, no.
23    Q    Okay.  Did you have written
24 conversations with anyone?
25    A    I had one text exchange with Greg

**Page 16**

1 Raleigh.
2    Q    Were there any other written
3 communications with anyone --
4    A    No.
5    Q    Let me finish the question.
6         Were there any other written
7 communications you had with anyone following the
8 Samsung deposition?
9    A    No.
10    Q    What did you discuss with Dr. Raleigh
11 in that written communication you referred to?
12    A    He asked me a question, specifically,
13 whether I have received my Ph.D. degree, and I
14 told him, no, I got my -- I worked on -- I did my
15 coursework but I didn't get the degree.  That's
16 it.
17    Q    Was there any other subject matter
18 discussed in your conversation with Dr. Raleigh
19 that you're referring to?
20    A    No.
21    Q    Did you bring any documents with you
22 today?
23    A    No.
24    Q    Where are you currently?
25    A    I'm in Bay Area.  I live in Bay Area.

---

Page 17

1  Q   And are you physically in your house
2  right now?  Where are you?
3  **A   No, no.  I'm in my office.**
4  Q   In your home office?
5  **A   Work office.  Work office.  At**
6  **Qualcomm.**
7  Q   So you're at Qualcomm right now?
8  **A   Correct.**
9  Q   And is your counsel in the building
10 with you?
11 **A   No.**
12     MR. WASLIF:  No.
13 Q   I would ask that while we're on the
14 record, that you refrain from having any
15 communications with anyone, including your
16 counsel, unless it's actually via this Zoom, i.e.,
17 for example, please don't email your counsel while
18 we're on the record.
19     Can you agree with that?
20 **A   Sure.**
21 Q   Mr. Raissinia, I have uploaded --
22 actually, sorry.  Strike that.
23     I'm going to upload it properly marked.
24 You can ignore the PDF I just uploaded.
25     MR. WASLIF:  Andrew, I couldn't hear

Page 18

1  you.  I'm sorry.
2      MR. ROBB:  I uploaded the PDF before I
3  designated it Exhibit 1, so I'm just re-uploading
4  it.
5      PLANET DEPOS TECHNICIAN:  Do you want
6  me to open it?
7      MR. ROBB:  No.  Hold on just one
8  second.
9      PLANET DEPOS TECHNICIAN:  Sorry.
10     (Exhibit 1 marked for identification
11 and attached to the transcript.)
12 BY MR. ROBB:
13 Q   Mr. Raissania, I had -- I keep calling
14 you Mr. Raissinia.  Is it correct that you
15 still -- you don't have a Ph.D.; is that right?
16 **A   Right.**
17 Q   So, Mr. Raissania, I have uploaded, as
18 a document marked as Exhibit 1, a PDF which I
19 believe is of your LinkedIn profile, retrieved
20 this month.
21     Can you, please, let me know when you
22 open it.
23 **A   The Exhibit 1, EX1?**
24 Q   EX1, yes.
25 **A   Okay.**

Page 19

1  Q   Is what I've uploaded as Exhibit 1 a
2  true and correct copy of your LinkedIn profile?
3  **A   Okay.  Yeah.  Yes, it is.**
4  Q   Okay.  Thank you.
5      Does your LinkedIn profile accurately
6  capture your work history?
7  **A   Yeah, pretty much.  Yeah.**
8  Q   Are there any inaccuracies in your
9  LinkedIn profile?
10 **A   Not really.  I think -- I haven't**
11 **looked at it for a long time, but I -- Qualcomm,**
12 **Headwater, Headwater.**
13     MR. WASLIF:  Read it to yourself.
14 Because the court reporter's going to take down
15 everything.
16 **A   Yes, it's a pretty good representative.**
17 **Correct.  It's correct.**
18 Q   So you were at Qualcomm from 2006 until
19 2009; is that right?
20 **A   Correct.**
21 Q   And then in 2009, you left Qualcomm to
22 join Headwater and ItsOn, correct?
23 **A   Yes.**
24 Q   And you were with both Headwater and
25 ItsOn for, approximately, one year, and in 2010,

Page 20

1  you left ItsOn and then only worked at Headwater
2  through 2011, correct?
3  **A   Yeah.  I guess, physically, you could**
4  **say I left, but I was -- I mainly focused on the**
5  **Headwater work, as opposed to ItsOn, yes.**
6  Q   Then 2011, you went back to Qualcomm
7  and left Headwater, right?
8  **A   Right.**
9  Q   And you've been at Qualcomm ever since?
10 **A   Correct.**
11 Q   Since -- do you recall when, in 2011,
12 you left Headwater?
13 **A   I think somewhere around -- I joined**
14 **Qualcomm January, if I remember correctly.  Early**
15 **January.  I don't know, January 8, 9, something**
16 **like that.**
17     **I probably had left Headwater before**
18 **Christmas or something like that.**
19 Q   After leaving Headwater at the end of
20 2011 and joining Qualcomm in the beginning of
21 2012, have you had any substantive interactions or
22 contributions to Headwater?
23 **A   No.  Not at all.**
24 Q   Are you aware of what ultimately
25 happened to ItsOn?

---

**Page 21**

1  MR. WASLIF: Objection. Vague.
2  A  No. I don't quite know what happened.
3  Q  Do you have a general understanding
4  that ItsOn no longer exists?
5  A  Correct. That understanding is
6  correct.
7  Q  Beyond the understanding that ItsOn no
8  longer exists, do you have any understanding of
9  the details of what caused ItsOn to shut down or
10 the process by which ItsOn shut down?
11 A  Not at all.
12 Q  Have you had any insight into inner
13 works of Headwater since you left the company in
14 2011?
15 A  No.
16 Q  Have you been --
17    MR. WASLIF: Pardon me. One second,
18 Andrew.
19    Madam court reporter, are you getting
20 my objections or can you hear me?
21 Q  Mr. Raissinia, I would suggest that --
22 your counsel can tell you the same thing, but I'll
23 tell you. If you could just wait one second
24 because you and Mr. Waslif are talking over each
25 other.

**Page 22**

1    MR. WASLIF: Thank you for that,
2  Counsel.
3  Q  Since leaving Headwater in 2011, have
4  you had any involvement, whatsoever, in the
5  prosecution of any of Headwater's patents?
6  A  No.
7  Q  Since leaving Headwater in 2011, have
8  you had any discussions with any individuals about
9  the prosecution of any of Headwater's patents?
10 A  No.
11 Q  Since leaving Headwater in 2011, have
12 you had any discussions with anyone relating to
13 alleged infringement by industry participants of
14 any Headwater patents?
15    MR. WASLIF: Object to form.
16 A  No.
17 Q  Do you have any view or information,
18 sitting here today, about whether Verizon
19 infringes any of Headwater's patents?
20    MR. WASLIF: Object to form. Calls for
21 an expert opinion, which he's not here to give.
22 A  No. I don't even know.
23 Q  Do you have any view or information,
24 sitting here today, about whether T-Mobile
25 infringes any of Headwater's patents?

**Page 23**

1    MR. WASLIF: Same objections.
2  A  No.
3  Q  Do you have any view or information,
4  sitting here today, about whether AT&T infringes
5  any of Headwater's patents?
6     MR. WASLIF: Same objections.
7  A  No.
8  Q  Do you have any view or information,
9  sitting here today, about whether Samsung
10 infringes any of Headwater's patents?
11    MR. WASLIF: Same objections.
12 A  No.
13 Q  Sitting here today, do you have any
14 view or information about whether any of the
15 products or services offered by Samsung or Apple
16 or Google infringes any of Headwater's patents?
17    MR. WASLIF: Form. Calls for an
18 opinion, which he's not here to give.
19    Go ahead.
20 A  No.
21 Q  When did you first meet Dr. Raleigh?
22 A  1995. I don't remember exactly the
23 month or what. But somewhere around that time.
24 Q  And did you interact with Dr. Raleigh
25 when you were at Qualcomm in the 2006 to 2009

**Page 24**

1  stint?
2  A  Very little.
3  Q  While you were at Qualcomm in that 2006
4  to 2009 period, what were your interactions with
5  Dr. Raleigh?
6     MR. WASLIF: Objection. Vague. Form.
7  A  If any, it was not work related because
8  he was actually in San Diego and I was in Bay Area
9  and I was focused on stuff that he was not. He
10 was doing something different, apparently.
11 Q  At a high level, what were the kinds of
12 things you were working on at Qualcomm from 2006
13 to 2009?
14 A  I was working on or we were working on?
15 I wasn't working with Greg Raleigh on anything. I
16 was working on engineering technology.
17 Q  I was asking you what you were working
18 on. So at a high level, what were you working on
19 at Qualcomm from 2006 to 2009?
20    MR. WASLIF: Object to the form.
21    And the question calls for at a high
22 level, as opposed to anything that would be
23 confidential to Qualcomm.
24 A  It's more engineering technology.
25 Q  What caused you to leave Qualcomm in

173

1  A  Yes.
2  Q  Do you remember he asked four or
3  five -- he asked that question four or five times
4  in a row?
5     Do you recall that?
6     MR. ROBB:  Object to form.
7  A  Yes.
8  Q  But if an app can be woken up in the
9  background and make API calls, then there's
10 certainly something for a policy to apply to and
11 block, right?
12    MR. ROBB:  Object to form.
13 A  Correct.
14 Q  And if there is a policy blocking
15 network access for the app, that's indicating that
16 there's some periods when the app can wake up so
17 you want to have the policy in place, fair?
18    MR. ROBB:  Object to form.
19 A  Fair.
20 Q  Now, earlier today, Mr. Robb also asked
21 if Headwater developed any real -- strike that.
22    Earlier today Mr. Robb asked, four or
23 five times, whether Headwater developed any real
24 technology or just wrote ideas down on paper.
25    Do you recall that?

174

1     MR. ROBB:  Object to form.
2  A  I do.
3  Q  Do you recall him asking that same
4  question four or five times in a row, too?
5     MR. ROBB:  Object to form.
6  Argumentative.  Form.
7  A  I do.
8  Q  You just meant that Headwater did not
9  develop product development, correct?
10    MR. ROBB:  Object to form.
11 A  Correct.
12 Q  You're not suggesting that Headwater
13 didn't develop real technology in its patents, are
14 you?
15    MR. ROBB:  Object to form.
16 A  No.
17 Q  And you're proud of your patents,
18 correct?
19 A  Absolutely.
20 Q  And, by the way, the patents that list
21 you and Dr. Greg Raleigh, and possibly other
22 inventors, you all, as inventors, did not develop
23 that during your time at Qualcomm, correct?
24    MR. ROBB:  Object to form and scope.
25 A  Correct.

175

1  Q  Anyone who says otherwise would be
2  wrong, right?
3     MR. ROBB:  Object to form.  And I'll
4  make a standing scope objection.
5  A  Correct.
6  Q  I believe earlier you said that Greg
7  was the driver on certain ideas and interactions
8  with certain companies.
9     Do you recall that?
10 A  Yes, I did say that.  I'm not sure
11 that -- yeah, I did.
12 Q  So, with respect to certain meetings
13 with various carrier companies, it's better to ask
14 him or someone else at ItsOn and not you, correct?
15 A  Correct.
16 Q  And I think you got questions today
17 about whether you're aware of any misconduct and
18 other synonyms of misconduct by the carriers.
19    Do you recall that?
20 A  I do.
21    MR. ROBB:  Object to form.
22 Q  And you haven't reviewed, you haven't
23 been provided or reviewed any of the confidential
24 emails or other documents from the carriers in
25 this case, right?

176

1  A  Correct.
2  Q  And even with respect to your time at
3  ItsOn, there are other people, as we just
4  established, who are better to ask questions about
5  that topic, such as Dr. Greg Raleigh, correct?
6     MR. ROBB:  Object to form.
7  A  Correct.
8  Q  You were also asked questions about,
9  early this morning, about the goal of Headwater's
10 solutions.
11    Do you recall that?
12    MR. ROBB:  Object to form.
13 A  Yes, I did remember.
14 Q  And you didn't have any of the patents
15 in front of you during this portion of the day, in
16 the morning, when you were asked those questions,
17 I'll just represent that.
18    So, your testimony about the goals of
19 the solution wasn't about any specific claim of
20 any patent, correct?
21    MR. ROBB:  Object to form.
22 A  Correct.
23 Q  And you were only there in 2009 and
24 2010; is that right?
25 A  I believe so.  I was there a couple

177

1 years, yeah.
2 Q And any other time periods, it's better
3 just to ask Dr. Raleigh; is that fair?
4 A Absolutely, yeah.
5 Q And even in that time period, you
6 weren't speaking on behalf of Dr. Raleigh; you
7 were just speaking on behalf of yourself, correct?
8 A Correct.
9 Q You were also asked questions about
10 Headwater's motivations in 2009 and '10, and I
11 just had some of the same questions.
12     You were just speaking on behalf of
13 yourself from 2009 to 2010, fair?
14     MR. ROBB: Object to form.
15 A Correct.
16 Q You were also asked a few questions
17 about prior art today. And similar to my
18 questions from a few minutes ago, you haven't
19 compared the construed claim language in any of
20 the claims in any of these patents to the prior
21 art, correct, in preparation for your testimony
22 today, correct?
23 A No, not for testimony today.
24 Q Now while you were working at Headwater
25 and/or ItsOn in 2009 to 2010, you weren't involved

178

1 in every single ItsOn project or on every single
2 ItsOn email, correct?
3 A Absolutely correct.
4 Q Would Dr. Raleigh be a better person to
5 ask about the -- perhaps, certain projects you
6 weren't involved in or meetings that you weren't
7 involved in?
8     MR. ROBB: Object to form.
9 A My recommendation, Dr. Raleigh would be
10 the right person to talk to.
11 Q And we talked about this a little bit
12 in your past deposition, but I believe you
13 testified that Dr. Raleigh has a unique way of
14 solving problems in the various technical fields,
15 correct?
16     MR. ROBB: Object to form.
17 A Correct. My view, yeah.
18 Q Can you explain that a little bit more?
19     MR. ROBB: Object to form.
20 A Well, he tends to have broad knowledge
21 and have a way of putting different ideas together
22 and to come with an impactful, I'll call it,
23 impactful and wide, broad patent ideas and
24 innovations. So, he has that tendency, yeah. I
25 mean, I definitely enjoyed working with him for

179

1 sure.
2 Q And do you think his inventions have
3 helped the world, his inventions over time?
4     MR. ROBB: Object to form.
5 A I would hope so.
6 Q Do you think he's a smart guy?
7     MR. ROBB: Object to form.
8 A Yeah, I do.
9 Q You were also asked some questions
10 today about the application layer or the API layer
11 for the ItsOn development.
12     Do you recall that?
13     MR. ROBB: Object to form.
14 A Yeah.
15 Q And I think you testified, and correct
16 me if I'm wrong, that James Lavine was a better
17 person to ask about those questions, correct?
18 A Oh, yeah.
19 Q And why is that?
20 A Well, he was very intuitive of the
21 software development and the structural libraries
22 and the way you, you know, call a module and hand
23 over parameters and middleware, the firmware, he
24 was very familiar with it. I think that knowledge
25 was valuable to putting all this together so it

180

1 becomes a synthesizable design.
2     The idea can be, in fact, implemented
3 in an efficient way. Like I just said, there's
4 only -- devices have limited resources. Not like
5 we can just keep writing code.
6 Q Right.
7 A You have to be cognizant to the overall
8 CPU, memory, power, and so forth.
9     MR. MIRZAIE: Okay. Maybe we can go
10 off the record for five minutes. I want to
11 streamline the rest of my questions. I think I
12 only have a couple minutes.
13     MR. WASLIF: Sure.
14     THE VIDEOGRAPHER: We are going off the
15 record at 18:36.
16     (Recess taken.)
17     THE VIDEOGRAPHER: We are back on the
18 record at 18:43.
19     MR. MIRZAIE: Mr. Raissinia, I don't
20 have any further questions at this time.
21     THE WITNESS: All right. Thank you.
22     MR. WASLIF: Anybody else have any
23 other questions?
24     MR. ROBB: None from me.
25     MR. HESS: None from me.