# Exhibit S



# Transcript of David Wise

**Date:** January 31, 2025
**Case:** Headwater Research LLC -v- AT&T Services, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767 | **Email:** transcripts@planetdepos.com
**www.planetdepos.com**
**Michigan #8598 | Nevada #089F | New Mexico #566**

**Page 1**

```
 1        IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF TEXAS
 2                 MARSHALL DIVISION

 3   HEADWATER RESEARCH LLC,  )

 4        Plaintiff,          )
                              )  CASE NO.:
 5   VS.                      )  2:23-cv-00397-JRG-RSP
                              )
 6   AT&T SERVICES, INC.,     )  Lead Case
     AT&T MOBILITY, LLC, AND  )
 7   AT&T CORP.,              )
                              )
 8        Defendants.         )

 9   HEADWATER RESEARCH LLC,  )

10        Plaintiff,          )
                              )  CASE NO.:
11   VS.                      )  2:23-cv-00398-JRG-RSP
                              )
12   AT&T SERVICES, INC.,     )
13   AT&T MOBILITY, LLC, AND  )
     AT&T CORP.,              )
14                            )
          Defendants.         )
15

16   ----------------------------------

17   ORAL, REALTIME, VIDEOTAPED DEPOSITION OF

18                  DAVID WISE

19                JANUARY 31, 2025

20   ----------------------------------

21

22   JOB NO.: 570073

23        PAGES: 1 - 77

24   REPORTED BY: ANNETTE PELTIER

25
```

**Page 2**

```
 1        ORAL, REALTIME, VIDEOTAPED DEPOSITION OF

 2   DAVID WISE, produced as a witness at the instance

 3   of the Defendants, and duly sworn, was taken in

 4   the above-styled and numbered cause on

 5   January 31, 2025, from 12:03 p.m. to 1:54 p.m.,

 6   before Annette Peltier, CSR, Texas Certified

 7   Realtime Reporter, in and for the State of Texas,

 8   reported by machine shorthand pursuant to the

 9   Federal Rules of Civil Procedure and the

10   provisions stated on the record or attached

11   hereto.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Page 3**

```
 1            A P P E A R A N C E S

 2   (ALL APPEARING VIA ZOOM VIDEOCONFERENCE)

 3   ON BEHALF OF THE PLAINTIFFS:

 4
             KRIS DAVIS, ESQUIRE
 5           Russ, August & Kabat, LLP
             8080 N. Central Expressway
 6           Dallas, Texas 75206
             310.826.7474
 7

 8   ON BEHALF OF THE DEFENDANTS:

 9           SCOTT HEJNY, ESQUIRE
             McKool Smith
10           303 Colorado Street
             Suite 2100
11           Austin, Texas 78701
             512.692.8700
12

13   ON BEHALF OF THE WITNESS:

14           DAVID KAYS, ESQUIRE
15           Morgan, Franich, Fredkin Siamas &
             Kays LLP
16           333 W. San Carlos Street
             Suite 1050
17           San Jose, CA 95110
             408.288.8288
18

19   ALSO PRESENT:

20           Lawrence Wallace, Videographer
             Charlie McGrath, Video Tech
21

22

23

24

25
```

**Page 4**

```
 1                Index
                               Page
 2
     Appearances...........................   3
 3
     Examination by Mr. Hejny...............   8
 4
     Examination by Mr. Davis...............  71
 5
     Adjournment...........................   73
 6
     Signature Page........................   74
 7
     Court Reporter's Certificate..........   75
 8
                    Exhibits
 9   Number   Description            Page

10   Exhibit 1  Deposition Notice...........  11

11   Exhibit 2  David Wise LinkedIn.........  13

12   Exhibit 3  Raleigh Invention Disclosure,
                Confidentiality & Proprietary
13              Rights Agreement
                (HW397-00094026-31)........  20
14
     Exhibit 4  January 2009 Raleigh and Paul
15              Jacobs E-Mails
                (HW397-00102740-41)........  24
16
     Exhibit 5  2009.01.22 QC-HW Partners NDA
17              (HW397-00102740-41)........  29

18   Exhibit 6  3.4.2009 E-Mail
                (HW397-00051416)...........  34
19
     Exhibit 7  2.25.2009 ItsOn PowerPoint
20              To QC on Best Buy E2E
                (HW397-00018717-31)........  40
21
     Exhibit 8  2009.04.21 re:  ItsOn
22              (HW397-00051418-20)........  44

23   Exhibit 9  2009.05.06 Patent Application
                (HW397-00051421)...........  53
24
     Exhibit 10 2009.05.07 Moving Forward
25              (HW397-00051422)...........  56
```

---

**5**

```
1  Exhibit 11 2009.05.19 Release
                (HW397-00051424-27).........  60
2
   Exhibit 12 June 24, 2009 Qualcomm E-Mail
3              On Release Redlines
                (HW397-00102742)............  66
4
   Exhibit 13 2009.09.03 Qualcomm's
5              Proposal
                (HW397-00051423)............  68
6

7                    * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

---

**6**

1        EXHIBIT TECH:  Thank you to
2  everyone for attending this proceeding remotely,
3  which we anticipate will run smoothly.
4        Please remember to speak slowly
5  and do your best not to talk over one another.
6        Please be aware that we are
7  recording this proceeding for backup purposes.
8        Any off-the-record discussions
9  should be had away from the computer.
10        Please remember to mute your mic
11  for those conversations.
12        Please have your video enabled to
13  help the reporter identify who is speaking.  If
14  you are unable to connect with video and are
15  connecting via phone, please identify yourself
16  each time before speaking.
17        I apologize in advance for any
18  technical-related interruptions.
19        Thank you.
20        THE VIDEOGRAPHER:  All right.
21  Everyone please stand by to be read onto the
22  video record.
23        Here begins media number one in
24  the videotaped deposition of David Wise in the
25  matter of Headwater Research, LLC, versus AT&T

---

**7**

1  Services, Inc., et al, in the United States
2  District Court for the Eastern District of Texas,
3  Marshall Division, Case Number
4  2:23-cv-397-JRG-RSP.
5        Today's date is January 31st,
6  2025.  The time on the video monitor is
7  2:04 [sic] p.m. Central time.
8        The remote videographer today is
9  Lawrence Wallace, representing Planet Depos.
10        All parties of this video
11  deposition are attending remotely.
12        Would counsel please
13  voice-identify themselves and state whom they
14  represent.
15        MR. HEJNY:  Scott Hejny from
16  McKool Smith on behalf of AT&T.
17        MR. DAVIS:  Kris Davis from Russ,
18  August & Kabat on behalf of Headwater Research,
19  LLC.
20        MR. KAYS:  David Kays on behalf of
21  the witness, David Wise.
22        THE VIDEOGRAPHER:  All right.  The
23  court reporter today is Annette Peltier,
24  representing Planet Depos.
25        The witness will now be sworn.

---

**8**

1              DAVID WISE,
2  Having been first duly sworn, testified upon his
3  oath as follows:
4              EXAMINATION
5  BY MR. HEJNY:
6    Q.  Good morning, Mr. Wise.
7    **A.  Good morning.**
8    Q.  So you -- you mentioned before we started
9  that you'd been deposed before, correct?
10    **A.  Yes.**
11    Q.  Okay.  So I'll walk through some
12  guidelines here in a minute, but obviously this
13  is your first remote depo.
14        Are you alone in the room where you're
15  being deposed now?
16    **A.  Yes.**
17    Q.  Do you have any documents in front of you
18  or pulled up on your computer screen?
19    **A.  No.**
20    Q.  Great.
21        How many times have you been deposed
22  before?
23    **A.  Three.**
24    Q.  When was the last time you were deposed --
25  I guess the most recent deposition?

---

33

1  years ago, so I don't, sorry.
2      Q.  Understood.
3          Do you recall any conversations
4  with -- with Dr. Raleigh or Headwater following
5  the entry of this nondisclosure agreement
6  regarding the potential partnership between
7  Headwater and Qualcomm?
8      A.  No.
9      Q.  Do you recall any meetings with Headwater
10 or Dr. Raleigh?
11     A.  I don't recall any, no.
12     Q.  Do you recall any discussions as to
13 whether Dr. Raleigh had filed or intended to file
14 a patent application in January 2009 that would
15 impact the relationship between Headwater and
16 Qualcomm?
17         MR. KAYS:  And just point of
18 clarification, Counsel, your -- discussions with
19 Mr. Raleigh?  Is that -- is that the intent of
20 the question?
21         MR. HEJNY:  Yes.  Do you recall
22 any --
23         MR. KAYS:  Okay.
24         MR. HEJNY:  I'll restate the
25 question.

---

34

1          MR. KAYS:  Thank you.
2      Q.  (BY MR. HEJNY)  Do you recall any
3  conversations with Headwater or Dr. Raleigh
4  regarding the filing of a patent application in
5  January of 2009 that may have had some bearing on
6  the relationship between Headwater, Dr. Raleigh,
7  and Qualcomm?
8      A.  I don't recall.
9      Q.  Do you recall a potential intellectual
10 property ownership dispute between Dr. Raleigh
11 and Qualcomm?
12     A.  No.
13     Q.  Do you know anything at all about patent
14 applications that were filed by Dr. Raleigh?
15     A.  No.
16     Q.  Okay.  Let's move on to Exhibit 6, please.
17         (Whereupon Exhibit Number 6 was
18          marked for identification.)
19     Q.  (BY MR. HEJNY)  Okay.  Exhibit 6 is a
20 March 4, 2009, e-mail from Gina Lombardi to Greg
21 Raleigh and Jim Straight and you are copied in
22 that e-mail.
23         Do you see that, Mr. Wise?
24     A.  Yes.
25         MR. HEJNY:  And for the record,

---

35

1  the Bates number on this document is
2  HW397-0051416.
3      Q.  (BY MR. HEJNY)  And just for your
4  edification, mimoguy@mac.com, that e-mail address
5  is the e-mail address for Greg Raleigh.  Okay?
6      A.  Okay.
7      Q.  Who was Gina Lombardi?
8      A.  She was a senior executive at the company,
9  at Qualcomm, at the time.
10     Q.  And what was her role at the company?
11     A.  I honestly don't recall.
12     Q.  Do you recall why you and Ms. Lombardi
13 were teamed to work on this discussion with
14 Dr. Raleigh and Jim Straight?
15     A.  Yeah.  Let me just read this real quick.
16     Q.  Yeah, please.  Any -- and just for the
17 record, Mr. Wise, any time I put a document in
18 front of you, you know, take your time and read
19 through it; and I should have instructed you on
20 that earlier.  So please take a look, read
21 through the e-mail, and then we can ask
22 questions.
23     A.  Okay.  I'm sorry, can you repeat the
24 question?
25     Q.  Sure.  Let me step back and ask you a

---

36

1  different question.
2          The subject says, "ItsOn Next Steps."
3          Are you familiar with an entity or a
4  company called "ItsOn"?
5      A.  I recall the name, yes.
6      Q.  Were you aware that Dr. Raleigh formed
7  ItsOn before he left Qualcomm in September
8  of 2008?
9      A.  No.
10     Q.  Are you -- were you aware that ItsOn was a
11 company that was owned by Dr. Raleigh?
12     A.  Yes.
13     Q.  And my first question was, do you recall
14 why you and Ms. Lombardi were teamed together to
15 work on this discussion with Dr. Raleigh and
16 Mr. Straight?
17     A.  Only that I assume it's -- based on this
18 e-mail, it's a follow-up to the -- you know,
19 evaluating whether there was anything to be --
20 (garbled audio).
21         THE COURT REPORTER:  I'm sorry,
22 sir.  Anything to be what?
23         THE WITNESS:  Anything to be done
24 evaluating a partnership with the company, with
25 ItsOn.

---

---

**45**

1  last page.  There.
2       Okay.  So this is an April 21st, 2009,
3  e-mail from Gina Lombardi to Jim Straight and
4  Greg Raleigh, and you see that you're -- you are
5  copied on this e-mail, as well, correct?
6  **A.  Yes.  Let me -- let me just read it.**
7  Q.  Yeah, sure.
8  **A.  Okay.**
9  Q.  Okay.  Can you see that the -- the e-mail,
10 which is -- has the subject of "ItsOn," in the
11 body of the e-mail, there's something called a
12 "Seed Investment."
13      Do you see that?
14 **A.  Yes.**
15 Q.  And was this an offer by Qualcomm to
16 invest in ItsOn?
17 **A.  Looks to be, yes.**
18 Q.  Do you recall this e-mail or this
19 potential investment by Qualcomm in ItsOn?
20 **A.  Beyond the e-mail, no.**
21 Q.  But in the e-mail, it looks like Qualcomm
22 was willing to invest $2 million plus a license
23 to the relevant Qualcomm IP for a 20 percent
24 stake.
25      Do you see that?

**46**

1  **A.  Yes.**
2  Q.  And presumably that's a 20 percent stake
3  in ItsOn, correct?
4  **A.  I believe so.**
5  Q.  And what is a "1X liquidation preference"?
6  **A.  It's a -- a term associated with an**
7  **investment in a private company.**
8  Q.  And can you explain it to me, how it would
9  relate to this potential agreement with ItsOn?
10 **A.  It would be some sort of protection over**
11 **the two-million-dollar investment in a**
12 **liquidation.**
13 Q.  And what is a "full ratchet
14 anti-dilution"?
15 **A.  Another term in venture investments,**
16 **private companies, around protecting the value of**
17 **our investment going forward as new money comes**
18 **in.**
19 Q.  So it would protect Qualcomm's 20 percent
20 stake?
21 **A.  Right.**
22 Q.  And prevent it from being diluted?
23 **A.  Yes.**
24 Q.  And it looks like in this seed investment,
25 Qualcomm would be committing to support

**47**

1  commercialization of ItsOn software on Qualcomm
2  chips?
3  **A.  Yes.**
4  Q.  And the last item in that list is
5  "resolution of IP ownership issue."
6       Do you see that?
7  **A.  Yes.**
8  Q.  And I asked you before if you recalled a
9  dispute between Dr. Raleigh and Qualcomm
10 regarding an IP ownership issue.
11      Does this refresh your recollection?
12 **A.  No.**
13 Q.  So as you sit here today, you have no
14 recollection whatsoever of the ownership interest
15 dispute between Dr. Raleigh and Qualcomm?
16 **A.  Honestly, I don't.**
17      MR. HEJNY:  Let's move up to the
18 next e-mail in the chain, please.
19 Q.  (BY MR. HEJNY)  And this e-mail begins at
20 the bottom of Bates 418.
21      And so this is an e-mail from Jim
22 Straight, who is at Headwater, to Gina Lombardi
23 and Greg Raleigh and you are copied.
24      Do you see that?
25 **A.  Yes.**

**48**

1  Q.  And it looks like in this portion of -- of
2  the process, there is a due diligence going on.
3       Do you see that?
4  **A.  Can I just read the e-mail?**
5  Q.  Yeah, please.  Please take your time and
6  read the e-mail.
7       THE WITNESS:  And can you just
8  scroll up a little bit on it, so we can... yeah,
9  that's good.  Thanks.
10      Okay.  Can you scroll back up a
11 little bit now?  Okay.
12 Q.  (BY MR. HEJNY)  So in this e-mail,
13 Mr. Straight from Headwater identifies
14 diligence -- a diligence items action list.
15      Do you see that?
16 **A.  Yes.**
17 Q.  And do you recall any meetings with
18 Headwater or Dr. Raleigh in which the seed
19 investment from the first e-mail was discussed in
20 detail?
21 **A.  I don't.**
22 Q.  And item (1) on the diligence items action
23 list states that, "This week Qualcomm will
24 transmit to ItsOn/HPI the potential prior art
25 search results that Qualcomm believes to be

49

1  relevant."
2        You see that?
3  **A. Yes.**
4  Q. Do you know what "prior art" is, Mr. Wise?
5  **A. Not [sic] familiar with the term.**
6  Q. So you don't understand the term "prior
7  art" from a -- from a patent or an IP standpoint?
8  **A. No. I said I'm familiar with the term.**
9  Q. Oh, I'm sorry. I misunderstood you.
10       Do you know whether Qualcomm ever sent
11 ItsOn or Headwaters the results of any prior art
12 search that was conducted as part of this
13 process?
14 **A. Not beyond what we -- what's said here in**
15 **the e-mail.**
16       MR. HEJNY: And let's scroll down
17 to item (4). Maybe scroll up to item four,
18 sorry. It's on the next page.
19 Q. (BY MR. HEJNY) Item (4) says, the "Next
20 week, Qualcomm and ItsOn/HPI will have a
21 face-to-face meeting same day or next morning
22 immediately after meetings listed in diligence
23 items (2) and (3) for Qualcomm to disclose to
24 ItsOn/HPI the facts, documents, and any other
25 information that Qualcomm possesses that Qualcomm

50

1  believes support the Qualcomm claim that it may
2  own some" or -- "some portion of ItsOn's IP."
3        Do you see that?
4  **A. Yes.**
5  Q. Do you recall discussions with Dr. Raleigh
6  or Ms. Lombardi regarding this ownership issue,
7  Mr. Wise?
8  **A. I don't.**
9  Q. Do you recall the facts, documents, and
10 any other information that Qualcomm possessed
11 suggesting that it may own some portion of
12 ItsOn's IP?
13 **A. I don't recall, beyond this e-mail.**
14 Q. Do you know if this meeting ever took
15 place, this face-to-face meeting?
16 **A. I don't know. No reason to assume it**
17 **didn't, but I don't know.**
18 Q. Do you recall, regardless of whether this
19 meeting took place, any -- any other evidence or
20 information that Qualcomm had that led it to
21 believe that it owned some portion of ItsOn's IP?
22       MR. KAYS: Again, I'll advise the
23 witness that to the extent such evidence or
24 knowledge was communicated to Headwater, that's
25 fair game, but as -- as framed, it -- the

51

1  question potentially invades the attorney/client
2  privilege, so...
3  **A. I don't recall anything.**
4  Q. (BY MR. HEJNY) Do you recall when
5  Qualcomm first informed Dr. Raleigh that it
6  believed it owned some portion of ItsOn's IP?
7  **A. No.**
8  Q. Do you understand that Qualcomm
9  consistently maintained that it had an ownership
10 interest in ItsOn's IP?
11       MR. DAVIS: Objection, form.
12 **A. I don't recall beyond what we're seeing in**
13 **some of these e-mails.**
14 Q. (BY MR. HEJNY) Do you recall any
15 discussions internally at Qualcomm as to when
16 Dr. Raleigh first invented the IP in question?
17 **A. No.**
18 Q. And going to the very first e-mail on the
19 first page --
20 **A. Can you hang on one second?**
21 Q. Yes, please. Take your time.
22 **A. I'm sorry, can you repeat the question?**
23       MR. HEJNY: Can you read back the
24 question, please?
25       (Discussion with the court

52

1  reporter, clarifying read-back.)
2        MR. KAYS: I don't think you'd
3  asked a question.
4        THE COURT REPORTER: Right.
5        MR. HEJNY: Let's just go back --
6  I just want to make sure.
7        THE WITNESS: Okay.
8        MR. HEJNY: Let's go back to --
9        THE WITNESS: I'm sorry about
10 that.
11       MR. HEJNY: I just want to make
12 sure that I didn't leave something hanging.
13       (Whereupon the requested testimony
14       was read back as follows:
15       "Do you recall any discussions
16       internally at Qualcomm as to when
17       Dr. Raleigh first invented the IP
18       in question?
19 **A. No.")**
20 Q. (BY MR. HEJNY) And going to the very
21 first e-mail on the first page of this string...
22       MR. HEJNY: Can you scroll up just
23 a little bit? There we go.
24 Q. (BY MR. HEJNY) And so this is the first
25 e-mail in the string, April 24th, 2009, from Gina