# EXHIBIT C

Case 2:23-cv-00641-JRG-RSP   Document 198-1   Filed 08/11/25   Page 1 of 20 PageID #: 16650

```
 1  for your attention.
 2         Thank you, Your Honor.
 3             THE COURT:  All right.  Mr. McKeon, you may present
 4  the opening statement for the Defendants.  Would you like a
 5  warning on your time?
 6             MR. McKEON:  Yes, Your Honor.  10 and 3, please.
 7             THE COURT:  All right.  I'll give you those
 8  warnings.
 9         You may proceed with Defendants' opening statement when
10  you're ready.
11             MR. McKEON:  Thank you, Your Honor.
12         Well, good afternoon, ladies and gentlemen of the jury.
13  Once again, my name is Mike McKeon, and I'm privileged to
14  represent Samsung in this case.  You just heard a lot from
15  Headwater's counsel.  I'm going to respond to all of that.
16         But, first, I want to thank each and every one of you for
17  your service on this jury.  We certainly know there's a lot of
18  other things you could be doing, other places to be, and we
19  also know that it's a personal sacrifice for you to be here
20  and take a week out of your life and be with us here in this
21  courtroom.
22         So on behalf of Samsung and my team here, I want to thank
23  you, and I want you to know we're extremely grateful for your
24  decision to do this.
25         Now, I want to say something at the outset.  The
```

02:29 at line 12
02:30 at line 20

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
|       | 1  | technology claimed by Headwater in this patent is not used in                |
| 02:30 | 2  | Samsung's phones.  What the evidence is going to show and what               |
|       | 3  | you know from your own personal experience, in today's                       |
|       | 4  | smartphones like the phones accused in this case, consumers                  |
|       | 5  | have access to a wide range of applications.  Some for                       |
|       | 6  | education, some for entertainment, some for tools to help you                |
|       | 7  | in your everyday life.                                                       |
|       | 8  | You might have your favorite apps that you use.  I like                      |
| 02:31 | 9  | Gmail.  It helps with navigation.  Music streaming is a very,                |
|       | 10 | very popular application.                                                    |
|       | 11 | And what the evidence is going to show, ladies and                           |
|       | 12 | gentlemen, is that the user experience using the phone and                   |
|       | 13 | using the applications is very, very important to building a                 |
|       | 14 | successful product.  What the evidence will show is that the                 |
| 02:31 | 15 | technology in this Headwater patent is unworkable in Samsung's               |
|       | 16 | phones.                                                                      |
|       | 17 | Now, Headwater's counsel mentioned the company called                        |
|       | 18 | ItsOn, which actually was a company also started by Doctor                   |
|       | 19 | Raleigh.  Ten years ago ItsOn supplied software, billing                     |
|       | 20 | software to Sprint for use in phones in Sprint's network.  And               |
|       | 21 | in fact, ladies and gentlemen, that billing software that                    |
| 02:32 | 22 | counsel already mentioned actually practiced and used the                    |
|       | 23 | technology of this patent.                                                   |
|       | 24 | And what the evidence will show, ladies and gentlemen, in                    |
|       | 25 | this trial, that ItsOn software that used this patent was an                 |

|       |    |                                                                           |
|-------|----|---------------------------------------------------------------------------|
|       | 1  | utter failure.  In fact, the ItsOn software that used the '976            |
|       | 2  | Patent technology caused applications on the phone to crash,              |
| 02:32 | 3  | loss of texts, loss of data, loss of voice.  Indeed, what the             |
|       | 4  | evidence will show is that the ItsOn software would completely            |
|       | 5  | lock up your phone, making it like a brick.                               |
|       | 6  | You will hear evidence in this courtroom that the                         |
|       | 7  | customers that used phones with the ItsOn software, their                 |
|       | 8  | experience was horrendous.  And what the evidence will show,              |
|       | 9  | ladies and gentlemen, is that Samsung's smartphones use a very            |
| 02:33 | 10 | different technology than this patent.  There is no                       |
|       | 11 | infringement of the '976 Patent.                                          |
|       | 12 | Now, with that, I want to briefly introduce Samsung.                      |
|       | 13 | Samsung actually started in the 1930s as a trading company                |
|       | 14 | selling fruits and vegetables, relatively humble beginnings               |
|       | 15 | for sure.  But as the company grew and expanded in the 1960s,             |
| 02:33 | 16 | it began to manufacture and sell black-and-white televisions.             |
|       | 17 | Samsung Electronics was born.                                             |
|       | 18 | Today, of course, Samsung is one of the world's most                      |
|       | 19 | well-known consumer electronics companies.  Samsung's designs,            |
|       | 20 | manufactures, and sells a wide range of consumer electronics              |
|       | 21 | products.  You see some of them on the slide here--TVs,                   |
|       | 22 | tablets, computers, watches, and the vacuum cleaner apparently            |
|       | 23 | is a big hit.                                                             |
| 02:34 | 24 | But, of course, this case is about mobile phones.                         |
|       | 25 | Samsung has been a worldwide leader in the development of                 |

1  smartphones.  You see examples here on the slide.  And one
2  thing Samsung's well-known for is providing phones at
3  different price points.  You see here on the slide, the left
4  is the A series all the way down to the Galaxy series on the
5  right.  Samsung makes something for everybody.

02:34  6  Now, while some phones will have more bells and whistles,
7  all provide for powerful capabilities and innovative designs.
8  Samsung is based in Seoul, which is in South Korea, and
9  has operations throughout the United States.  As Ms. Smith
10  already communicated to you, Samsung has over 20,000 employees
11  here in the United States, including 6,000 employees right
12  here in the state of Texas in six different locations.  And as
02:35  13  you heard, Samsung right now as we speak is building a factory
14  in Taylor, Texas.
15  Samsung is an innovator.  You see that with its
16  incredible innovative products, but you also see that with the
17  fact that Samsung has over 145,000 U.S. patents that have been
18  issued to Samsung for its technologies.
19  Now, you've already heard from Ms. Rachel Roberts, who's
02:35  20  sitting here at counsel table.  She is Samsung's corporate
21  representative in this trial, and she's going to provide
22  testimony later in the case about Samsung and Samsung's
23  innovative products.
24  Now, as you heard, the Plaintiff in this case is
25  Headwater Research, and that company was founded by Dr. Greg

|    |    |    |
|----|----|----|
|       | 1  | Raleigh.  The company has two employees with one occupying an |
|       | 2  | office in Tyler, Texas, and the only other employee is Doctor |
| 02:36 | 3  | Raleigh.  Headwater does not make any products; it just owns |
|       | 4  | patents. |
|       | 5  | There is only one company in the entire world that has |
|       | 6  | ever agreed to license this patent, and that company is the |
|       | 7  | company that Doctor Raleigh started, ItsOn.  ItsOn made and |
|       | 8  | provided billing software and provided it to Sprint as I |
| 02:36 | 9  | mentioned.  And as I mentioned also, the billing software that |
|       | 10 | it provided actually used the '976 Patent.  ItsOn is the only |
|       | 11 | company in the world that has licensed the '976 Patent and |
|       | 12 | also has made software using the '976 Patent.  And what the |
|       | 13 | evidence will show is that the '976 Patented ItsOn software |
|       | 14 | was plagued with problems. |
|       | 15 | You see here, ladies and gentlemen, some of the history |
| 02:37 | 16 | between Sprint, ItsOn, and Samsung.  And what you're going to |
|       | 17 | hear is that Sprint wanted to integrate billing software into |
|       | 18 | phones on its network.  So in 2013 Sprint entered into an |
|       | 19 | agreement with ItsOn.  And in light of that agreement Sprint |
|       | 20 | instructed all of its suppliers, including Samsung, to install |
|       | 21 | this billing software on phones supplied to Sprint.  If you |
| 02:37 | 22 | wanted to sell to Sprint, you had to put the software on |
|       | 23 | there.  So Samsung did that.  And the process began in 2013. |
|       | 24 | Very significant issues arose soon after that. |
|       | 25 | What you see here, ladies and gentlemen, is an example of |

02:38

1  a Sprint presentation that was given to ItsOn in 2014.  This
2  is one year into the relationship.  And the presentation makes
3  clear that there were significant problems with the ItsOn
4  software installed on the phones--battery drain, constant
5  reboots, blocking voice, text, data, message application
6  crash.  Bad things were happening on the phones in Sprint
7  network that were using the '976 ItsOn software.
8      But it wasn't just Sprint and Samsung that recognized the
9  problems; it was also ItsOn.  What you see here, ladies and
10 gentlemen, is an internal email that we got in this case.  We
11 don't know about this email because it was internal.  We got
12 it when they sued us and we got discovery.  And what Doctor
13 Raleigh was telling his colleagues, he was acknowledging that
14 there were big problems with the software.  Bug is 100 percent
15 fatal, the device completely locks up, the phone is bricked.
16 These are big problems, and bad things were happening on the
17 phones in the Sprint network using the patented technology.
18     The evidence will show that Samsung did all it could to
19 make a go with it with ItsOn, but bad things were happening
20 because of the '976 ItsOn patented software.  Thousands of
21 customers were impacted.  Sprint just couldn't continue to use
22 its customers as guinea pigs.  After two years of giving them
23 an opportunity, Sprint and Samsung had to move on.  Sprint
24 terminated its agreement with ItsOn in 2015, and the parties
25 moved on.

|        |    |                                                                                |
|--------|----|--------------------------------------------------------------------------------|
|        | 1  | We're going to present in this trial, ladies and                               |
|        | 2  | gentlemen, two witnesses that are going to give you the                        |
|        | 3  | background and story with ItsOn.  Mr. Daniel Durig is a                        |
|        | 4  | Samsung employee who worked during this time period with                       |
| 02:40  | 5  | ItsOn, and Ms. Hannah Sifuentes is a former Sprint employee,                   |
|        | 6  | now a current T-Mobile employee, and she's going to come to                    |
|        | 7  | trial and explain to you the things we're talking about here                   |
|        | 8  | now, the problems they faced with the ItsOn software.                          |
|        | 9  | Now I'm going to turn to the Samsung phones that                               |
|        | 10 | Headwater says infringes.  The features that they say infringe                 |
|        | 11 | are actually implemented in the Android operating system                       |
|        | 12 | installed on Samsung's phones.                                                 |
| 02:40  | 13 | Now, what is the Android operating system?  You may have                       |
|        | 14 | heard of it.  The operating system in general is software that                 |
|        | 15 | manages all applications and programs that are on the phone.                   |
|        | 16 | The Android operating system was not developed at Samsung but                  |
|        | 17 | rather was developed independently by Google.  And the Android                 |
|        | 18 | operating system is one of the most popular operating systems                  |
|        | 19 | in the world, and you're going to hear more of the details                     |
| 02:41  | 20 | about Android in this trial.                                                   |
|        | 21 | Now, what you see here are the specific features that                          |
|        | 22 | Headwater says infringe.  On the left, you see the features                    |
|        | 23 | developed by Google contained within the operating system                      |
|        | 24 | Android, and on the right you see the feature -- the one                       |
|        | 25 | feature developed by Samsung called roaming reduction that                     |

02:41

1  Headwater also accuses of infringement.  This feature was only
2  used by some phones and only in the Sprint network, not any
3  other carriers, and it was discontinued in 2020.  You're going
4  to hear the specifics about these features in this trial.
5      Now, what the evidence will show, ladies and gentlemen,
6  is that there is no infringement of this patent.  In fact, the
7  Samsung phones work in a very different way.
8      Now, as the Court instructed you after lunch, the issue

02:42

9  of infringement is an issue that you're going to have to
10  decide in this case, and the Court will instruct you on the
11  law.  But, simply, what is important is that in order for
12  there to be infringement of a patent claim, every single
13  requirement, every single element of the claim must be found
14  in the accused product.  If not, there's no infringement.
15      So let's walk through some of the analysis that you're
16  going to have to do in this case, and we'll do it with an

02:42

17  example of a simple claim to a stool.  On the left we see that
18  claim--made of wood, includes a seat, includes four legs, and
19  it's square, the seat.  And the question is, well, does a
20  stool on the right infringe?  Well, let's walk through that.
21  Made of wood, got that.  Includes a seat, got that.  Includes
22  four legs, you got that.
23      What about the last element--a round seat?  Not there.

02:43

24  No infringement.  What the law tells you, ladies and
25  gentlemen, close is not enough.  Being similar is not enough.

|  |  |
|---|---|
|  | 1    Every single requirement of the claim must be in the product |
|  | 2    or there's no infringement.  And this is the analysis that |
|  | 3    you're going to be asked to do in this case with respect to |
|  | 4    the '976 Patent. |
|  | 5         Now, counsel walked you through the claim, but I'm going |
|  | 6    to focus on two of the elements or requirements of the claim. |
|  | 7    And on this slide, you see the classify element.  And what |
| 02:44 | 8    does that do?  Well, that requires -- let's walk through the |
|  | 9    language together.  It says classify.  So you got to have the |
|  | 10   processor classify whether or not the first in application, |
|  | 11   when running, is interacting in the device display |
|  | 12   foreground--mobile phone, whether there's interaction in the |
| 02:44 | 13   device display foreground.  Display foreground.  Now, the |
|  | 14   display foreground is a very important part -- element of the |
|  | 15   claim that I didn't hear mentioned much by counsel. |
|  | 16        Let's look another element of the claim you're going to |
|  | 17   hear a lot about in this trial.  It's the policy element of |
|  | 18   the claim.  And what does that say?  Well, it says that you |
|  | 19   have this policy such that this internet activity is |
|  | 20   disallowed when?  When is it disallowed?  It's disallowed when |
| 02:45 | 21   the application is not interacting, when there is no |
|  | 22   interacting in the display, the device display foreground, |
|  | 23   internet's gone, no interaction; no interaction with the |
|  | 24   device display, no internet.  No interaction in the display, |
|  | 25   no internet.  That's the policy of this patent, ladies and |

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

1  gentlemen.

2  So let's look at the accused product and see how that
3  applies to the accused product. Well, we've got here at the
4  home screen, and you see this Spotify app and I want to play
5  music. So I hit Spotify app on my home screen and I bring
6  that up. Now I'm in the foreground. I'm at the top of the
7  screen. So I hit my play list or my song, and you can see
8  here the song is playing.

9  But if I'm listening to my music and I want to check
10 emails mail, what do I do? I go back to the home screen, and
11 you see that here, and I check emails. So what just happened?
12 What happened was my Spotify app now is off the top screen. I
13 don't see it. You don't see it anymore. And you have the top
14 of the screen is the email, Gmail account.

15 But what is happening? Well, that Spotify is still
16 playing your music, it's still grinding in the background,
17 it's still accessing the network because if it wasn't
18 accessing the network, you wouldn't have any music. But in
19 the accused products, there is no policy that cuts off or
20 blocks your music based on interaction in the device display
21 foreground. Spotify is off the top. You're not interacting
22 in the device display foreground, but you got network.

23 Ladies and gentlemen, what the evidence is going to show
24 in this case is that the Headwater patent requires an
25 extremely severe policy for cutting off network access for

|  |  |  |
|---|---|---|
|  | 1 | applications.  If there's no interaction in the device |
|  | 2 | display, then there's no internet.  The music stops. |
| 02:47 | 3 | Now, this certainly may get you better battery savings |
|  | 4 | because you're not going to be grinding in the background, but |
|  | 5 | it gives you a bad user experience.  That's what the evidence |
|  | 6 | is going to show.  And that is why Samsung's phones simply |
|  | 7 | don't work this way. |
|  | 8 | You see on the slide here, ladies and gentlemen, on the |
|  | 9 | left is the patented approach--no interaction in the display, |
|  | 10 | no internet.  And on the right, Samsung's approach, which |
| 02:47 | 11 | allows access to the internet regardless of whether or not the |
|  | 12 | application is interacting in the device display foreground. |
|  | 13 | Ladies and gentlemen, we're going to present Dr. Dan |
|  | 14 | Schonfeld, who has looked at all the evidence, the software |
|  | 15 | code and the deposition testimony, the documentation, and he |
|  | 16 | concluded that there is no infringement of the Samsung |
| 02:48 | 17 | products in this case. |
|  | 18 | You're also going to hear the testimony from the other |
|  | 19 | inventors other than Doctor Raleigh who admit in their |
|  | 20 | deposition, they admitted that they didn't invent Google |
|  | 21 | operating system, they didn't invent anything in that.  And |
|  | 22 | you are going to hear this deposition testimony played in this |
|  | 23 | case. |
|  | 24 | So the conclusion there's no infringement, ladies and |
|  | 25 | gentlemen, is not surprising in light of this testimony. |

                1       MR. McKEON: Yes, Your Honor, if I could get 10
                2  minutes and three minutes.
                3       THE COURT: I'll warn you when you have 10 minutes
                4  remaining and then three minutes remaining.
        09:50   5       MR. McKEON: That would be great, Your Honor. Thank
                6  you.
                7       THE COURT: You may proceed with Defendants' closing
                8  argument.
                9       MR. McKEON: Good morning, ladies and gentlemen.
               10  You made it. You got through all the evidence. We greatly
               11  appreciate the hard work this week. We know it wasn't easy.
               12  There was a lot coming at you, long days and a lot of hours of
        09:50  13  careful attention. We noticed that, and we really, really
               14  appreciate your dedication to this really, really important
               15  process.
               16       Now, in a little while you're going to go back in that
               17  room and you're going to deliberate to render a verdict in
               18  this case. And I have one thing I want to ask you, one
               19  request--when you do that, don't check your common sense at
               20  that door.
               21       The Judge has already instructed you you should use your
        09:51  22  common sense as you deliberate. Use your common sense as you
               23  review the evidence and what you heard and what you saw in
               24  this courtroom. Use your common sense to consider the
               25  evidence. And importantly, ladies and gentlemen, use your

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
|       | 1  | common sense when you judge the credibility of the witnesses                 |
|       | 2  | and indeed the parties.  Use your common sense from what                     |
| 09:51 | 3  | Headwater is telling you here in this courtroom and what is                  |
|       | 4  | happening in the real world.                                                 |
|       | 5  | In this courtroom, ladies and gentlemen, Dr. Raleigh says                    |
|       | 6  | his '976 patented ItsOn software had minor bugs and                          |
|       | 7  | prototypes.  In the real world, thousands of customers were                  |
|       | 8  | returning their bricked phones.  In this courtroom, Dr. Wesel                |
|       | 9  | said the Google source code means one thing.  In the real                    |
| 09:52 | 10 | world, the Google engineer who wrote the code says Dr. Wesel                 |
|       | 11 | is dead wrong.  In this courtroom, Dr. Wesel says average                    |
|       | 12 | phone users tap their phones all day to keep the screens on.                 |
|       | 13 | In the real world, no one does this.                                         |
|       | 14 | In this courtroom, Headwater said its patent's worth $2                      |
| 09:52 | 15 | billion.  In the real world, Headwater tried to sell this                    |
|       | 16 | patent, tried to sell this patent and hundreds of others and                 |
|       | 17 | the entire company for $60 million, and still no one paid.  In               |
|       | 18 | this courtroom, Headwater said its patents were worth $2                     |
|       | 19 | billion.  But in the real world, ItsOn, the only company that                |
|       | 20 | ever uses the patented technology in a product, went bankrupt.               |
| 09:53 | 21 | When you use your common sense and you consider the                          |
|       | 22 | real-world evidence, ladies and gentlemen, we submit there's                 |
|       | 23 | only one conclusion--that Samsung does not infringe and this                 |
|       | 24 | patent is not valid.                                                         |
|       | 25 | Now, with that, I want to go through some of the evidence                    |

|       |    |                                                                   |
|-------|----|-------------------------------------------------------------------|
|       | 1  | which is my job this morning.                                     |
|       | 2  | Now, my colleague raised the issue over why are we                |
|       | 3  | talking about ItsOn and why are we talking about this?  Ladies    |
|       | 4  | and gentlemen, it's undisputed, it's undisputed, that ItsOn       |
| 09:53 | 5  | software as used in the phone practiced the patent.  During      |
|       | 6  | opening I told you in the first minute of my opening, that        |
|       | 7  | this technology was unworkable in Samsung's phones.               |
|       | 8  | Ladies and gentlemen, we have evidence, hard evidence             |
|       | 9  | that that, in fact, is true, because this technology was in       |
|       | 10 | Samsung's phone in the ItsOn software, but it was an utter        |
|       | 11 | disaster.  There were big, huge problems.  And you recall the     |
|       | 12 | testimony in this case regarding this.                            |
| 09:54 | 13 | You recall that in 2013 Sprint and ItsOn entered the              |
|       | 14 | agreement to have the software loaded on Samsung's phones and     |
|       | 15 | other phones in the Sprint network.  And you saw the evidence,    |
|       | 16 | ladies and gentlemen--battery drain, constant reboots, block      |
|       | 17 | of voice text and data.  This is the patented technology.         |
|       | 18 | Why is it relevant?  Because we're talking about the              |
|       | 19 | patented technology.  And we know how it really works in the      |
|       | 20 | phones--battery drain.  The patent purports to save battery       |
| 09:54 | 21 | drain, but we know in the real phones it actually draws down      |
|       | 22 | the battery.  That's what we know from the evidence.              |
|       | 23 | You saw Mrs. Hannah Sifuentes, the former Sprint                  |
|       | 24 | employee.  She came here and testified and looked you in the      |
|       | 25 | eye, and she told you about the problems.  She said the word      |

1  ticking time bomb.  This patented software that was on the
2  Samsung phones was a ticking time bomb.  That's what she told
3  you.
4      And here you see the returns, thousands, hundreds of
09:55  5  thousands of customers were returning and it was going up, up,
6  up, returning because of the patented software.  They claim --
7  they claim this is a huge innovation and they want $2 billion
8  for it.  But we know when it's actually used in phones, we
9  know what it does and we know the problems it creates.
10     And then we know the internal -- at the time the internal
11 emails from Dr. Raleigh.  Even he knew what the problems
09:55  12 were--fatal bug, a hundred percent fatal; it's a new bug, a
13 hundred percent fatal, completely locks up the phone.  The
14 phones completely crashed, the phone is bricked.  These are
15 his words, ladies and gentlemen, his words.  His evaluation of
16 his own technology that was actually in the phones.
17     Of course this is relevant.  Of course this is pertinent
18 when you're trying to value the technology and when you're
19 trying to figure out whether this is actually in Samsung's
09:56  20 phones today, now, in the accused products, this type of
21 technology.
22     Dr. Raleigh told you, well, it was just bugs and
23 prototypes.  Ms. Sifuentes, third party, came in this
24 courtroom, took her time out to come and tell you the story
25 about that--that the problems were happening in actual

|  |  |  |
|---|---|---|
|  | 1 | customer products in the network, not prototypes. |
|  | 2 | Finally, in 2015, you heard it came to a head.  Problems |
| 09:56 | 3 | were -- was too long, too great; the customers were being used |
|  | 4 | as guinea pigs, and they couldn't take it anymore.  Mrs. |
|  | 5 | Sifuentes told you the ticking time bomb, the guinea pigs |
|  | 6 | couldn't be -- customers couldn't be used as guinea pigs any |
|  | 7 | longer to stay a viable business.  It was a game of |
|  | 8 | whack-a-mole.  These are her words, ladies and gentlemen, her |
|  | 9 | evaluation of the technology. |
|  | 10 | Now, my colleague on the other side says, well, notice is |
| 09:57 | 11 | not relevant.  Ladies and gentlemen, in order for there to be |
|  | 12 | infringement, notice is not relevant.  There is no dispute |
|  | 13 | about that.  There is no dispute about that in this case. |
|  | 14 | But, ladies and gentlemen, what about the real world? |
|  | 15 | What about the real world?  When the relationship broke down, |
|  | 16 | it was seven years went by.  Samsung was selling phones, |
|  | 17 | selling phones with the Android on it, Android software on it |
|  | 18 | with the accused products.  If this patent was so valuable and |
| 09:58 | 19 | so great as they claim now in this courtroom, ladies and |
|  | 20 | gentlemen, if it was so great, why didn't they pick the phone |
|  | 21 | up and call?  Why did they wait that long, seven years as |
|  | 22 | these sales continued? |
|  | 23 | If someone was trespassing on your property and you |
|  | 24 | noticed, would you just wait and then sue them?  Was |
|  | 25 | that -- does that make sense?  Is that common sense to you? |

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

```
09:58      1    No, ladies and gentlemen, it's not.  It's not common sense.
           2         In fact, ladies and gentlemen, we believe what the
           3    evidence shows is that what really was going on, Headwater
           4    never believed Samsung was using this patent.  It never
           5    believed that, and this lawsuit is an attempt to get money for
           6    a patent no one wanted.  That's why the fact that they didn't
           7    call up Samsung for seven years, that's why it's
           8    relevant--because it shows you what they really believe,
           9    ladies and gentlemen.  It is relevant for your consideration.
09:58     10    Don't check your common sense at the door.
          11         Now I want to turn to the important issue of
          12    infringement, and this is a very important issue in this case
          13    that you're going to be asked to decide.
          14         Now, before this trial started, we got to talk to Dr.
          15    Raleigh in deposition, and you recall he was on that stand and
          16    he told you about his great invention and what he came up with
          17    and it was groundbreaking.  That's what he told you.
          18         But before this trial, we deposed him, and this is what
          19    he said.  This is what he said, ladies and gentlemen.  You got
09:59     20    to hear this in this trial:  Can you explain for me a single
          21    concept that you came up with in the asserted patent?
          22         I'm not sure.
          23         Did you come up with foreground versus background?
          24         Ladies and gentlemen, you've been hearing about this all
          25    week, foreground and background.  And he was asked and under
```

```
            1    oath in deposition, did you come up with this?
            2         I'm not even sure what that is.  I can't really say.  You
            3    haven't defined it.
            4         That's what he said before this trial, before this week.
09:59       5    He said other things on the witness stand.  You heard that.
            6    It's about credibility, ladies and gentlemen.  About
            7    credibility.
            8         We also deposed the inventors, other inventors, and what
            9    did they say?  Well, Dr. Raissinia, did you invent anything in
           10    the Android system?
           11         No.
           12         Mr. Lavine, Headwater's patents were meant to be directed
           13    to something different from what Google's operation system
           14    provides.
           15         Answer, yes.
10:00      16         These folks are not with Headwater any longer.  They're
           17    outside of this trial.  They were deposed, and this is what
           18    they said under oath.  This is what they said:  No, our
           19    stuff's not Android.
           20         Now, let me just briefly go through the claim that you've
           21    heard so much about in this trial.  But, ladies and gentlemen,
           22    the key language of the claim, the key language of the claim,
           23    is interacting in the device display foreground.  Interacting
10:00      24    in the device display foreground.  That's key.  So when they
           25    show you slides that don't have that language, interacting in
```

Shawn M. McRoberts, RMR, CRR
Federal Official Court Reporter

```
10:01    1    the device display foreground, just note that because you know
         2    now--right?--every single word matters.  Interacting in the
         3    device display foreground.
         4         And then the policy, the policy of the claim disallows,
         5    disallows, access to the internet for applications when
         6    they're not interacting in the device display foreground.
10:01    7    That's the claim language.  So keep that in mind when you
         8    evaluate the infringement question in this case.  It's very
         9    important.
        10         And you've seen this before, but this is how the accused
        11    products work.  If you want to play music, you call up your
        12    application.  And then if you want to check emails, your
        13    application goes to the back.  It's classified as a foreground
        14    service.  You heard that evidence.  And that's important
10:01   15    because it allows it to keep playing, to keep playing even
        16    though you can't see it.  But that uses battery power.  That
        17    uses network so you're checking your application and the music
        18    is playing.
        19         And the difference, ladies and gentlemen, is fundamental,
        20    because this case, the claim requires if there's no
        21    interaction, you shut it down.  It's a very harsh solution.
        22    And as Dr. Schonfeld told you back in 2010, maybe that made
10:02   23    sense to have such a harsh solution because of roaming and the
        24    batteries weren't as good.  But today, ladies and gentlemen,
        25    that doesn't make sense to have such a harsh solution.  If
```