**PUBLIC VERSION** ██████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff*, | |
| v. | Case No. 2:23-CV-00641-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC., | JURY TRIAL DEMANDED |
| *Defendants*. | |

## SAMSUNG'S REPLY TO ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF '110 PATENT CLAIM 1 [DKT. NO. 155]

Headwater fails to establish genuine disputes of material fact to preclude summary judgment. Headwater first declares this Court cannot adjudicate validity under Headwater's claim interpretation, but cites no legal authority for that proposition. Setting that aside, Headwater's primary rebuttal rests on a waived claim construction that contradicts the '110 patent's specification as well as prior opinions offered by its technical expert, Mr. de la Iglesia. Headwater's remaining arguments, which attempt to walk away from its prior infringement theories or focus on technical aspects of the prior art irrelevant to the claims, are also unpersuasive. No genuine disputes of material fact remain, and summary judgment is appropriate.

## I.    Response to Headwater's Undisputed Material Facts

**HW SUMF No. 1**:    Disputed, but not material to resolving this motion. *See* Dkt. 172.

**HW SUMF Nos. 2-3**:    Disputed as immaterial. Samsung's motion focuses on the Blackberry Bold 9000, not the BlackBerry Bold 9700. Further disputed to the extent Headwater is misrepresenting Dr. Schonfeld's invalidity opinions.

**HW SUMF No. 4**:    Undisputed that Dr. Schonfeld opines that Allowed Networks for Apps does not infringe the '110 patent. Otherwise disputed as immaterial.

## II.    Assessing Invalidity Under Headwater's Claim Interpretation is Permissible

Headwater incorrectly argues that it is improper for Dr. Schonfeld to adopt Headwater's claim interpretation for purposes of opining on invalidity and that such adoption automatically creates factual disputes precluding summary judgment. Opp. at 5-7, 11, 12. To the contrary, courts routinely allow defendants to adopt a plaintiff's apparent claim interpretation to establish invalidity. *See, e.g.*, *Realtime Data, LLC v. Actian Corp.*, No. 6:15-CV-463 RWS-JDL, 2017 WL 11662040, at *3 (E.D. Tex. Apr. 3, 2017) ("[T]he Court agrees with other district courts that [defendant's expert] is allowed to assume for purposes of [invalidity] that [plaintiff's] understanding of the construed claims is correct and demonstrate how . . . each element of the claims is found in the prior art under that interpretation."); *01 Communique Lab'y, Inc. v. Citrix*


PUBLIC VERSION

*Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018) ("[A] litigant [may] argu[e] that if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art."). Thus, the fact that Dr. Schonfeld disagrees with the claim interpretations Headwater adopts to allege **infringement** does not preclude this Court from assessing the '110 patent's validity under those same interpretations.

## III.  Headwater's Waived Claim Constructions Cannot Preclude Summary Judgment

Headwater seeks to avoid summary judgment by using a flawed and waived proposed claim construction for the term "service activity." Namely, Headwater contends that the Connection Permissions settings in the Blackberry prior art are not a policy controlling a "service activity" because the permissions apply "wholesale to applications rather than specific activities." Opp. at 9. Headwater bases this rebuttal on a tardy claim construction its expert proposed for the first time in his rebuttal report. Dkt. 155 at 10-11. Headwater cannot leverage a waived claim construction to avoid summary judgment. *See Smart Path Connections, LLC v. Nokia of Am. Corp.*, 2024 WL 1344224, at *3 (E.D. Tex. Mar. 6, 2024) ("[A] new claim construction argument fundamental to a party's motion for summary judgment, if found waived, can be fatal to the motion").

Not only is Headwater's claim construction argument procedurally late, it is substantively flawed. Indeed, Headwater's proposed construction contradicts both: (1) opinions its expert, Mr. de la Iglesia, offered in his opening report and (2) the patent's specification:[1]

| Headwater for Validity | Headwater for Infringement | The Specification |
|---|---|---|
| "[T]he issue is . . . the policy alleged by Dr. Schonfeld is | Allowed Networks for Apps . . . enables control of a **service activity (e.g., an application's data usage)** one [sic] a | "As described herein, **service activity** is used |

---

[1] Samsung respectfully requests that, to the extent the Court does not find that Headwater waived its belated claim construction, the Court resolve the dispute regarding the appropriate scope of "service activity" to make clear that "service activity" includes at least an application's network traffic, consistent with the specification and the plain claim language. By doing so, the Court can (1) allow for summary judgment; (2) prevent Headwater from later arguing claim construction to the jury; and (3) ultimately streamline the issues in the case.

| | | |
|---|---|---|
| not applied on an activity-by-activity basis, because Dr. Schonfeld's alleged policy does not **evaluate specific activities** of the application but **rather applies to the application in its entirety**." Opp. at 8. | given network (e.g., a cellular vs. Wifi network) that is different from how **the activity** is controlled on a different network with different attributes (e.g., a Wifi vs. cellular network). As a **specific example**, **an application may be limited to using only a Wi-Fi network** (which would reduce data usage over a cellular network). Dkt. 151-1 at ¶ 230. | to refer to **any service usage or traffic usage** that can be **associated with**, for example, **an application** . . . ." Dkt. 155-1 at 6:64-7:15. |

Headwater makes no attempt to meaningfully explain the inconsistencies between the interpretation of "service activity" its expert applied for infringement and the interpretation it now proposes to avoid invalidity. In fact, Headwater sidesteps these glaring inconsistencies and argues—without explanation—that "Samsung conflates the identification of a 'service activity' with an identification of a policy that is configured to reduce data usage associated with a specific service activity." Opp. at 10. Headwater does not explain how Samsung's understanding of "service activity" is in any way inconsistent with how "service activity" is defined in the patent's specification and plainly used in the claims. Instead, Headwater merely repeats its gripe that Dr. Schonfeld and Samsung do not identify a policy that applies to "particular **activities** as opposed to particular **applications.**" Opp at 10 (emphasis added by Headwater). But this gripe is without merit because: (1) the specification expressly states that a "service activity" includes "any service usage or traffic usage . . . associated with . . . an application," and (2) Mr. de la Iglesia opined that an application's data usage is indeed a service activity; Dkt. 155-1 at 6:64-7:15; Dkt. 151-1 ¶ 230.

Beyond the specification, Headwater's newly-debuted construction is inconsistent with the claim language itself. The claims state that (1) the "first service policy" is "configured to at least assist in reducing data usage associated with a first service activity over the first wireless network", and (2) the "first service activity" need be only "less than all service activities available to the wireless device." The service activity Samsung identified in the Blackberry prior art, e.g. cellular network activity for an application, is undoubtedly less than all activities available to that device—

PUBLIC VERSION

as the claim requires.  Headwater also does not dispute that BlackBerry prior art's permission settings are "configured to at least assist in reducing data usage" for applications over particular networks.  Opp. at 10.  Headwater's argument that the claimed "service activity" must be limited to some further subset of activities finds no support in the plain claim language or otherwise.

Headwater's proposed claim construction, which seeks to exclude from "service activity" any activities that are associated with an application, also contradicts unasserted dependent claim 2.  Claim 2 recites that the "first service activity" can be "***associated with an application on the wireless device***, a network communication end point, a traffic type, a content type, a download, an upload, or a combination of these."  Dkt. 155-1 at claim 2.  An application's cellular or Wi-Fi activity, as controlled by the BlackBerry prior art permission settings, is at least "associated with an application" if not also a "traffic type," and both activities fall within the scope of claim 1, which must be broader than dependent claim 2.

## IV.    Headwater's Remaining Arguments Also Fail

Headwater next seeks to avoid summary judgment by identifying technical aspects of the prior art that fail to satisfy claim elements that do not exist.[2]  For example, Headwater asserts that Mr. de la Iglesia "opines that Dr. Schonfeld failed to provide an evidentiary linkage between the permissions settings and the firewall enforcement of the policy alleged by Samsung."  Opp. at 13.  But (1) the claims do not recite "firewall enforcement," and (2) Mr. de la Iglesia does not dispute that BlackBerry OS 4.6's Connection Permission settings were applied to applications, nor does he dispute the resulting effect of the application of those settings:

> [Q.]  [W]hen a Blackberry Bold running operating system 4.6 . . . has an application wireless permission setting configured such that that application does not have permission to use the WiFi network, could that application send data over the WiFi

---

[2] Headwater also vaguely asserts—without explanation—that Mr. de la Iglesia disputes other limitations, such as "Dr. Schonfeld's theory for limitation 1[d]."  Opp. at 12-13.  But this is the same argument regarding the scope of "service activity" discussed above in *supra* Section III.

**PUBLIC VERSION**

network?  A.  The answer is no.

Q.  When a Blackberry Bold running operating system 4.6 . . . has an application wireless permission setting configured such that that application does not have permission to use the cellular network, could that application send data over the cellular network?  A.  No.

Dkt. 155 at 4-5.  While Dr. Schonfeld discusses that BlackBerry OS 4.6 included firewalls in conjunction with the Connection Permission settings in his report, there is no need to prove the operation of a "firewall" to show that the prior art aligns with the '110 patent claim 1 requirements.

Finally, Headwater attempts to disavow its infringement allegations against the Allowed Networks for Apps feature, given that those allegations would read right on to the Blackberry prior art.  Headwater has consistently set forth its infringement theory against Allowed Networks for Apps right up until opposing this motion.  Now, Headwater claims Samsung is "misrepresenting" Headwater's infringement arguments.  Opp. at 10.  The contrast between Headwater's consistent infringement allegations before this motion was filed and since are telling:

| Headwater in Opposition | Headwater Before its Opposition |
|---|---|
| "Headwater does not allege that Allowed Networks for Apps itself constitutes the claimed policy, but is rather just one feature that influences the claimed policy."  Opp. at 11. | Mr. de la Iglesia's Expert Report, opining on the claimed "policy": "As another example, with Data Usage (including *Allowed networks for app* settings), the Android Operating System *applies a first service policy* which assists in reducing data usage associated with a first service activity…."  Dkt. 151-1 (Mr. de la Iglesia's Opening Report) at ¶ 246. |

Headwater has cemented its position on how it believes the '110 patent claims should be applied for purposes of alleged infringement.  Headwater must confront those same claim interpretations (not create new ones) when the '110 patent's validity is challenged.  Under the view Headwater has taken to allege infringement of the Allowed Networks for Apps feature, claim 1 of the '110 patent is indisputably invalid.

## V.     CONCLUSION

Based on the above, Samsung respectfully submits summary judgment is appropriate.

Dated: August 5, 2025

Respectfully submitted,

By:  /s/ Noah C. Graubart
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
Jared Hartzman (*pro hac vice*)
DC Bar No. 1034255
Brendan F. McLaughlin
DC Bar No. 1671658
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
SERVICEFRSamsung-Headwater@fr.com

Thad C. Kodish
GA Bar No. 427603
Sara C. Fish
GA Bar No. 873853
Christopher O. Green
GA Bar No. 037617
Benjamin K. Thompson
GA Bar No. 633211
Steffen C. Lake
GA Bar No. 512272
Ashley A. Bolt
GA Bar No. 231197
Noah C. Graubart
GA Bar No. 141862
Erin P. Alper
GA Bar No. 940408
Peter Hong (*pro hac vice*)
GA Bar No. 365188
Katherine H. Reardon
NY Bar No. 5196910
Kevin Collareno (*pro hac vice*)
GA Bar No. 914951
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
SERVICEFRSamsung-Headwater@fr.com

John-Paul Fryckman

CA Bar No. 317591
Francis J. Albert (*pro hac vice*)
CA Bar No. 247741
**FISH & RICHARDSON P.C.**
12860 El Camino Real Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070
SERVICEFRSamsung-Headwater@fr.com

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450

Harry L. Gillam, Jr.
State Bar No. 07921800
**GILLAM & SMITH, LLP**
102 N. College, Ste. 800
Tyler, Texas 75702
Telephone: (903) 934-8450

Jon Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA, INC.**

**PUBLIC VERSION**

███████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on August 5, 2025.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

/s/ Noah C. Graubart
Noah C. Graubart