PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC | |
| *Plaintiff*, | |
| v. | Case No. 2:23-CV-00641-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD and SAMSUNG ELECTRONICS AMERICA, INC., | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## <u>SAMSUNG'S OMNIBUS MOTION *IN LIMINE*</u>

**PUBLIC VERSION**

███████████████████████████████████

### <u>TABLE OF CONTENTS</u>

I.  MIL 1:  Preclude "David Versus Goliath" Arguments ..........................................................1

II.  MIL 2:  Preclude Evidence as to Reasons the Headwater-Interdigital Deal Collapsed.......4

III.  MIL 3: Exclude Samsung-Google Agreements (MADA and RSAs), Any Dollar or Percent Values Therein, and Any Implication of Google Financial Interest......................5

IV.  MIL 4:  Exclude Evidence, Argument, or Suggestion of Copying ItsOn Software, either by Samsung or the Entire "Industry" ...................................................................................9

V.  MIL 5:  Exclude ███████████████████████ Emails and Evidence ..........12

VI.  MIL 6: Exclude Argument or Evidence As to ████ █████████ ..............................13

**PUBLIC VERSION**

<u>**TABLE OF AUTHORITIES**</u>

**Cases**                                                                                                      **Page(s)**

*Allen Archery, Inc. v. Browning Mfg. Co.*,
  898 F.2d 787 (Fed. Cir. 1990) ....................................................................... 14

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ........................................................................ 9

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  No. 2:15-CV-01047-RSP, 2016 WL 11750180 (E.D. Tex. Nov. 30, 2016) ............................ 9, 11, 12

*Clontech Lab'ys, Inc. v. Invitrogen Corp.*,
  406 F.3d 1347 (Fed. Cir. 2005) ....................................................................... 10

*Energy Heating, LLC v. Heat On-the-Fly, LLC*,
  889 F.3d 1291 (Fed. Cir. 2018) ....................................................................... 5

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ....................................................................... 15

*Estech Sys. IP, LLC v. Mitel Networks, Inc.*,
  No. 221CV00473JRGRSP, 2023 WL 6115252 (E.D. Tex. July 17, 2023) .......................... 10

*Headwater v. AT&T*,
  No. 2:23-CV-397, Dkt. 264 (E.D. Tex. July 29, 2025) ........................................ 12

*Headwater v. T-Mobile*,
  No. 2:23-CV-379, 2025 WL 2102171 (E.D. Tex. June 25, 2025) ............................. 12

*Headwater v. Verizon*,
  No. 2:23-CV-352, 2025 WL 1903478 (E.D. Tex. June 16, 2025) ............................*passim*

*Hillman Grp., Inc. v. KeyMe, LLC*,
  No. 2:19-CV-00209-JRG, 2021 WL 1248180 (E.D. Tex. Mar. 30, 2021)..................... 1, 2

*Optis Cellular Tech., LLC v. Apple Inc*.
  139 F.4th 1363 (Fed. Cir. 2025) ....................................................................... 8

*People of the State of California v. Kinder Morgan Energy Partners, L.P.*,
  No. 07cv1883-MMA, 2016 WL 6269716 (S.D. Cal. May 16, 2016) ............................. 2

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc*.,
  No. CV 08-309-LPS, 2018 WL 5631531 (D. Del. Oct. 31, 2018) ............................ 5

*In re Roslin Inst. (Edinburgh)*,
  750 F.3d 1333 (Fed. Cir. 2014) ....................................................................... 11

*Sears, Roebuck & Co. v. Stiffel Co.*,
  376 U.S. 225 (1964) ...................................................................................... 11

**PUBLIC VERSION**

*SEVEN Networks, LLC v. Google LLC*,
No. 2:17-cv-442-JRG, Dkt. 582 (E.D. Tex. Dec. 18, 2018) .................................................. 1

*Uniloc USA, Inc. v. Microsoft Corp*.,
632 F.3d 1292 (Fed. Cir. 2011) ............................................................................................ 8

*USEI, LLC v. Acer, Inc.*,
No. C 10-3724 CW, 2014 WL 5812175 (N.D. Cal. Nov. 7, 2014), *aff'd*, 646 F. App'x
929 (Fed. Cir. 2016) ...................................................................................................... 9, 10

*Warsaw Orthopedic, Inc. v. NuVasive, Inc*.,
778 F.3d 1365 (Fed. Cir. 2015) ......................................................................................... 14

**Other Authorities**

Fed. R. Evid. 801 ................................................................................................................. 12

**PUBLIC VERSION**

### EXHIBIT INDEX AND NOTES

| Exhibit | Description |
|---------|-------------|
| 1 | Excerpts from the Trial Transcripts of *Headwater Research LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-00103-JRG-RSP ("*Headwater II*") |
| 2 | Excerpts from the Trial Transcripts of *Headwater v. Verizon*, No. 2:23-cv-00352-JRG-RSP (E.D. Tex. July 16-23, 2025) ("*Verizon*") |
| 3 | Headwater's Exhibit List |
| 4 | Excerpts of clip report of Headwater's designations of the deposition transcript of Seungho Song |
| 5 | Dkt. 9 (Order) from *In re Subpoena to James Kolotouros*, Case No. 24-mc-80255-SVK |
| 6 | Em. from Headwater counsel to Mr. Zoch, Jan. 16, 2025 re: Day 4 Disputes |
| 7 | Excerpts from the Trial Transcripts of *Headwater Research LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00422-JRG-RSP ("*Headwater I*") |
| 8 | Excerpts from 2024-01-31 Deposition Transcript of James Lavine |
| 9 | Excerpts from 2024-03-07 Deposition Transcript of Gregory Raleigh |
| 10 | HW_00054355 |
| 11 | HW103-00017333 |
| 12 | PTX-268, SAM-HW-3_00178056 |
| 13 | PTX-156, SAM-HW00795740 |
| 14 | PTX-158, SAM-HW00793635 |
| 15 | PTX-157, SAM-HW00714927 |
| 16 | PTX-163, SAM-HW00803065 |
| 17 | Excerpts from Dkt. 582 from *SEVEN Networks, LLC v. Google LLC,* No. 2:17-cv-442-JRG (E.D. Tex. Dec. 18, 2018) |

\* Emphasis added unless otherwise noted.

**PUBLIC VERSION**

Samsung respectfully moves *in limine* to preclude the following from trial.

## I.    MIL 1:  Preclude "David Versus Goliath" Arguments

The Court should preclude Headwater from presenting argument, evidence, or innuendo that frames this case as a "David versus Goliath" battle between an individual inventor and "Big Tech" company.  Rhetoric of that nature is irrelevant to any issue the jury must decide and serves only to inflame prejudice and invoke sympathy, in violation of Rules 402 and 403.  *See, e.g.,* Ex. 17, *SEVEN Networks, LLC v. Google LLC,* No. 2:17-cv-442-JRG, Dkt. 582 at 35:10-36:4, 38:11-19 (E.D. Tex. Dec. 18, 2018) ("I want to make it real clear, neither of these trials are going to be about David versus Goliath."); *Hillman Grp., Inc. v. KeyMe, LLC,* No. 2:19-CV-00209-JRG, 2021 WL 1248180, at *6 (E.D. Tex. Mar. 30, 2021) ("Neither party shall characterize this litigation as a 'David and Goliath' scenario."); *see also* Court MIL No. 3 (precluding evidence regarding party's overall size).  Over the course of several trials before this Court, Headwater has repeatedly invoked this improper narrative in at least five ways, all of which the Court should exclude from this case.

***First***, Headwater has repeatedly sought to inflame the jury by suggesting Samsung (a large company) and other defendants have unfairly subjected Dr. Raleigh (a supposed "small inventor") to "over 35 hours of deposition," including arguing that: "You've seen just a little of ***the gauntlet that Samsung has put us through*** to enforce these patent rights.  You heard about Dr. Raleigh sitting through 35 hours of deposition."  Ex. 1, *Headwater II*, Trial Tr. 1216:8-10; *see also id*. 1017:9-15; Ex. 2, *Verizon* Trial Tr. at 1066:16-22 (referencing that Dr. Raleigh was deposed "six or seven" times for "dozens of hours of depositions").  Of course, the only reason Dr. Raleigh has been deposed for so many hours is Headwater's decision to file nearly ***40*** infringement cases since 2023—including six against Samsung.  The Court's MIL 13 prohibits Samsung from contextualizing the number of deposition hours by highlighting Headwater's litigious decision to

**PUBLIC VERSION**

file so many lawsuits. Thus, by the same token, the Court should preclude Headwater from painting a "David versus Goliath" picture by bringing up these depositions from other litigations.

**Second**, Headwater should be precluded from referring to the size or resources of Samsung or Google (who created the accused features of the Android operating system). In the *Verizon* trial, Headwater referred during closing arguments to "Verizon, Android, [and] Apple" as the "big guys" with "thousands of engineers," who have "all the resources in the world." Ex. 2, *Verizon* Trial Tr. at 1217:19-20, 1226:24-25. Those statements violate the Court's MILs, are not probative of any issue in the case, and are unfairly prejudicial to Samsung. Court MIL No. 3 (barring "argument concerning any party's overall financial size [or] wealth"); Fed. R. Evid. 402, 403.

**Third,** during the *Verizon* trial, Headwater twice cross-examined Verizon's expert witnesses about their history testifying on behalf of "Big Tech" companies as opposed to a "small inventor," like Headwater's founder, Dr. Greg Raleigh. Ex. 2, *Verizon* Trial Tr. at 936:7-12, 1057:19-20 (e.g., "And in none of the cases did you represent a small inventor against a big tech company, correct?"). That line of questioning—juxtaposing the parties' sizes and resources—is not probative of any issue in this case, and this Court regularly excludes such "David versus Goliath" rhetoric. *See, e.g., Hillman Grp.,* No. 2:19-CV-00209-JRG, 2021 WL 1248180, at *6. Excluding this specific line of questioning is critical because the politically-tinged language (i.e., "Big Tech") appears specifically calculated to inflame the jury. *See, e.g.,* "Ted Cruz: Big Tech Is a 'Growing Threat to Our Democracy,'" *Breitbart News* (Nov. 7, 2019), (https://www.breitbart.com/politics/2019/11/07/exclusive-ted-cruz-big-tech-is-a-growing-threat-to-our-democracy/); *see also People of the State of California v. Kinder Morgan Energy Partners, L.P.*, No. 07cv1883-MMA, 2016 WL 6269716, at *3 (S.D. Cal. May 16, 2016) (precluding use of term "big oil").

**PUBLIC VERSION**

Moreover, Headwater should be precluded from referring to itself as an "small inventor" because it precluded Samsung from discovering the extent to which that is false. Dr. Raleigh is an individual, but he is not the plaintiff. The actual plaintiff is a Texas limited liability company (Dkt. 1 at ¶ 40), of which the sole organizer and manager is a California attorney (Dkt. 85 at 3; *see also id.* at 1-6; Dkt. 101 at 70:3-8). Headwater admits it is wholly owned by a company called Headwater Innovations LLC, the owners of which include an undisclosed "private investor group." Dkt. 93 at 1. Headwater opposed Samsung's efforts to take discovery regarding the identity of the real parties-in-interest behind Headwater, and the Court agreed, denying Samsung's motion to compel. Dkts. 85, 93; Dkt. 101 at 78:12-13. Thus, Headwater should not be permitted to suggest it is merely the alter ego of Dr. Raleigh, a supposed "small inventor," when it prevented Samsung from obtaining the evidence necessary to prove the full extent to which that assertion is false.

**Fourth**, Headwater should be precluded from suggesting that Dr. Raleigh "decided to take the licensing fight on himself . . . [n]ot sell the patents to InterDigital." Ex. 2, *Verizon* Trial Tr. at 1066:2-3, 23-25. This argument is irrelevant to any issue in the case, and it unfairly casts Dr. Raleigh as a lone "David" versus Samsung as "Goliath." And Headwater prevented Samsung from taking discovery that would have confirmed Dr. Raleigh is not taking on the fight "***himself***," but that he is a figurehead for a group of unknown investors that controls Headwater.

**Fifth**, the Court should prevent Headwater from suggesting its supposed lack of resources explains its delay in bringing suit. *See*, *e.g.*, Ex. 1, *Headwater II*, Trial Tr. at 157:14-17 ("Samsung infringed Headwater's patents for years before Headwater discovered Samsung's infringement and had the resources to be able to do this and take on Samsung in court."). Touting Headwater's supposed lack of resources can only inflame the jury by tacitly juxtaposing the parties' relative size and wealth, violating Court MIL 3. It also is unfairly prejudicial because Samsung was

**PUBLIC VERSION**

prevented from obtaining discovery about the real parties-in-interest—i.e., Headwater's ownership

and investors—disproving Headwater's cries of poverty.

Thus, the Court should preclude Headwater from introducing any "David versus Goliath"

narratives, including but not limited to precluding at least the five examples outlined above.

**II.    MIL 2:  Preclude Evidence as to Reasons the Headwater-Interdigital Deal Collapsed**

The Court should preclude Headwater from suggesting why Interdigital did not

consummate its agreed-upon acquisition of Headwater's assets.  Samsung has already confirmed

it will do the same.  *See* Dkt. 174 at 2-3.  Contrary to this stipulation, during the *Verizon* trial,

Headwater elicited testimony that the supposed reason the parties did not complete the transaction

was that ██████████████████████████████.  Ex. 2, *Verizon* Trial Tr. at 247:18-19

(Raleigh direct), 1065:23-25 (Stamm cross).  But Headwater argued—and this Court agreed—that

communications between Headwater and Interdigital are protected by common interest privilege,

and the Court therefore precluded Samsung from obtaining discovery that would have revealed the

true reason that the parties did not consummate the transaction.  Thus, the Court should not permit

Headwater to use the common interest privilege as a "shield" to prevent discovery of evidence

concerning the reasons the transaction fell through while simultaneously permitting Headwater to

use that same evidence as a "sword" during trial.

Headwater previously agreed to sell its entire patent portfolio to Interdigital for a total cash

payment of ██████████.  The letter of intent outlining the terms ████████████████████

████████████████████████████ Dkt. 157-5 (Headwater/Interdigital LOI) § 6 (explaining

████████████████████████████████████████████████████████████████████

████████████████████████████████████████").  As this Court has

already recognized, this history—i.e., Headwater's agreement to sell its entire patent portfolio at

that price—is relevant to the valuation of the asserted patents as it relates to alleged damages.  *See*

*Headwater I*, Dkt. 435 ("Because the Letter of Intent was executed by Headwater, it has relevance as an indication of Headwater's willingness to accept that purchase price at that point in time.").

But Headwater previously precluded Samsung from obtaining discovery of its communications with Interdigital concerning the agreed-upon transaction, successfully arguing to this Court that those communications are protected by common interest privilege.  *Headwater I*, Dkt. 198 at 1-2 (denying Samsung's motion to compel "communications between Headwater and InterDigital regarding the proposed InterDigital deal" because "a sufficient common legal interest exists between Headwater and InterDigital").  As a result, Samsung was prevented from obtaining any evidence that would establish the true reason(s) the deal fell through.

Thus, the Court should preclude Headwater from introducing self-serving testimony about the supposed reasons its transaction with Interdigital fell apart, including Dr. Raleigh's suggestion that ███████████████████████████ Headwater cannot have it both ways, asserting privilege to deny discovery into this issue, yet introducing testimony at trial on the same issue.  *See Energy Heating, LLC v. Heat On-the-Fly, LLC*, 889 F.3d 1291, 1303 (Fed. Cir. 2018) (holding that district court did not abuse its discretion by excluding testimony over which party had asserted attorney-client privilege in discovery); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*, No. CV 08-309-LPS, 2018 WL 5631531, at *1 (D. Del. Oct. 31, 2018) (excluding evidence that defendant refused to produce in discovery based on attorney-client privilege).

III.    **MIL 3: Exclude Samsung-Google Agreements (MADA and RSAs), Any Dollar or Percent Values Therein, and Any Implication of Google Financial Interest**

The Court should exclude the Google-Samsung agreements (referred to as the "MADA" and "RSAs"), Mr. Song's deposition testimony regarding them, and any other references to them as irrelevant and unfairly prejudicial to Samsung.  Headwater's exhibit list currently includes the MADA and RSAs, as well as a document showing the total dollar amounts of Google payments to

███████████████████████████████████

Samsung under the RSA.[1]  Ex. 3.  Headwater has designated the deposition testimony of Seungho Song, including testimony that ██████████████████████████████████████████████

██████████████████████████  Ex. 4 (Headwater S. Song Dep. Designs.) at 129:1-131:15, 134:5-141:19, 141:20-143:4.   And Headwater's proposed experts—Messrs. Dell and de la Iglesia—offer improper and unqualified opinions about these agreements, including revenue-sharing percentages, which Samsung has moved to strike.  Dkts. 151, 153.  Headwater's experts also rely on irrelevant and inflammatory information concerning Google antitrust cases, including testimony from Jim Kolotorous.  All of this has no relevance to this case and poses a high risk of unfair prejudice to Samsung by skewing the damages horizon, as this Court has previously recognized.  *Headwater II*, Dkt. 404 at 1; *Headwater II*, Dkt. 378 at 10-11 (excluding Dell opinions in part, noting need to "address any misuse of large figures"); *Headwater II*, Dkt. 380 at 5-6 (excluding de la Iglesia opinions in part, requiring redaction and "elimination of [irrelevant large dollar figures] from Mr. Dell's testimony").

*First*, Samsung's MADA and RSA agreements with Google, and any related revenue sharing, are not relevant and should be excluded under Rule 402.  The MADA and RSAs are not patent licenses, are not comparable to the deal to be struck at a hypothetical negotiation, and are not used directly by Headwater's experts in any damages calculation.  Neither the MADA nor the RSAs convey any license or right to use the accused features in this case because the accused features, such as Doze mode, Data Saver, App Standby, are freely available via the Android Open Source Project, which is open to the public.  Instead, the MADA and RSAs permit Samsung to

---

[1] *See* Ex. 3, Headwater's Exhibit List at PTX-209-211, 257, 265 re Android GMS and Android Compatibility; PTX-213-216, and 237, re RSAs; PTX-217, a Google SEC 10-K from 2009; PTX-224, 2020 MADA; PTX-259, 2017 MADA; Ex. 12, PTX-268, ████████████████████████████ ████████████████████████████████████████████████.

███████████████████████████████████████

preload proprietary Google apps—e.g., Search, Gmail, Maps—and share advertisement revenues

for certain activities.  Those proprietary Google apps and advertisement revenue-sharing are not

accused of infringement, meaning the agreements and any associated revenue is irrelevant here.

Headwater insists incorrectly that the Samsung-Google agreements and associated

revenues are relevant to rebut Samsung's non-infringing alternatives.  As explained in Samsung's

motion to strike Mr. Dell's damages opinions, Dkt. 153 at 10-13, the plain language of MADA

contradicts Headwater's theory of relevance:  the MADA contains several provisions confirming

that Google and Samsung could and would work together to implement NIAs.  Dkt. 153-15

(MADA) at § 11.3 ██████████████████████████████████"), §

11.5 ("███████████████████████████████████████

██████████████████████████████").  Since Samsung could work with

Google to implement NIAs under the MADA, it would not be required to give up revenues

provided under the RSAs, which require compliance with a MADA.  Although the Court

previously admitted the MADA and RSAs in *Headwater II* with redactions to the indemnification

provisions, the Court did not address these provisions that refute Headwater's relevance theory.

The Court previously held the MADA and RSA were relevant in *Headwater II* to test a

Google-employee witness's potential bias, *Headwater II*, Dkt. 360 at 4, but that logic does not

apply in this case.  Here, no current Google employee will be called by either party at trial.  At

most, the parties may call a former Google employee through deposition and/or prior trial

testimony designations, but Mr. Sharkey was no longer employed by Google at the time he gave

his trial testimony, negating any alleged bias.  Further, ██████████████████████

███████████████████████████████████████

████████████████████████████.

**PUBLIC VERSION**

█████████████████████████████████████████████

**Second**, the MADA, RSAs, revenue-sharing percentages, and total revenues paid are
unfairly prejudicial to Samsung because the large numbers at stake will skew the jury's damages
horizon, outweighing any alleged probative value, as this Court has already recognized. *See
Headwater II*, Dkt. 404 at 1 (recognizing, if no NIAs presented, "the risk of unfair prejudice to
Defendants through the effect on the damages horizon outweighs the probative value of any such
grounds"); *see also Headwater II*, Dkt. 378 at 10-11; *Headwater II*, Dkt. 380 at 5-6; *Uniloc USA,
Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1321 (Fed. Cir. 2011) ("The disclosure that a company has
made $19 billion dollars in revenue from an infringing product cannot help but skew the damages
horizon for the jury.").  Headwater's use of these large sums (e.g., ████████████████████
████████████████████) is equivalent to that which the Federal Circuit held should have been
excluded in *Optis Cellular Tech., LLC v. Apple Inc*., where the plaintiff's damages expert presented
a damages opinion based on a large sum that was admittedly not economically comparable.  139
F.4th 1363, 1384-85 (Fed. Cir. 2025) (explaining "use of the large settlement figure unfairly
skewed the jury's damages horizon").  Just as in *Optis*, allowing Headwater to present the ██
████████████████████████████ figures—without any relevance to
NIAs, witness bias, or damages calculations—has no probative value and can only skew the
damages horizon.

**Finally**, Headwater's proposed experts' extensive opinions on the MADA and RSAs
further rely on public Google information and testimony from other cases, to which Samsung was
not a party and which are irrelevant here.  Dkt. 151-2 at 235-251 (de la Iglesia Rep. ¶¶656-670).
Headwater has agreed not to refer directly to the antitrust suits during trial, but Mr. de la Iglesia
still quotes from and uses extensively DOJ filings and a deposition of Jim Kolotorous, a former
Google employee, of whom both this Court and another court declined to compel a deposition.

PUBLIC VERSION

*Headwater II*, Dkt. 264 at 15-20.[2]  This evidence violates the Court's MIL 13 and the parties' prior stipulation in *Headwater II* not to make reference to materials from the Google antitrust litigations. *Headwater II*, Dkt. 291.  Introducing evidence of or taken from Google's antitrust litigation is therefore an attempted end-run around this Court's prior rulings, and should be precluded.

## IV.   MIL 4:  Exclude Evidence, Argument, or Suggestion of Copying ItsOn Software, either by Samsung or the Entire "Industry"

The Court should preclude Headwater from suggesting that Samsung and/or the entire "industry" copied ItsOn software.

As this Court has recognized, "[e]vidence of copying . . . is 'legally irrelevant' unless the copied product is shown to be an embodiment of the ***asserted claims***."  *Arthrex, Inc. v. Smith & Nephew, Inc.,* No. 2:15-CV-01047-RSP, 2016 WL 11750180, at *1 (E.D. Tex. Nov. 30, 2016) (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001)); *USEI, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2014 WL 5812175, at *4 (N.D. Cal. Nov. 7, 2014), *aff'd*, 646 F. App'x 929 (Fed. Cir. 2016) ("In order to establish that [defendant] intentionally copied the patented inventions, [plaintiff] must first show that the product allegedly copied by [defendant] embodied the asserted claims.  Without such a showing, the allegations of copying are irrelevant.").  To that end, "[c]opying requires" (1) "'replication of a specific product'" (*Arthrex*, No. 2:15-CV-01047-RSP, 2016 WL 11750180, at *3), and (2) that "copied product must be covered by the asserted claims" (*id.* at *3 citing *Amazon.com*, 239 F.3d at 1366)).  This means the plaintiff must offer "evidence to show that the [allegedly copied product] embodies each and every element of the asserted claims or practices them."  *USEI*, 2014 WL 5812175, at *4.

---

[2] Headwater moved to compel Mr. Kolotouros's deposition in N.D. Cal., which denied the motion, precluding Headwater from doing exactly what it is trying to do now via Mr. de la Iglesia: adopt Kolotouros's previous testimony in another matter in another court between other parties in lieu of a deposition in this case.  Ex. 5, No. 24-mc-80255-SVK, Dkt. 9 (Order) at 4.

Headwater has not offered any evidence that ItsOn practiced any asserted claim. Instead, Headwater's expert opines ItsOn software had *some* functionality consistent with *some* of the technology covered by the asserted patents, i.e.:



None of that can establish that any ItsOn product practiced every element of any asserted claim.

That ItsOn allegedly marked its software with the asserted patent numbers does not make alleged copying relevant. A product need only practice "one claim of each patent" with which it is marked, not necessarily an asserted claim. *Clontech Lab'ys, Inc. v. Invitrogen Corp.,* 406 F.3d 1347, 1352 (Fed. Cir. 2005).[3] Thus, marking does not show that a product practices any *asserted* claim. The same is true of whether a product is "patented" or "includes patented technology." That says nothing about whether ItsOn practiced an asserted claim. To be plain, Headwater may allege that the ItsOn Solution practiced the asserted patents, which is otherwise relevant (*e.g.*, for damages), but going a step further to allege copying requires nexus to specific asserted claims.

---

[3] *Cf. Estech Sys. IP, LLC v. Mitel Networks, Inc.,* No. 221CV00473JRGRSP, 2023 WL 6115252, at *8 (E.D. Tex. July 17, 2023) (in marking context, generally using the technology referenced in the patents insufficient to show the marked product practiced every limitation of an asserted claim).

████████████████████████████████

Similarly, stating that certain "ItsOn technology" had functionality "consistent with" certain claim features is legally meaningless. That allegation does not implicate a specific allegedly copied "product," but rather generically encompasses all "ItsOn technology," patented or not, asserted or not. And Headwater's expert's verbal gymnastics—omitting any opinion that ItsOn software actually practiced any specific asserted claim and why—speaks volumes and confirms Headwater lacks sufficient evidence to establish Samsung copied any product that embodied an asserted claim.

Even if, ████████████████████████████████████████████████ ████████ ████████████ ██ ██ ██████ ████████ that too would be irrelevant unless the "functionality" practiced an asserted claim. The law does not prohibit—but rather encourages—copying a product's unpatented functional aspects. *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1337 (Fed. Cir. 2014) (explaining that "individuals are free to copy any unpatentable article") (citing *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 232-33 (1964)). That is precisely why copying allegations require specificity: a specific copied product and a specific asserted claim practiced by that product. Without that specificity, "copyist" allegations are not only unfairly prejudicial (*Arthrex*, 2016 WL 11750180, at *4), but legally erroneous.

Thus, Headwater's insinuations that Samsung copied unspecified features of ItsOn software—which features Headwater does not show practice any asserted claim—are irrelevant, unfairly prejudicial, and likely to confuse the jury. *Arthrex*, 2016 WL 11750180, at *3-4 (precluding "evidence of copying not tied to the asserted claims" due to "the danger that the jury will unfairly view [defendant] as a wholesale copyist.").

The Court should likewise preclude Headwater from suggesting that the entire "industry" allegedly copied ItsOn's technology. This Court has already thrice precluded Headwater from

**PUBLIC VERSION**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

making this argument. In cases against AT&T, Verizon, and T-Mobile, Headwater argued that it
should be able to introduce evidence of alleged "copying by competitors generally, which goes
towards secondary considerations of non-obviousness."[4] This Court rejected that argument,
finding in each case that Headwater had "adduce[d] no evidence of copying by" either AT&T,
Verizon, or T-Mobile (Sprint) themselves. *Id.* Thus, Headwater should not be permitted now to
allege industry-wide copying when the "industry" includes AT&T, Verizon, and T-Mobile, as to
which it cannot establish any copying, particularly since Headwater's expert does not even opine
in this case that Samsung's alleged copying is a secondary consideration of non-obviousness.[5]

## V.    MIL 5: Exclude ███████████████████████████ Emails and Evidence

The Court should again exclude as irrelevant and highly prejudicial SAM-HW00714927,
currently proposed as PTX-157 (Ex. 15), and any related or similar documents and discussion
because it discusses ████████████████████████ Fed. R. Evid. 402, 403.[6] During the
*Headwater I* trial, the Court excluded this same document as irrelevant and prejudicial, and it also
declined to permit Headwater to refer to the document or its contents during closing arguments.
*See, e.g.,* Ex. 6 (regarding "proposed statements in closing concerning PTX-079"); *cf.* Ex. 7

---

[4] *Headwater v. AT&T,* No. 2:23-CV-397, Dkt. 264 at 4-5 (E.D. Tex. July 29, 2025); *Headwater v. Verizon,* No. 2:23-CV-352, 2025 WL 1903478, at *3 (E.D. Tex. June 16, 2025); *Headwater v. T-Mobile,* No. 2:23-CV-379, 2025 WL 2102171, at *3 (E.D. Tex. June 25, 2025).
[5] For completeness, this preclusion should include reliance on the ████████████████████████
████████, which this Court previously found could not be discussed without "implicating copying."
*Headwater I,* Dkt. 445 at 69:23-71:20 ("████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████ Dkt. 151-10 at ¶¶ 661, 675.
[6] PTX-157 is also inadmissible as hearsay within hearsay under Fed. R. Evid. 801 as it is a
computer-translated memorialization ████████████████████████████████████████
████████████████████████████████████████ who are not witnesses in this case.

██████████████████████████████

(*Headwater I*, Trial Tr.) at 1262:25-1312:12 (neither party mentions ████████ per court ruling

excluding).  Despite these prior rulings, Headwater has still listed SAM-HW00714927 on its

exhibit list again here, and Mr. de la Iglesia offers opinions on it.  Dkt. 151-1 at ¶ 42.

        Just as they were in that prior case, these documents and discussion are irrelevant to this

case: ███████████████████████████████.  Ex. 8 (Lavine Dep.

Jan. 31, 2024) at 90:17-91:7; Ex. 9 (Raleigh Dep. Mar. 7, 2024) at 158:5-25 (confirming ████

██████████████████████); Ex. 7 (*Headwater I*, Trial Tr. (Raleigh)) at 248:11-

20.  Thus, discussion of ██████████████ is irrelevant to Headwater's

assertion of the three specific Headwater patents in this case.  Use of this document and its contents

would only prejudice Samsung unfairly, confuse the jury by mentioning ██████████████

████████████████ and invite a trial-within-a-trial regarding ████████████

The same reasoning applies to an additional Headwater trial exhibit, PTX-163 (SAM-

HW00803065) (Ex. 16), which likewise mentions ████████████████████████

████████████████████  There is no allegation in this case that Samsung

implemented, copied, or infringes via any "billing system," let alone ████████████████

█████████████████████.  Both exhibits should be excluded under

Rules 402 and 403.

## VI.   MIL 6: EXCLUDE ARGUMENT OR EVIDENCE AS TO ██████████████
████████

        The Court should exclude Headwater from offering any evidence, questioning, or argument

about the ████████████████████████████████████

██████████  ████████████████████████████████

██████████████████████.  Thus, any alleged probative value of ██████

████████████████ that would result from the hypothetical negotiation between

**PUBLIC VERSION**

███████████████████████████████████████████████

Samsung and Headwater is far outweighed by the danger of unfair prejudice, confusion, and skewing of the damages horizon to the jury. *See Warsaw Orthopedic, Inc. v. NuVasive, Inc*., 778 F.3d 1365, 1377 (Fed. Cir. 2015) ("[R]oyalties paid by related parties have little probative value as to the patent's value."), *cert. granted, vacated on other grounds*, 577 U.S. 1099 (2016), *and op. reinstated in part*, 824 F.3d 1344 (Fed. Cir. 2016); *Allen Archery, Inc. v. Browning Mfg. Co*., 898 F.2d 787, 790 (Fed. Cir. 1990) (rejecting agreements between related parties as establishing a royalty rate because the transactions were not the result of arms-length bargaining).

The Court has already found that "Headwater and ItsOn are not arms-length entities," confirming that ██████████████████████████████████████████████. *Headwater I*, 2024 WL 1808601 at *2. The original version of the ████████████████ ███████████████████████████████████████████████ ██████████████████████████████████ Ex. 10 at -355, -367. ████████ ███████████████████████████████████████████████ ████████████████████████████████████████ *Compare generally* Ex. 10 (███████████████), *with* Ex. 11 (████████████████). ████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████. *See, e.g., Headwater I*, Dkt. 120 at 8 (Headwater stating ██████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████. *Headwater I*, 2024 WL 1808601, at *3-4.

Most egregiously, Mr. Dell also revealed that the so-called ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ Dkt. 192-1 (Dell Dep. Tr.) at 188:3–189:11.  But no entity—

██████████████████████████████.  This confirms that the proposed ████████████

████████████████████████████████████████████████████████

██████████████████████████

At trial, Headwater intends to rely on the ███████████████████████████████

█████████████—to impermissibly "skew the damages horizon" and make Mr. Dell's proposed

$3.75 per unit royalty appear reasonable by comparison.  *See. e.g.* Dkt. 153-1 at ¶110 ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████); Ex. 2, *Verizon* Trial Tr. at 1067:24-1069:6 (referring to the

████████████████████████████████████████████████████████

██y").  Eliciting testimony from Mr. Dell,[7] Dr. Raleigh, or any other witness on ███████████

████ would unfairly prejudice Samsung by misleading the jury into believing they reflect

██████████████████████████████████████████████████████.  This is

precisely the type of distortion the Federal Circuit warned against in *Ericsson, Inc. v. D-Link Sys.,

Inc.*, 773 F.3d 1201, 1228 (Fed. Cir. 2014) ("[D]istrict courts must assess the extent to which the

proffered testimony, evidence, and arguments would skew unfairly the jury's ability to apportion

the damages to account only for the value attributable to the infringing features.").

---

[7] Samsung has moved to strike Mr. Dell's opinions on the same basis.  *See* Dkt. 153 at 8-10.

Dated: August 11, 2025

Respectfully submitted,

*/s/ Noah C. Graubart*
Ruffin B. Cordell
TX Bar No. 04820550
Michael J. McKeon
DC Bar No. 459780
Jared Hartzman (*pro hac vice*)
DC Bar No. 1034255
Brendan F. McLaughlin
DC Bar No. 1671658
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
SERVICEFRSamsung-Headwater@fr.com

Thad C. Kodish
GA Bar No. 427603
Sara C. Fish
GA Bar No. 873853
Christopher O. Green
GA Bar No. 037617
Benjamin K. Thompson
GA Bar No. 633211
Steffen C. Lake
GA Bar No. 512272
Ashley A. Bolt
GA Bar No. 231197
Noah C. Graubart
GA Bar No. 141862
Erin P. Alper
GA Bar No. 940408
Peter Hong (*pro hac vice*)
GA Bar No. 365188
Katherine H. Reardon
NY Bar No. 5196910
Kevin Collareno (*pro hac vice*)
GA Bar No. 914951
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
SERVICEFRSamsung-Headwater@fr.com

John-Paul Fryckman

**PUBLIC VERSION**

CA Bar No. 317591
Francis J. Albert (*pro hac vice*)
CA Bar No. 247741
**FISH & RICHARDSON P.C.**
12860 El Camino Real Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070
SERVICEFRSamsung-Headwater@fr.com

Melissa R. Smith
State Bar No. 24001351
Melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450

Harry L. Gillam, Jr.
State Bar No. 07921800
**GILLAM & SMITH, LLP**
102 N. College, Ste. 800
Tyler, Texas 75702
Telephone: (903) 934-8450

Jon Hyland
Texas Bar No. 24046131
jhyland@hilgersgraben.com
Grant K. Schmidt
Texas Bar No. 24084579
gschmidt@hilgersgraben.com
**HILGERS GRABEN PLLC**
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: (972) 645-3097

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA, INC.**

**PUBLIC VERSION**

███████████████████████████████

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on Plaintiff through its counsel of record via email on August 11, 2025.

*/s/ Noah C. Graubart*

### CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Rule CV-7(h) was conducted on August 11, 2025.  The parties were unable to reach agreement as to Samsung's requested relief.

*/s/ Noah C. Graubart*
Noah C. Graubart

███████████████

███████████████████████

███████████████████████████

███████████

███████████████
███████████